UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
DEMETRIUS HILL,

                Plaintiff,                    **MEMORANDUM & ORDER**
  -v.-                                       02-CV-3901 (DRH) (AYS)

AL TISCH, SHERIFF, et al.,

                Defendants.
----------------------------------------------------------X

**Appearances:**

**For the Plaintiff:**
**Demetrius Hill, pro se**
No. 68133-053
Lewisburg U. S Penitentiary
PMB 1000
Lewisburg, PA 17837

**For the Defendants:**
**Dennis M. Brown**
**Suffolk County Attorney**
P.O. Box 6100
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, New York 11788-0099
By: Robert A. Caccese, Assistant County Attorney

**HURLEY, Senior District Judge:**

        Plaintiff Demetrius Hill ("Plaintiff") commenced this action against defendants "Al Tisch, Sheriff; West Bagnowski, Warden; Murphy Dep. Warden; Mr. Geslak, Captain; Mr. Singer, Lieutenant; Mr. Leehman, Lieutenant; Sgt. Kearsey; Sgt. Walsh; Mr. Reynolds, Correction Officer; Mr. Sanicruz, Correction Officer; Mr. Jonesy, Correction Officer;" and various John Does ("Defendants") [Compl. at p. 1], pursuant to 42 U.S.C. § 1983, claiming that Defendants used excessive force against him and subjected him to hazardous living conditions

while he was incarcerated in the Suffolk County jail. By Order dated April 10, 2009, this Court granted defendants' motion for summary judgment dismissing all of Plaintiff's claims, except those pertaining to administrative segregation, for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a). As to the claims pertaining to administrative segregation, Defendants were directed to serve and file a memorandum of law, with supporting authority, on whether Plaintiff's claims pertaining to administrative segregation are exhausted. This Memorandum now addresses the exhaustion of the administrative segregation claims. In addition, Plaintiff has moved for reconsideration of the Court's April 10, 2009 Order and that motion is addressed as well.

## ***BACKGROUND***

The material facts, drawn from the Complaint and Defendants' Local 56.1 Statement, are undisputed unless otherwise noted.

Plaintiff was incarcerated in the Suffolk County Correctional Facility ("SCCF") from March 29, 2002 to September 18, 2002. Upon his admission to SCCF, Plaintiff received a copy of the Inmate Rules and Regulations Booklet, 2000 Revision (the "SCCF Rules and Regulations") and signed a booking sheet acknowledging his receipt. The SCCF Rules and Regulations set forth the procedures for administrative review of inmate grievances.

Plaintiff filed the instant action on July 28, 2002, alleging that Defendants violated his constitutional rights, pursuant to § 1983, based on six separate incidents: (1) unjustifiable placement in administrative segregation upon his arrival at SCCF on March 29, 2002; (2) excessive force by corrections officers and forced medication by an alleged nurse on April 3,

2002; (3) denial of proper medical care on April 4, 2002; (4) excessively restrictive administrative segregation in general; (5) the failure of Defendants to protect Plaintiff from an assault by another inmate and denial of medical care in June 2002; and (6) verbal and physical attacks by SCCF officers. Although Plaintiff filed numerous written grievances pursuant to the Inmate Grievance Program while incarcerated in SCCF, he never filed any grievances concerning the six incidents set forth in the Complaint.

## DISCUSSION

**I.     Applicable Law and Legal Standards**

    **A.     Summary Judgment**

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is only appropriate where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates both the absence of a genuine issue of material fact and one party's entitlement to judgment as a matter of law. *See Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008); *Viola v. Philips Med. Sys. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994). The relevant governing law in each case determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009); *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the

non-movant, that no rational jury could find in the non-movant's favor. *See SCR Joint Venture*, 559 F.3d at 137; *Chertkova v. Conn. Gen'l Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996) (citing Fed. R. Civ. P. 56(c)).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts that show that there *is* a genuine issue of material fact to be tried. *See Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996). The non-movant must present more than a "scintilla of evidence," *Del. & Hudson Ry. Co. v. Cons. Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Aslanidis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1072 (2d Cir. 1993) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), and cannot rely on the allegations in his or her pleadings, conclusory statements, or on "mere assertions that affidavits supporting the motion are not credible." *Gottlieb v. County of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (internal citations omitted). Affidavits submitted in opposition to summary judgment must be based on personal knowledge, must "set forth such facts as would be admissible in evidence," and must show that the affiant is "competent to testify to the matters stated therein." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004) (citing Fed. R. Civ. P. 56(e)). "Rule 56(e)'s requirement the affiant have personal knowledge and be competent to testify to the matters asserted in the affidavit also means that an affidavit's hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient to create a genuine issue for trial." *Patterson*, 375 F.3d at 219 (citing *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999)).

When determining whether a genuinely disputed factual issue exists, "a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability," or "the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 254-55. A district court considering a summary judgment motion must also be "mindful of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the evidentiary burdens that the respective parties will bear at trial guide the district court in its determination of a summary judgment motion. *See Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). Where the non-moving party will bear the ultimate burden of proof on an issue at trial, the moving party's burden under Rule 56 will be satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim. *See id.* at 210-11. Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish her claim, the burden shifts to the non-movant to offer "persuasive evidence that [her] claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). In deciding a summary judgment motion, a court must resolve all factual ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir. 1987).

