UNTIED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DEMETRIUS HILL,

                Plaintiff,                          **MEMORANDUM & ORDER**
   -v.-                                      02-CV-3901 (DRH) (AYS)

AL TISCH, SHERIFF, et al.,

                Defendants.
-----------------------------------------------------------X

**Appearances:**

**For the Plaintiff:**
**Demetrius Hill, pro se**
No. 68133-053
Lewisburg U. S Penitentiary
PMB 1000
Lewisburg, PA 17837

**For the Defendants:**
**Dennis M. Brown**
**Suffolk County Attorney**
P.O. Box 6100
H. Lee Dennison Building
100 Veterans Memorial Highway
Hauppauge, New York 11788-0099
By: Arlene S. Zwilling, Assistant County Attorney

**HURLEY, Senior District Judge:**

       Plaintiff Demetrius Hill ("Plaintiff" or "Hill") commenced this action against defendants "Al Tisch, Sheriff; West Bagnowski, Warden; Murphy Dep. Warden; Mr. Geslak, Captain; Mr. Singer, Lieutenant; Mr. Leehman, Lieutenant; Sgt. Kearsey; Sgt. Walsh; Mr. Reynolds, Correction Officer; Mr. Sanicruz, Correction Officer; Mr. Jonesy, Correction Officer;" and various John Does ("Defendants") (Compl. at p. 1]) pursuant to 42 U.S.C. § 1983, claiming that Defendants used excessive force against him and subjected him to hazardous living conditions

while he was incarcerated in the Suffolk County jail. By Memorandum and Order dated April 10, 2009 (the "2009 Decision"), this Court granted defendants' motion for summary judgment dismissing all of Plaintiff's claims, except those pertaining to administrative segregation, for failure to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. §1997e(a). (2009 Decision at 15-16.) Plaintiff then moved for reconsideration, which motion was denied by Memorandum and Order dated October 5, 2015.[1] Presently before the Court are two more "motions for reconsideration" filed by plaintiff on May 9, 2016 and July 18, 2016. For the reasons set forth below, the Court grants reconsideration and upon reconsideration adheres to its original determination.

## DISCUSSION

**I.    Legal Standard for Reconsideration**

The decision to grant or deny a motion for reconsideration lies squarely within the discretion of the district court. *See Devlin v. Transp. Comm'ns Int'l Union*, 175 F.3d 121, 132 (2d Cir. 1999). The standard for a motion for reconsideration "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or [factual] data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *accord Arum v. Miller*, 304 F. Supp. 2d 344, 347 (E.D.N.Y. 2003). Reconsideration "provides the Court with an opportunity to correct manifest errors of law or fact, hear newly discovered evidence, consider a change in the applicable law or prevent manifest injustice." *U.S. Titan, Inc.*

---

[1] In its October 5, 2015 Order, the Court also denied defendants' motion for summary judgment on plaintiff's administrative segregation claims.

v. *Guangzhou Zhen Hua Shipping Co.*, 182 F.R.D. 97, 100 (S.D.N.Y. 1998). The moving party, however, may not repeat "arguments already briefed, considered and decided." *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y.1990); *accord Polsby v. St. Martin's Press, Inc.*, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000); *see also Medoy v. Warnaco Employees' Long Term Disability Ins. Plan*, 2006 WL 355137 (E.D.N.Y. Feb. 15, 2006) ("The standard for . . . reconsideration is strict in order to dissuade repetitive arguments on issues that have already been considered fully by the Court."). Although a "motion for reconsideration . . . provides the Court with an opportunity to [inter alia] . . . hear newly discovered evidence, *U.S. Titan Inc.*, 182 F.R.D. at 100, it must appear that the evidence "was truly newly discovered or could not have been found by due diligence." *Space Hunters, Inc. v. United States*, 500 Fed. Appx. 76, 81 (2d Cir. 2012) (internal quotation marks omitted).