### B. Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion

requirement applies to "all inmate suits about prison life whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Exhaustion is mandatory and prisoners must "exhaust all 'available' remedies, not just those that meet federal standards." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Indeed, a prisoner must exhaust administrative remedies even when he or she seeks monetary damages, which cannot be granted by the administrative process. *Id.*

**C.     Reconsideration**

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003); *see also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998) (concluding that a motion for reconsideration under Local Civil Rule 6.3 "provides the Court with an opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice"). The moving party, however, may not repeat "arguments already briefed, considered and decided." *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y.1990); *accord Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, at *1 (S.D.N.Y.

Jan. 18, 2000); *see also Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 2006 WL 355137 (E.D.N.Y. Feb. 15, 2006) ("The standard for . . . reconsideration is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court.").

## II. Exhaustion of Administrative Remedies On the Two Open Claims

### A. The SCCF Grievance Procedures

To satisfy the PLRA, an inmate must comply with the specific administrative procedures provided to him. *See Woodford*, 548 U.S. at 88. "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). In this case, the SCCF Rules and Regulations detail the following remedial scheme for filing grievances:

> If you have a complaint or problem:
>
> 1. Attempt to get it resolved with the officer assigned to your particular housing unit.
> 2. If for some reason you and the officer are unable to reach an acceptable resolution, you may request and will receive a grievance form to fill out.
> 3. You may request and will receive assistance in filing out the form.
> 4. Your grievance will be investigated and you will receive a written determination from the grievance coordinator within 5 business days. You have two (2) days to provide additional information if required.
> 5. If you are not satisfied with the grievance coordinator's decision, you may appeal the determination to the Chief Administrative Officer of the facility within 2 business days.
> 6. You will receive a response within 5 business days.
> 7. If your appeal to the Chief Administrative Officer results in an unfavorable decision, you may appeal such determination to the State Commission of Correction

> within three (3) business days. You cannot appeal the Chief Administrative Officer's acceptance of your grievance.
> 8. The Grievance Coordinator will forward your appeal to the State Commission of Correction within three (3) business days of receipt and you will be provided with a receipt.
> 9. The Commission will render a determination and you will be notified of the result.
>
> **THE FOLLOWING DECISIONS WILL NOT BE [THE] SUBJECT OF A GRIEVANCE:**
>
> a. Actual penalties and sanctions, and/or surcharges resulting from disciplinary hearings.
> b. Administrative segregation housing decisions.
> c. Issues that are outside the authority of the Chief Administrative Officer's control. However, the policies or procedures leading to these decision may be the subject of a grievance.
> d. Complaints pertaining to an inmate other than the inmate actually filing the grievance.

(Aff. of Curtis Sclafani, dated Mar. 3, 2008, Ex. A at 15-16.)

### B. Application to the Instant Case

#### *1.* **Placement in Administrative Segregation**

In their supplemental filing, defendants maintain that "an inmate's administrative remedies for placement in segregated confinement include appeal of an adverse determination of a disciplinary proceeding placing him there" and "an inmate who does not appeal a decision placing him in administrative segregation prior to bringing suit has failed to properly exhaust his administrative remedies," citing *Ortiz v. McBride*, 380 F.3d 649 (2d Cir. 2004) and *Davis v. Barnett*, 576 F.3d 129 (2d Cir. 2009). (Defs.'s Mem (DE 111) at 2.)

Plaintiff, however, is not complaining about having been placed in segregated confinement as a result of a disciplinary proceeding. Rather, he asserts that he was immediately

placed in administrative segregation upon his arrival at the Suffolk County Correctional Facility: "I came to Suffolk county Jail on or about March 29, 2002. On the first day of my arrival, before any misconduct had occurred by myself, I was interviewed by someone from security named C.O. Reynolds who informed me that I was being placed on administrative segregation. . . . I was never given a [sic] adequate reason as to why said decision was being made, I was only told that I was termed a 'threat to the safety an [sic] security of the facility.'" (Complaint at p.6.) Given that Plaintiff is alleging he was placed in administrative segregation divorced from any disciplinary proceeding, it would appear that he had nothing to appeal from other than the assignment itself. Moreover, given that SCCF's Rules and Regulations clearly state that "administrative segregation housing decisions" are not subject to the grievance procedure, Defendants' motion for summary judgment for failure to exhaust this claim is denied.

### 2. Excessively Restrictive Administrative Segregation

Turning then to Plaintiff's excessively restrictive administrative segregation claim, his complaint is as follows: " I am locked in his cell for 22 hours a day for no reason other than my status as administrative segregation. This is a 5 man tier, sometimes there's only 3 people. Yet we still have to be locked in an [sic] let out separat[e]ly each for 50 minutes. . . The only time we are out together is when we go to an[d] from law library, yard; at which time we are together for 50 minutes daily." (Complaint at p. 11.)