**II.     The Motions for Reconsideration are Granted**

There is no procedural vehicle for the reconsideration of a motion for reconsideration. *See Chesney v. Valley Stream Union Free Sch. Dist.*, 2009 WL 3245384, *3 (E.D.N.Y. Oct. 1, 2009). Nonetheless, given Hill's reliance on recently decided cases, the Court exercises its discretion and grants reconsideration. To the extent that Plaintiff attempts to add new supportive factual allegations that were not proffered in connection with his original opposition to the motion for summary judgment, such information shall not be considered.[2] The additional factual information sprinkled throughout plaintiff's current motions does not meet the criteria for newly discovered evidence as there is no indication that this information was not available for inclusion with Hill's

---

[2] The court notes that Hill was served with a "Local Rule 56.2 Notice to Pro Se Litigants Opposing Summary Judgment," which notice set forth his obligations in opposing the motion for summary judgment.

original papers in opposition to the motion for summary judgment. In other words, the Court grants reconsideration solely to address the three recent cases on which plaintiff principally relies, but without consideration of any new factual assertions. First, however, an overview of the Court's 2009 Decision is in order.

### A. Overview of the 2009 Decision

The Court began by noting although plaintiff filed numerous written grievances while incarcerated in SCCF, he did not dispute that he never initiated, let alone exhausted, the SCCF's grievance procedure with respect to the incidents set forth in the complaint. (2009 Decision at pp. 2, 8.) Rather, he offered several excuses for the failure to do so, which the Court addressed in the context of the then governing[3] three-part test set forth in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004).

With respect to the first prong of the *Hemphill* test, i.e. the availability of administrative remedies, the Court found that plaintiff failed to raise a genuine issue of material fact as to the availability of administrative remedies. The Court discussed and rejected each of plaintiff's arguments as to why administrative remedies were not available. The assertion that such remedies were not available because plaintiff "was told he could not grieve" the matters at issue and was "prevented from going forward" was rejected because he "fail[ed] to identify or describe the person who allegedly gave him this misleading advice [and] when this exchange occurred," and the documents he relied on were "immaterial to the fact in question." (2009 Decision at p. 8-9.) Although Plaintiff claimed that "prison officials retaliate against a prisoner for attempting to

---

[3] As discussed *infra*, the Supreme Court's decision in *Ross v. Blake,* – U.S. – , 136 S. Ct. 1850 (June 6, 2016) supplants the second and third prongs of the test set forth in *Hemphill*. *Williams v. Doe*, 829 F.3d 118, 123-24 (2016).

file grievances with threats or acts of abuse & assault," he did not provide the source of that information and made no claim that he himself was threatened or that threats from the guards rendered the grievance procedures unavailable to him. (*Id*. at p. 9.)

The Court also found wanting plaintiff's three arguments as to why his claims were not grievable. That the SCCF Rules and Regulations provided that "[c]omplaints pertaining to an inmate other than the inmate actually filing the grievance" was irrelevant because "plaintiff is not suing another inmate in this action. Instead, Plaintiff alleges that his injuries resulted from the failure of the SCCF defendants to protect him . . . and there is nothing in the record to suggest that such complaints are not grievable." (*Id*.) The assertion that plaintiff believed his complaints with regard to medical care were not grievable because he had filed grievances concerning medical issues in the past and was told that such grievances were non-grievable was not supported by the document he relied on, viz. a August 23, 2002 denial of a grievance relating to his asthma, as that document post-dated the incidents alleged in the complaint and indicated nothing about the grievability of medical complaints. Rather, it denied the grievance as untimely. (*Id*. at p. 10.) Finally, his reliance on "other denials of grievances he received - which post date and are unrelated to the incidents alleged in the Complaint . . . was unavailing because he was "conflat[ing] denial with non-grievability." The Court reasoned:

> [T]hey were deemed "non-grievable" by the SCFF Coordinator
> who reviewed Plaintiff's filings pursuant to 9 N.Y.C.R.R. §
> 7032.4(f), due to Plaintiff's failure to provides supplemental
> information and explain in detail the subject of his grievances.
> Section 7032.4(f) provides . . . that a grievance that is too vague
> to understand or fails to set forth supporting evidence or
> information may be returned to the inmate. Failure to supply
> sufficient information or evidence within two days shall be cause
> to deny the grievance. . . . Similarly, the SCCF Rules and

> Regulations provide that an inmate has two days to provide
> additional information if required. Thus, Plaintiff's grievance were
> denied and deemed to be "non-grievable" based on Plaintiff's
> failure to provide the SCCF Coordinator with sufficient
> information to enable him or her to proceed with Plaintiff's claims.
> They were not denied because they pertained to issues that are not
> permitted to be grieved under the SCCF Rules and Regulations.