Citing *Palmer v. Richards*, 364 F.3d 60, 69 (2d Cir. 2004), Defendants argue that the conditions of which Hill complains "appear to be the usual condition of administrative segregation housing" and since those conditions "are not atypical and [a] significant hardship . . . in relations to the ordinary incidents of prison life, his confinement under those conditions

do[es] not implicate his constitutional rights," (Defs.'s Mem (DE 111) at 2 (internal quotations omitted).) *Palmer*, however, involved the claims of a convicted prisoner. Plaintiff, in contrast, was a pretrial detainee during the time in question.

Under the Due Process Clause, the conditions of pretrial detention are constitutional unless they amount to punishment of the detainee. *See Bell v. Wolfish*, 441 U.S. 520, 535–37, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Since "[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner, . . . courts considering challenges to confinement brought by pretrial detainees must first consider whether the circumstances of the particular confinement render the confinement punitive." *Iqbal v.* Hasty, 490 F.3d 143, 168 (2d Cir.2007), *reversed on other grounds*, *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense . . . ." *Wolfish*, 441 U.S. at 537. For example, the Second Circuit has held that "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is not a right protected by the due process clause itself." *Covino v. Vermont Dep't of Corr.*, 933 F.2d 128, 129 (2d Cir.1991) (internal quotation marks omitted). Under *Wolfish*, a court must first "determine if the condition is specifically imposed for the purposes of punishment or for a legitimate governmental purpose" and then "if evidence of punishment is lacking, the court must determine if the restriction is reasonably related to a legitimate objective or constitutes an exaggerated response. If a reasonable relationship can be established, punishment is not present and the Due Process clause is not violated." *United States v. Basciano*, 369 F. Supp. 2d 344, 350 (E.D.N.Y. 2005). In making these determinations, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of

policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. Such considerations are peculiarly within the province and professional expertise of corrections officials, and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Wolfish*, 441 U.S. at 547-48 (internal citations omitted).

As Defendants have not submitted any evidence relevant to the analysis under *Wolfish*, their motion for summary judgment on Plaintiff's excessively restrictive administrative segregation claim is denied.

## III. Reconsideration

Plaintiff's motion for reconsideration is denied as he does not point to any "controlling decisions or [factual] data that the court overlooked."

Notwithstanding Plaintiff's assertion to the contrary, the Court did discuss his argument that his complaints to the SCCF Internal Affairs Unit constituted sufficient exhaustion. Specifically, the Court held:

> Plaintiff also argues that his failure to exhaust is excused because he complained to the Sheriff's Department's Internal Affairs Section and the Suffolk County District Attorney's Office about the alleged April 3, 2003 assault (*see* Compl. Claim 2), and Defendants were therefore put on notice of Plaintiff's grievance. Plaintiff's argument has been squarely rejected by the Supreme Court. In *Woodward*, the Court held that exhaustion under the PLRA requires "proper" exhaustion, i.e., "using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." 548 U.S. at 90 (citation and internal quotation marks omitted). While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense," *Macias v.*

> *Zenk*, 495 F.3d 37, 43 (2d Cir. 2007), an inmate plaintiff must
> nonetheless meet the procedural requirement of exhausting his or
> her available administrative remedies within the appropriate
> grievance construct in order to satisfy the PLRA. *Id.* Thus,
> "[a]lert[ing] the prison officials as to the nature of the wrong for
> which redress is sought [via the filing of informal complaints] does
> not constitute 'proper exhaustion' under *Woodford*." *Id.* at 44
> (citations and internal quotation marks omitted).

Memorandum & Order dated April 10, 2009, at 15.[1]

Plaintiff's second argument for reconsideration is that "[a]t the time plaintiff filed his complaint in 2002, Lawrence v. Goord, 238 F.3d 182 (2d Cir. 2001) was the controlling case law of the Second Circuit, and Plaintiff's decision to immediately file suit was based in part on this case." (Pl.'s Reconsideration Letter (DE 113) at p. 3.) This argument provides no basis for reconsideration. First, Plaintiff commenced this action on July 8, 2002. On that date *Lawrence v. Goord* was no longer good law as the Supreme Court granted certiorari and vacated the Circuit's decision on March 4, 2002. *See Goord v. Lawrence*, 535 U.S. 901 (Mar. 4. 2002). Moreover, even if the Circuit's decision in *Lawrence* was good law at the time the complaint was filed, this Court was bound to apply the law as it exists at the time an issue is submitted to it for resolution.

Having considered all of Plaintiff's arguments, the motion for reconsideration is denied.

## CONCLUSION

For all of the above reasons, Defendants' motion for summary judgment is denied on Plaintiff's claims pertaining to administrative segregation, and Plaintiff's motion for

---

[1] To the extent that *Roland v. Murphy*, 289 F. Supp. 2d 321 (E.D.N.Y. 2003), relied on by Plaintiff, held that informal complaints can satisfy exhaustion, that holding has been abrogated by *Woodward* and *Macias*.

reconsideration is denied.

This matter is respectfully referred to Magistrate Judge Anne Y. Shields to oversee any outstanding discovery and the preparation of a pre-trial order.

**SO ORDERED.**

Dated: Central Islip, N.Y.
October 5, 2015

/s/    Denis R. Hurley
Denis R. Hurley
United States District Judge