(*Id*. at p. 10-11.)

Turning to the second prong, the Court found defendants did not waive or forfeit the affirmative defense of non-exhaustion as plaintiff did not suggest any facts to support an estoppel argument.

As to special circumstance justifying the failure to exhaust his non-administrative segregation claims, plaintiff relied on that portion of the SCFF Regulations that provides that "[i]ssues that are outside the authority of the Chief Administrative Officer's control" may not be the subject of a grievance. "However, the policies or procedures leading to these decisions may be the subject of a grievance." Specifically, plaintiff argued he should be excused from exhaustion because he did not understand "what was or wasn't outside the authority of the chief administrative officer thereby leaving his grievance to the arbitrary denial by various grievance coordinators . . . who repeatedly cited 'minimum standard 7032.4' which is not in any rule book at Suffolk County jail nor attached as a defense exhibit, so that it isn't known what else is non-grievable." (2009 Decision at 14 (quoting Pl.'s Mem. in Opp'n at 14).) The Court rejected this argument reasoning as follows:

> As explained above, 9 N.Y.C.R.R. § 7032.4 sets
> forth grievance procedures for county jail inmates and provides
> that if a grievance is too vague, it may be returned to the inmate.
> Failure to submit supplemental information within two days
> constitutes cause to deny the grievance. This provision mirrors the

-6-

> SCCF Rules and Regulations which provide that an inmate has two days to provide additional information if required. As discussed *supra*, several of Plaintiff's grievances – which were wholly unrelated to the claims presented herein – were denied based upon Plaintiff's failure to supplement the grievance within two days, despite having received explicit directions to do so.
>
> It is unclear to the Court how denials of unrelated grievances based upon Plaintiff's failure to proffer supplemental information would somehow justify Plaintiff's failure to file *any* grievances for the claims at issue here. Perhaps Plaintiff is suggesting that the repeated denials of his unrelated grievances deterred him from filing grievances for the claims at issue here. Any such assertion, however, is belied by the sheer volume of grievances he did file during the six-month period he was housed at SCCF. (*See* Affidavit of Curtis Sclafani, dated Jan. 4, 2008, Ex. C (copy of Plaintiff's complete grievance file).) Moreover, any misunderstanding Plaintiff had about the two-day requirement does not excuse his failure to even begin the grievance process with regard to the claims at issue here. And finally, the Court finds unpersuasive Plaintiff's suggestion that he believed that these denials, which were deemed "outside the authority of the Chief Administrative Officer's control" based on Plaintiff's failure to supplement the record, led Plaintiff to doubt whether his claims concerning abuse, lack of medical care, etc., were grievable.

(2009 Decision at 14-15.)

### B. Plaintiff's Arguments

Plaintiff directs the Court's attention primarily to three cases in support of his motions: *Ross v. Blake,* – U.S. – , 136 S. Ct. 1850 (June 6, 2016)*; Hubbs v. Suffolk County Sheriff's Dept.*, 788 F.3d 54 (2d Cir 2015); and *Williams v. Doe*, 829 F.3d 118 (2016).

*Hubbs* requires reconsideration and reinstatement of all claims, it is argued, because that "decision has already found the SCFF rule book language (e.g. "outside the control of the warden") ambiguous." (DE 161 at 7; *see also* DE 145 5-7.) Furthermore, Hill asserts that the "three kinds of circumstances in which an administrative remedy, although officially on the

books, is not capable of use to obtain relief" identified in *Ross* and *Williams* are all encompassed in this case requiring reinstatement of his claims. (DE 161 at 1-2.)

> **C.** **Upon Reconsideration the Court Adheres to Its Original Determination as *Ross*, *Williams,* and *Hubbs* Do Not Require Reinstatement of Hill's Claims**

The Court's begins its analysis with a summary of the three cases relied upon by Hill.

> 1. <u>*Ross*</u>

In *Ross*, the Court rejected the Second Circuit's "extra-textual" exception to the PLRA's exhaustion requirement which allowed the taking into account of "special circumstance" to justify a prisoner's failure to comply with administrative procedural requirements. 136 S. Ct. at 1856-57. Rather, it held that the only limit to the PLRA's exhaustion requirement "is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" 136 S. Ct. at 1862. The Supreme Court enumerated three nonexhaustive circumstances in which grievance procedures would be unavailable. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end - with officers unable or consistently unwilling to provide any relief to aggrieved inmates." 136 S. Ct. at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" the administrative process is rendered unavailable. *Id*. at 1860.

2.  *Williams*

Shortly after *Ross*, the Second Circuit decided *Williams*. In *Williams*, the plaintiff alleged he was beaten by two correction officers. Several days later, while he was housed in the special housing unit ("SHU"), he prepared a grievance and gave it to a corrections officer to forward to the grievance office as required by the grievance procedures that applied to inmates in SHU. A week later, the plaintiff asked the superintendent why he had not received a response and was told she knew nothing about it and would look into it. Several days later, the plaintiff was transferred to another facility. He never received a response to his grievance and claimed that the correction officer never filed it for him. He never appealed the grievance but commenced a 1983 action; defendants moved to dismiss on the basis Williams failed to exhaust his administrative remedies. 829 F.3d at 120-21.

The *Williams* Court began its analysis by recognizing that "to the extent that [the] special circumstances exception established in *Giano v. Goord*, 380 F.3d 670, 675-76 (2d Cir. 2004), and *Hemphill*, 380 F.3d at 689, permits plaintiffs to file a lawsuit in federal court without first exhausting administrative remedies that were, *in fact*, available to them, those aspects of *Giano* and *Hemphill* are abrogated by *Ross*. Indeed, *Ross* largely supplants [the] *Hemphill* inquiry by framing the exception issue entirely within context of whether administrative remedies were actually available to the aggrieved inmate." 829 F.3d at 123 (emphasis in original). The Court therefore proceeded to determine whether the PLRA's "unavailability" exception applied to the matter before it, its analysis informed by the three circumstances discussed in *Ross*.[4]

---

[4] The *Williams* Court noted that the three *Ross* circumstances "do not appear to be exhaustive" but did not "opine on what other circumstances might render an otherwise available administrative remedy actually incapable of use." 829 F.3d at 123 n.2.

Accepting as true the allegation that the corrections officer never filed Williams' grievance, the *Williams* court determined that the governing regulations only contemplated appeals of grievances that are actually filed; the regulations did not specify a process to appeal or otherwise exhaust when a grievance by a prisoner housed in SHU is given to a corrections officer to file as per specified procedure, but the officer fails to file it. As the regulations failed to give any guidance to an inmate whose grievance was not filed, the court concluded that the regulations were "'so opaque' and 'so confusing that . . . no reasonable prisoner can use [it].'" 829 F.3d at 124 (alterations in original) (quoting *Ross*, 136 S. Ct. at 1859).)

    3.    <u>*Hubbs*</u>

*Hubbs* was decided nearly a year prior to *Ross*. Hubbs was an inmate at SCCF where he was being held pending the conclusion of his trial, which trial was being conducted at the Suffolk County Supreme Court. The warden, a sheriff's department employee, was in charge of the SCCF and correction officers from the correction division of the sheriff's department staffed the facility. When Hubbs was at the courthouse but not in the courtroom, he was held in a holding cell in the custody of deputy sheriffs from the Suffolk County Sheriff's Department, who are not correction officers and do not work in the correction division. 788 F.3d at 56-57. According to Hubbs, while he was in the holding cell awaiting transfer back to SCFF he was beaten by several deputy sheriffs. An attorney for Hubbs sent a fax to the Suffolk County Sheriff informing him of the assault and requesting an investigation. In addition, Hubbs' mother called the jail to report the incident but was told "to raise the issue with internal affairs because '[s]heriffs handle anything on the courtroom side of the facility.'" *Id.* at 57 (alteration in original). Mrs. Hubbs called internal affairs several time and was told the incident would be investigated. Internal affairs

eventually concluded there had been no wrongdoing on the part of the deputies. Hubbs then commenced suit. *Id.*

The *Hubbs* court began its analysis by noting that "[w]hether an administrative remedy was available to a prisoner in a particular prison or prison system is ultimately a question of law, even when it contains factual elements." *Id*. at 59. Also, "defendants bear the *initial* burden of establishing, by pointing to legally sufficient sources, such as statutes, regulations or grievance procedures, that a grievance process exists and applies to the underlying dispute . . . [and if they meet that] initial burden, administrative remedies may nonetheless be deemed unavailable if the plaintiff can demonstrate that other factors . . . rendered a nominally available procedure unavailable as a matter of fact." *Id*. (emphasis added) (internal quotations omitted). Applying these precepts to the case before it, the Court found that the defendants had failed to meet their initial burden.

First, the defendants had not identified any statute or regulations showing that administrative remedies were available for events that took place in the county court holding facility. Nor did the inmate handbook or the affidavit submitted by defendant establish that the SCCF grievance procedure applied to the court holding facility. The handbook only raised the question of whether what happened to Hubbs in the county court holding cell was within the control of the warden. The submitted affidavit did not establish "that, even in the absence of a statutory or regulatory scheme, SCCF practice was to accept and handle grievances arising from occurrences in the court holding facility while inmates were in the custody of the sheriff's department, and provide redress when merited." *Id*. at 60. Moreover, any assertion that such grievances would be accepted "conflicts with the process outlined in the inmate handbook, which

requires inmates first to raise issues with the officer assigned to their housing unit, and then submit a grievance form to the sergeant assigned to the housing unit" as applying it to the court holding facility "would require the inmate to follow different procedures than those specified in the inmate handbook." *Id*. In closing, the *Hubbs* court reiterated that "[t]he burden . . . is on the defendant to establish at the outset that an administrative remedy was 'available" in the sense that a grievance policy or procedure existed and covered the dispute at hand." *Id*. at 61.

The Court will now address the application of *Ross*, *Williams* and *Hubbs* to the present case, starting with the oldest case, *Hubbs*.

4. *Hubbs* Does Not Require Reinstatement of the Dismissed Claims

Relying on *Hubbs*, Hill asserts the defendant have failed to establish that a grievance procedure was available as the portion of the SCCF Handbook which excludes from the grievance procedures "matters outside the warden's control" is "unconstitutionally vague" as "[n]othing in the rule book would alert prisoners that medical complaints were within the control of the warden and thereby grievable" and because internal affairs investigated his assault complaint "and never once told plaintiff to file a grievance." (DE 145 at 6-7). Both these arguments were considered and rejected by the Court in its 2009 Decision and *Hubbs* does not warrant a different result.

In contrast to *Hubbs* where the relevant conduct occurred outside the SCCF, in this case all the alleged incidents occurred at the SCCF. The grievance procedure regulations in existence in 2002 specifically provided, in relevant part, that a grievance means a "complaint concerning either written or unwritten facility policies, procedures, rules, practices, programs or the action or inaction *of any person within the facility.*" 9 N.Y.C.R.R. § 7032.2 (emphasis added). The

regulations in existence in 2002 demonstrate that administrative remedies were available for Hill's grievances unrelated to administrative segregation,[5] including his "medical complaint."[6] Also, the affidavit submitted by defendants avers that Hills' claims of being assaulted, forcibly medicated and denied medical care were proper subject of the Inmate Grievance Program and not excluded from the grievance program by the lists of complaints that cannot be grieved. (DE 97-2 at ¶ 4.) Defendants therefore met their initial burden of demonstrating that a grievance procedure was available to Hill.

Hill's assertion that medical personnel were "contracted" is unsupported by any evidence. Even if the assertion is correct, that does not mean that medical personnel located in the correctional facility are not within the control of the warden or that matters related to medical care at the correctional facility were not grievable. To the extent that the provision excluding from the grievance process those matters "outside the control of the warden" may have been "susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 136 S. Ct. at 1859. With respect to the investigation by internal affairs, the Court noted in its 2009 Decision that plaintiff failed to provide any particulars such as who allegedly gave him misleading advice and when the exchange occurred.

---

[5] Citing SCCF's Rules and Regulation, the Court has previously determined that administrative segregation housing decision are not subject to the grievance procedure. *See* Memorandum and Order dated October 5, 2015 (DE 122) at p. 9.

[6] There are two medical claim set forth in the complaint. First, on April 3, 202 a "doctor forcibly injected petitioner with a psychotic drug against his will" while he was being assaulted by corrections officers. Second, Hill alleges that he did not receive any medical treatment for the assault until after he came back from Court the following day but does not allege that he asked for medical assistance or that any medical personnel failed to provide him with appropriate treatment.

Hill's attempt to now provide those particulars is rejected as it does not constitute newly available evidence.

In sum, applying the principles of *Hubbs* to the record before the Court at the time of the original summary judgment motion does not warrant reinstatement of Hill's previously dismissed claims.

5. *Ross* and *Williams* Do Not Warrant Reinstatement of the Dismissed Claims

Hill asserts that all three of the circumstances identified in *Ross* in which a grievance procedure is unavailable exist in this case, i.e. the grievance procedure operates as a dead end, it is so opaque that is it incapable of use, and prison administrators thwart inmates from taking advantage of it.

Hill does not point to any evidence of record to support that the grievance procedure operates an a dead end. To the extent he may be relying on the denials of grievances he received, the Court has addressed this argument; those denials were based upon Hill's failure to provide supplemental information and explain in detail the subject of his grievances as required by the governing regulations. *See* 2009 Decision at p. 10-11.

Nor are the regulations so opaque they are incapable of use. Unlike *Williams* on which Hill relies, this is not a situation where a prisoner gave his grievance to a corrections officer but the corrections officer never filed it, a situation for which the applicable grievance regulations gave "no guidance whatsoever." *Williams*, 829 F.3d at 124. Hill admits in his complaint that he never filed a grievance regarding the claims at issue, *see* Complaint at p. 4, ¶ IIB, and has failed to demonstrate that the procedures were essentially unknowable. The grievance procedure in existence in 2002 covered, inter alia, the actions of any "person within the facility." 9

N.Y.C.R.R. § 7032.2. The procedure required Hill to attempt to resolve the issue with the officer assigned to his housing unit and if there was no acceptable resolution, he had to file a written grievance. *See Riles v. Buchanan,* –Fed. Appx. – , 2016 WL 4572321, *3 (2d Cir. Sept. 1, 2016). As applied to the dismissed claims, the regulations are not opaque.

Finally, with respect to the allegation that he was misinformed as to the applicability of the grievance procedure, the Court rejected this argument in its 2009 Decision as plaintiff submitted only conclusory statements which standing alone were insufficient to withstand summary judgment. 2009 Decision at 8-9. *See also Khudan v. Lee*, 2016 WL 4735364 (S.D.N.Y. Sept. 8, 2016) (conclusory allegations of interference with grievance procedures are insufficient to withstand summary judgment) (citing cases); *Winston v. Woodward*, 2008 WL 2263191 (S.D.N.Y. May 30, 2008) (failure to exhaust not excused in light of failure to put forth any corroborating evidence).

## CONCLUSION

For all of the above reasons, Plaintiff's motions for reconsideration are granted and upon reconsideration, the Court adheres to its earlier determination.

**SO ORDERED.**

Dated: Central Islip, N.Y.
      November 29, 2016      /s/    Denis R. Hurley
                                        Denis R. Hurley
                                        United States District Judge