## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Demetrius Hill, | | |
| | Plaintiff, | |
| | -v- | 2:02-cv-3901 (NJC) (AYS) |
| Al Tisch, et al., | | |
| | Defendants. | |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Demetrius Hill ("Mr. Hill") filed this action on July 8, 2002 against several individuals including Thomas Murphy, Peter Lehman, Helen Geslak, and Gerard Reynolds (collectively, "Defendants"), bringing six claims under 42 U.S.C. § 1983 arising out of his pretrial detention in the Suffolk County Correction Facility at Riverhead (the "SCCF"). (Compl., ECF No. 1.)[1] Judge Denis R. Hurley, to whom this action was initially assigned, granted summary judgment on Mr. Hill's Second, Third, Fifth, and Sixth Claims (the "Non-Administrative Segregation Claims") and denied summary judgment on Mr. Hill's First and Fourth Claims (the "Administrative Segregation Claims"), which relate to Mr. Hill's administrative segregation. *Hill v. Tisch*, No. 02-cv-3901, 2009 WL 3698380 (E.D.N.Y. Oct. 30,

---

[1] On February 21, 2024, Judge Joanna Seybert, to whom this action was previously assigned, terminated "John Doe 1 through 6 (S.E.R.T. of 4/3/02), Jonesy (Mr., Correction Officer), Kearsey (Sgt.), Sanicruz (Mr., Correction Officer), Singer (Lieutenant), Al Tisch (Sheriff), Walsh (Sgt.), West Bagnowski (Warden), and John Doe (Doctor)" from this action. (Elec. Order, Feb. 21, 2024.)

2009); *Hill v. Tisch*, No. 02-cv-3901, 2015 WL 5821435 (E.D.N.Y. Oct. 5, 2015).[2] This action was reassigned to Judge Joanna Seybert, who ruled on various pre-trial motions and presided over several days of a jury trial, which commenced on January 13, 2025. On the third day of trial, Mr. Hill filed a motion seeking Judge Seybert's recusal (ECF No. 261), which she granted on January 15, 2025. That same day, the action was reassigned to this Court's docket. (Elec. Order, Jan. 15, 2025)

On May 29, 2025, the parties appeared for a pre-trial conference. (Min. Entry, May 29, 2025.) At the start of that conference, Mr. Hill hand served Defendants with an omnibus motion raising numerous issues ("Motion"). (*Id.*) The Court instructed Mr. Hill that motions must be filed on the docket before being raised during a court hearing and ordered him to file the motion on the docket following the hearing. (*Id.*) Nevertheless, the Court permitted Mr. Hill to argue the motion and ordered Defendants to file a response to Mr. Hill's motion by June 3, 2025. (*Id.*)

On June 2, 2025, Mr. Hill filed the Motion (Mot., ECF No. 271). On June 3, 2025, Defendants filed their response. (Resp., ECF No. 272). On June 16, 2025, Mr. Hill filed a letter, which the Court construes as his reply. (Reply, ECF No. 273.)

On June 26, 2025, the Court ordered the parties to file supplemental letters by July 1, 2025, regarding whether, in light of the Supreme Court's June 18, 2025 decision in *Perttu v.*

---

[2] Mr. Hill filed three motions for reconsideration of Judge Hurley's October 30, 2009 Order granting summary judgment to Defendants on the Non-Administrative Segregation Claims. (ECF Nos. 113, 145, 161.) In an October 5, 2015 Order, Judge Hurley denied Mr. Hill's first motion for reconsideration (ECF No. 113) because Mr. Hill failed to "point to any controlling decisions or factual data that the court overlooked." *Hill*, 2015 WL 5821435, *6. Judge Hurley ruled on the second and third motions for reconsideration in a November 29, 2016 Order. *Hill v. Tisch*, No. 02-cv-3901, 2016 WL 6991171 (E.D.N.Y. Nov. 29, 2016). Judge Hurley granted reconsideration solely to address three new cases that Mr. Hill raised in the motions, but nevertheless concluded that none of the cases warranted "reinstatement of the dismissed claims." *Id.* at *1–2, 6–7. The November 29, 2016 Order thus affirmed the October 30, 2009 Order's grant of summary judgment to Defendants on the Non-Administrative Segregation Claims.

*Richards*, 605 U.S. ___, 145 S. Ct. 1793 (2025), reconsideration of the Court's October 30, 2009 Order granting summary judgment to Defendants on Plaintiff's Non-Administrative Segregation Claims, *see Hill*, 2009 WL 3698380, is warranted as previewed in Mr. Hill's Motion (*see* Mot. at 2–3). On July 1, 2025, Mr. Hill and Defendants filed supplemental letters (Pl.'s Suppl. Ltr., ECF No. 275; Defs.' Suppl. Ltr., ECF No. 274). On July 2, 2025, Mr. Hill filed a letter in response to Defendant's supplemental letter. (Pl.'s Resp. Ltr., ECF No. 276.) The omnibus Motion is therefore fully briefed.

For the reasons addressed below, Mr. Hill's Motion is granted in part, denied in part, and reserved in part.

## DISCUSSION

Mr. Hill makes seven distinct, though at times interrelated, requests in his motion.

First, Mr. Hill seeks permission to offer at trial evidence that is not identified on Defendants' list of proposed exhibits (ECF No. 249-1). (Mot. at 1.) Because Mr. Hill previously failed to identify trial exhibits by any of the numerous deadlines set by the Court, this request constitutes a motion under Rule 16(e) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") for leave to amend Mr. Hill's Second Proposed Pre-Trial Order (Second PPTO, ECF No. 196) to include the additional exhibits.

Second, Mr. Hill requests that the Court permit the jury "to decide whether or not the grievance process was available to" him during his incarceration in the SCCF. (Mot. at 2.)[3] This request is a motion for reconsideration under Rule 54(b), Fed. R. Civ. P., of Judge Hurley's October 30, 2009 Order, which granted the Defendants summary judgment on Mr. Hill's Non-

---

[3] Excerpts from the parties' submissions are reproduced here exactly as they appear in the original. Unless otherwise noted, errors in spelling, punctuation or grammar will not be corrected or highlighted.

Administrative Segregation Claims due to Mr. Hill's failure to exhaust those claims through the SCCF grievance process. *See Hill*, 2009 WL 3698380.

Third, Mr. Hill requests that the jury decide what conditions of confinement he experienced during his administrative segregation in the SCCF. (Mot. at 2.) Specifically, Mr. Hill seeks to offer evidence at trial showing that the following were "all part of the conditions of confinement" he experienced in administrative segregation: "beatings, assaults, handcuffs, shackles," the requirement to wear a waist chain, and "forcible medication while handcuffed and shackled by six corrections officers." (*Id.*)

Fourth, Mr. Hill requests that the Court "reinstate" Suffolk County as a defendant in this action. (*Id.* at 3.) Suffolk County was not named as a defendant in the Complaint. (*See* Compl. at 1.) On October 27, 2024, Mr. Hill filed a Motion to Amend the Complaint (Mot. Am., ECF No. 230), which included a request to name Suffolk County as a defendant in this case. (*Id.*) Judge Seybert denied the Motion to Amend during a December 11, 2024 hearing. (*See* ECF No. 236.) Accordingly, Mr. Hill's request for Suffolk County to be named as a defendant in this action is a motion for reconsideration under Rule 60(b), Fed. R. Civ. P., of Judge Seybert's December 11, 2024 Order denying Mr. Hill's Motion to Amend the Complaint. (*See id.*)

Fifth, Mr. Hill requests that the Court permit him to introduce at trial before the undersigned the "electronic sound recordings" of witness testimony made of during the several days of trial before Judge Seybert, which took place prior to the reassignment of this case to the undersigned. (Mot. at 3.)

Sixth, Mr. Hill requests that this Court permit him to offer for admission as evidence at trial sample handcuffs, shackles, and a waist chain. (*Id.*)

Seventh, Mr. Hill requests "that defendant warden Bagnowski and his estate be reinstated as a defendant in this case." (*Id.*) The defendant named in the Complaint as Defendant "West Bagnowski, Warden" is in fact Wesley Bednowsky ("Bednowsky"), who is deceased. (Compl. at 1; ECF No. 129.) Judge Seybert terminated Bednowsky from this case on February 21, 2024. (Elec. Order, Feb. 21, 2024.) Accordingly, Mr. Hill's request that Warden Bagnowski be "reinstated as a defendant" in this action constitutes as a motion for reconsideration under Rule 60(b) of Judge Seybert's February 21, 2024 Order terminating Bednowsky as a defendant. (*See id.*)

This Order addresses each of Mr. Hill's requests in the following order. First, this Court evaluates Mr. Hill's second request, which seeks reconsideration of Judge Hurley's grant of summary judgment to Defendants on the Non-Administrative Segregation Claims. Second, this Court addresses Mr. Hill's first, fifth, and six requests, all of which pertain to evidence that Mr. Hill seeks to offer at trial before the undersigned, which is scheduled to begin with jury selection on July 21, 2025. Third, this Court rules on Mr. Hill's fourth and seventh requests, which seek reconsideration of Judge Seybert's December 11, 2024 Order denying Mr. Hill's Motion to Amend the Complaint and her February 21, 2024 Order terminating Bednowsky as a defendant in this action following his death. Finally, this Court addresses Mr. Hill's third request, by which he seeks a ruling that it is for the jury to decide whether the conditions of confinement Mr. Hill experienced when detained in administrative segregation in the SCCF included, among other things, alleged beatings, assaults, and forcible medication while handcuffed and shackled by corrections officers.

## I.    Second Request: Motion for Reconsideration of Judge Hurley's Summary Judgment Order

### A.  Background

On January 4, 2008, Defendants moved for summary judgment on all six of Mr. Hill's claims, asserting that Mr. Hill failed to exhaust the administrative remedies available to him prior to bringing suit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (ECF No. 88; ECF No. 88-10 at 1.) The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

In an October 30, 2009 Order, Judge Hurley found that Mr. Hill "never initiated, let alone exhausted, the SCCF's grievance procedures prior to filing this case." *Hill*, 2009 WL 3698380, at *4. Judge Hurley held that Mr. Hill could have raised his Non-Administrative Segregation Claims through the SCCF's grievance procedure, but that this procedure was *not* an available avenue for raising Mr. Hill's Administrative Segregation Claims because administrative segregation housing decisions were explicitly exempted from the SCCF's grievance procedures. *Id.* at *4–7. Accordingly, Judge Hurley granted summary judgment to Defendants on Mr. Hill's Non-Administrative Segregation Claims due to his failure to administratively exhaust those claims but denied Defendants summary judgment on Mr. Hill's Administrative Segregation Claims. *Id.* at *8. As noted, Mr. Hill seeks reconsideration under Rule 54(b) of the ruling dismissing the Non-Administrative Segregation Claims for failure to exhaust administrative remedies as required by the PLRA. (Mot. at 1.)

B. Legal Standards

Rule 54(b) provides that "any order or other decision, however designated, that adjudicates fewer than all the claims . . . does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). However, "[t]he law of the case doctrine . . . counsels a court against revisiting its prior rulings in subsequent stages of the same case absent cogent and compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008);[4] *see also Reynolds v. HNS Mgmt. Co.*, No. 23-484-cv, 2025 WL 783733, at *2 (2d Cir. Mar. 12, 2025). Litigants may not use Rule 54(b) to relitigate issues upon which the court has already ruled. *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (citing *Zdanok v. Glidden Co.*, 327 F.2d 944, 953 (2d Cir. 1964) ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.")). "The standard for showing a change in law sufficient to avoid the . . . law-of-the-case doctrine demands that more than mere doubt is necessary to reconsider prior decisions." *Stegemann v. United States*, 132 F.4th 206, 212 (2d Cir. 2025). "[T]he law of the case will be disregarded only when the court has a *clear conviction of error* with respect to a point of law on which its previous decision was predicated." *Id.* (citing *Fogel v. Chestnutt*, 668 F.2d 100, 109 (2d Cir. 1981)) (emphasis added).

---

[4] Unless otherwise indicated, case quotations omit all internal quotation marks, brackets alterations, and citations.

C.  Analysis

Mr. Hill's arguments for reconsideration of Judge Hurley's grant of summary judgment to Defendants on the Non-Administrative Segregation Claims rest on the following assertions: (1) that enforcing Judge Hurley's summary judgment ruling would constitute legal error by amounting to the application of what Mr. Hill calls "horizonal stare decisis"; (2) that reconsideration is warranted due to intervening changes in the law, including the Supreme Court's decision in *Perttu v. Richards*, 605 U.S. ___, 145 S. Ct. 1793 (2025); and (3) that manifest injustice would result from a denial of reconsideration of Judge Hurley's 2009 ruling, which was issued more than fourteen years ago. These arguments are unpersuasive for the following reasons. Mr. Hill has not identified an intervening change of controlling law, the availability of new evidence, the need to correct clear error or to prevent manifest injustice, or any other cogent and compelling reason for reconsidering the grant of summary judgment to Defendants on the Non-Administrative Segregation Claims.

### i.  Mr. Hill Does Not Identify Authority Calling Into Question a Court's Enforcement of a Summary Judgment Ruling Made in the Same Case.

Mr. Hill argues that the application of the law of the case doctrine to his request for reconsideration of the October 30, 2009 Order is tantamount to the application of "horizontal stare decisis," which has not been recognized by the Supreme Court or Second Circuit. (Mot. at 1.) Mr. Hill relies on three cases to support his argument: *Camreta v. Greene*, 563 U.S. 692 (2011); *United States v. Mason*, 412 U.S. 391 (1973); and *U.S.S.E.C. v. Citigroup Glob. Mkts., Inc.*, 752 F.3d 285 (2d Cir. 2014). (Mot. at 1–2.) None of these cases contravene the proposition recognized by the Second Circuit in *Ali v. Mukasey* that the law of the case doctrine counsels a court *against* revisiting prior rulings *in subsequent stages of the same case* absent cogent and

compelling reasons such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.

In *Camreta v. Greene*, the Supreme Court recognized that "[a] decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge *in a different case*." *Camreta*, 563 U.S. 709 n.7 (emphasis added). Contrary to Mr. Hill's characterization, *Camreta* does not address the level of deference that a court should afford a prior decision reached *in the same case*, whether that prior decision is made by the same judge or, as here, a different judge.

Nor does Mr. Hill persuasively rely on *Citigroup Global Markets, Inc.*, which he cites as the source of the following quotation: "[A] decision of a federal District Court judge is not binding president in either a different judicial district, the same judicial district or even upon the same judge in a different case." (Mot. at 2.) This quotation, however, does not appear in *Citigroup Global Markets, Inc.*, and is almost identical to the text from *Camreta* on which Mr. Hill relies, which as addressed above does not support reconsideration of the October 30, 2009 Order. *See Camreta*, 563 U.S. 709 n.7. *Citigroup Global Markets, Inc.* does not address whether a court should enforce a prior ruling in a case made by a judge to whom the case was previously assigned, and therefore does not assist Mr. Hill.

Mr. Hill's reliance on *United States v. Mason* is unpersuasive. Mr. Hill argues that in this decision, the Supreme Court "reinforced that district courts are not bound by each other's decisions[,] distinguishing the nature of trial level adjudication from the preceidential function of Appellent courts." (Mot. at 1–2.) Even if that assertion were true, it does not address the deference afforded by a district court to a decision previously reached in the same case. Moreover, Mr. Hill's characterization of *Mason* is inaccurate. In that case, the Supreme Court

9

observed that "Supreme Court decisions are on occasion overruled and that the opportunity to overrule them would never arise if litigants did not continue to challenge their validity." *Mason*, 412 U.S. at 399. The Supreme Court further noted that under the doctrine of stare decisis, litigants should "be able to rely on" Supreme Court decisions "and not be needlessly penalized for such reliance." *Id.* at 399–400. The decision does not suggest, much less establish, the proposition that a district court should revisit a prior summary judgment ruling made in the same case by a different judge.

### ii. *Mr. Hill Does Not Identify an Intervening Change in Controlling Law or Clear Error That Warrants Reconsideration of the October 30, 2009 Order.*

Mr. Hill argues that there "have been intervening and transformative cases that have come out of the United States Supreme Court and the 2nd circuit court of Appeals that would warrant a re-examination of this case from top to bottom." (Mot. at 3.) He further argues that the Supreme Court's decision in *Perttu v. Richards* warrants reconsideration of Judge Hurley's October 30, 2009 Order. (Mot. at 3.)[5] Defendants argue that *Perttu* is distinguishable from this action and that Mr. Hill has not identified any change in controlling law since the October 30, 2009 Order granted Defendants summary judgement on the Non-Administrative Segregation Claims. (Defs.' Suppl. Ltr. at 2–4.)

Judge Hurley analyzed Defendants' failure-to-exhaust defense under the three-part inquiry laid out in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004). *Hill*, 2009 WL 3698380, at *4–8. In order to evaluate whether a plaintiff failed to exhaust administrative remedies,

---

[5] At the time Mr. Hill filed his Motion, the Supreme Court had heard argument but had not yet decided *Perttu*. Following the issuance of the decision on June 18, 2025, this Court ordered the parties to provide supplemental briefing concerning whether *Perttu* supports Mr. Hill's motion for reconsideration of the October 30, 2009 Order granting Defendants summary judgment on the Non-Administrative Segregation Claims. (Elec. Order, June 26, 2025.)

*Hemphill* required courts to (1) confirm that "administrative remedies were in fact available to

the prisoner," (2) determine that defendants have not forfeited the affirmative defense of non-

exhaustion and have not inhibited the plaintiff's exhaustion of remedies, and (3) confirm that no

"special circumstances have been plausibly alleged that justify the prisoner's failure to comply

with administrative procedural requirements." *Hemphill*, 380 F.3d at 686. *Hemphill* has since

been abrogated by *Ross v. Blake*, 578 U.S. 632 (2016), in which the Supreme Court held that the

PLRA's exhaustion requirement is mandatory and cannot be excused in special circumstances.

*Id.* at 635. However, in *Ross*, the Supreme Court maintained that "[a] prisoner need not exhaust

remedies if they are not available," and remanded the case to determine whether the

administrative remedies the plaintiff failed to exhaust were available to him. *Id.* at 636. It

explained the meaning of the term "available" in the context of administrative remedies as

follows:

> As we explained in *Booth,* the ordinary meaning of the word "available" is
> "capable of use for the accomplishment of a purpose, and that which is
> accessible or may be obtained." . . . Accordingly, an inmate is required to
> exhaust those, but only those, grievance procedures that are "capable of use"
> to obtain "some relief for the action complained of."

*Id*. at 642 (citing *Booth v. Churner*, 532 U.S. 731, 737–38 (2001)). Under *Ross*, a defendant may

still successfully raise a failure-to-exhaust defense where a plaintiff has not exhausted remedies

that are capable of use to obtain some relief for the challenged action. *See id.*

    *Ross* does not compel reconsideration of the October 30, 2009 Order because Judge

Hurley found that the SCCF grievance procedure *was available* to Mr. Hill as an avenue for

raising his Non-Administrative Segregation Claims and that Mr. Hill "never initiated, let alone

exhausted," the SCCF grievance procedure. *Hill*, 2009 WL 3698380, at *4–6. Even if Judge

Hurley applied *Ross*, the result would have been the same: the Non-Administrative Segregation

11

Claims would not survive summary judgment because Mr. Hill did not invoke or even attempt to invoke grievance procedures that were capable of use to obtain some relief: for the alleged excessive force and forced medication on April 3, 2022; the alleged denial of proper medical care on April 4, 2002; Defendants' alleged failure to protect Mr. Hill from assault by another inmate and denial of medical care in June 2002; and alleged verbal and physical attacks by SCCF officers. The fact that the Supreme Court decided *Ross* years after Judge Hurley issued the October 30, 2009 Order does not cause the Court to have "a clear conviction of error with respect to a point of law on which its previous decision was predicated." *Stegemann*, 132 F.4th at 212. Accordingly, *Ross* does not counsel for reconsideration of the grant of summary judgment to Defendants on the Non-Administrative Segregation Claims.

Furthermore, the Court has conducted a careful and independent review of the record, including Mr. Hill's Complaint (Compl.), the parties' submissions relating to Defendants' Motion for Summary Judgment (ECF Nos. 88, 93, 96–97, 99, 102, 106) and Mr. Hill's Motion for Reconsideration of the October 30, 2009 Order (ECF Nos. 111–113, 115–116), and finds that Judge Hurley did not make any legal error in granting summary judgment to Defendants on the Non-Administrative Segregation Claims in the October 30, 2009 Order. Mr. Hill failed to submit, or even attempt to submit, grievances relating to the conduct at issue through the available grievance procedures. The October 30, 2009 Order addresses each of Mr. Hill's arguments as to why he was not able to pursue the SCCF grievance procedures for his Non-Administrative Segregation Claims with the sole exception of Mr. Hill's argument, raised in the Complaint (Compl. at 14) and in his response to Defendants' supplemental letter (Pl.'s Resp. Ltr. at 1), that he could not pursue grievances because the officers allegedly involved in the challenged conduct did not "wear name tags" and their "badge numbers are so 'tiny' they cant be

read." Compl. at 14; *see also Hill*, 2009 WL 3698380, at \*4–6. However, this argument does not excuse Mr. Hill's failure to exhaust under Second Circuit precedent.

Despite Mr. Hill's challenges in identifying the officers involved in the alleged conduct at issue in the Non-Administrative Segregation Claims, Mr. Hill could have filed grievances describing the challenged conduct and the officers allegedly involved even if he was unable to discern the officers' names or badge numbers. Under the PLRA, "a grievance need only alert the prison to the nature of the wrong for which redress is sought" and "adequately describe the alleged misconduct." *Edwards v. Arocho*, 125 F.4th 336, 347 (2d Cir. 2024). The Second Circuit has held that a "grievant is under no obligation to lay out the facts, articulate legal theories, or demand particular relief." *Id.* Mr. Hill could have filed grievances describing the challenged conduct and the officers allegedly involved even if he was unable to discern the officers' names or badge numbers. Furthermore, Mr. Hill has in fact filed at least one SCCF grievance without naming the officers involved. (*See* ECF No. 97-4 at 5.) In that grievance, which was filed on June 24, 2002, Mr. Hill alleged that unnamed members of the S.E.R.T. team took his property from his cell on April 3, 2002—the same date as the excessive force and forced medication alleged in Mr. Hill's Second Claim. Nevertheless, Mr. Hill did *not* similarly file a grievance concerning *any* of his Non-Administrative Segregation Claims, including the claim that he was subjected to excessive force and forced medication on April 3, 2002. Accordingly, Mr. Hill's argument that the SCCF grievance procedures were unavailable to him because he was unable to specifically identify the officers' names or badge numbers is unpersuasive.

Mr. Hill also argues that the Supreme Court's recent decision in *Perttu* constitutes an intervening change in controlling law for two reasons. First, he contends that administrative grievance procedures were not available to him during his detention and that he "always

13

contended this over the past 23 years." (Mot. at 3.) Specifically, Mr. Hill asserts that his Sixth

Claim, which challenges alleged verbal and physical threats against him:

> specifically presents the issue that [he] was prevented from utilizing the
> grievance process, and that it prevented him from being able to petition
> the government for redress. Just as the claim that Suffolk County corrections
> officers deliberately wear no name tags and tiny unreadable numbers were
> worn to prevent prisoners from being able to identify staff or file complaints
> or grievances.

(Mot. at 2.) In conjunction with the Sixth Claim, the Complaint alleges that Mr. Hill "attempted

to write various grievances all to no avail because anything security related cannot be grieved an

they cant compensate or redress the numerous assaults [he's] suffered." (Compl. at 14.)

Second, Mr. Hill argues that the October 30, 2009 Order "stripped" him "of his 7th

Amendment Right to a jury trial" against ten or eleven terminated Defendants "who were

directly involve[d]" in the alleged events underlying his Non-Administrative Segregation

Claims. (Pl.'s Suppl. Ltr. at 1.) Accordingly, Mr. Hill asks that the Court "reinstate all of the

claims and allow them to proceed to trial with the first four defendants [on] July 21, 2025,"

permitting the jury to decide whether Defendants have met their burden to prove the affirmative

defense that Mr. Hill failed to use available administrative grievance procedures to exhaust prior

to filing his Non-Administrative Segregation Claims. (*Id.* at 2.) Mr. Hill also requests that the

Court give the terminated Defendants 30 days to prepare for trial on all six claims and hold a

second trial no later than September 2025. (*Id.*)

*Perttu v. Richards*, 605 U.S. ___, 145 S. Ct. 1793, does not constitute an intervening

change in controlling law. There, an incarcerated plaintiff sued a prison employee "for violating

his constitutional rights, including his First Amendment right to file grievances." *Id.* at 1798. The

plaintiff alleged that when "he tried to file grievance forms" reporting the defendant's alleged

sexual abuse, the defendant "destroyed them and threatened to kill him if he filed more." *Id.* The

14

parties agreed that the facts concerning whether plaintiff exhausted administrative remedies and the First Amendment retaliation claim were intertwined. *See id.* at 1802–03. Against that backdrop, the Supreme Court held "that parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment." *Id.* at 1800.

This action is distinguishable from *Perttu* for two reasons, First, the facts concerning the Non-Administrative Segregation Claims are not intertwined with facts concerning whether Mr. Hill exhausted administrative remedies in the SCCF. Through the Non-Administrative Segregation Claims, Mr. Hill alleges that, while he was detained pre-trial in the SCCF, Defendants subjected him to excessive force, were deliberately indifferent to his need for medical care, failed to protect him from violence by another inmate, and subjected him to verbal and physical threats. The summary judgement record does not show common factual questions concerning these claims and whether Mr. Hill invoked grievance procedures that were capable of affording him relief on such claims. Moreover, whereas in *Perttu*, the parties *agreed* that the merits of the plaintiff's First Amendment retaliation claim were intertwined with the question of whether the plaintiff had pursued grievance procedures to report the defendant's alleged unlawful conduct, the parties here do not agree that the merits of Mr. Hill's excessive force, conditions of confinement, and failure to protect claims are similarly intertwined with factual questions concerning exhaustion. (Mot. at 3; Defs.' Suppl. Ltr. at 2–4.)

Second, the Complaint in this action does not allege that Mr. Hill attempted to file grievances related to the specific unlawful conduct alleged in the Non-Administrative Segregation Claims or that he was in any way prevented or discouraged from filing grievances, as noted in the October 30, 2009 Order. *Hill*, 2009 WL 3698380, at *5. Moreover, the summary

judgment record before Judge Hurley showed that Mr. Hill had in fact filed numerous grievances regarding other issues at the SCCF, but simply had not taken *any* steps to file grievances with respect to the conduct challenged in the Non-Administrative Segregation Claims, which allege assault on April 3, 2002, the denial of medical care following the assault, failure to protect from assault by another inmate while cuffed and shackled, and being subject to physical, verbal, and mental abuse by officers throughout his pre-trial detention at the SCCF. The October 30, 2009 Order considered and rejected Mr. Hill's arguments that his failure to exhaust should be excused on the basis that he had contacted the Sheriff's Office Internal Affairs Department and that the grievance procedures were ambiguous and arbitrary. *Hill*, 2009 WL 3698380, at *7–8. Rather, although Mr. Hill had filed numerous grievances during his period of pre-trial detention in the SCCF, he did not plead or proffer evidence to show that he experienced retaliation for attempting to file a grievance. *See id.* at *1, *5. By contrast, in *Perttu*, the plaintiff did attempt to file grievances, which were allegedly destroyed by the defendant, who also threatened to harm the plaintiff if he sought to pursue administrative remedies. *Perttu*, 145 S. Ct. at 1798.

*Perttu* thus does not constitute an intervening change of controlling law. This action is therefore similar to actions outside of the Second Circuit in which district courts found *Perttu* to be inapplicable. Here, as in *Wilson-Walker v. Spaid*, No. 25-cv-1994, 2025 U.S. Dist. LEXIS 118718 (E.D. Pa. June 23, 2025), the question of exhaustion and the merits of plaintiff's claims do not depend on common factual issues. And like *Gordon v. Vandalia Corr. Ctr.*, No. 25-cv-351, 2025 U.S. Dist. LEXIS 120979 (S.D. Ill. June 25, 2025), here, there are no factual allegations or facts in the record suggesting that the defendant hindered plaintiff's ability to file grievances.

For all of these reasons, Mr. Hill has not identified any intervening change in controlling law that would warrant reconsideration of the October 30, 2009 Order's grant of summary judgment to Defendants on the Non-Administrative Segregation Claims.

### iii.   Mr. Hill Does Not Show that a Manifest Injustice Would Arise if Reconsideration of the October 30, 2009 Order Is Denied.

Finally, Mr. Hill argues that a denial of reconsideration of the grant of summary judgment to Defendants on the Non-Administrative Segregation Claims would amount to manifest injustice. (Mot. at 2.) According to Mr. Hill, "judicial decisions issued 10–20 years ago reflect legal standards, facts, and policy considerations that have since evolved and in some instances have been ruled unconstitutional" and that to "Freeze-in-Time the reasoning( or lack there of ) of a former judge as binding on a current judge" would thus "be illogical and incompatible" with "[a]ttempting to provide justice in the present case." (*Id.*)

Mr. Hill's manifest injustice argument does not succeed for two reasons. First, the argument centers on the length of time that has passed since the October 30, 2009 Order and the contention that "legal standards, facts, and policy considerations . . . have since evolved." (Mot. at 2.) But an evolution in the facts or law warrants reconsideration of a prior court order only when a party seeking reconsideration identifies specific newly available evidence or an intervening change in controlling law following the issuance of the decision at issue. *See Ali*, 529 F.3d at 490 (permitting reconsideration under Rule 54(b) in the event of an intervening change in controlling law or newly available evidence). But Mr. Hill has not satisfied either of these requirements. He has not identified any evidence that was not available to Judge Hurley prior to the issuance of the October 30, 2009 Order or the October 5, 2015 or November 29, 2016 Orders denying reconsideration of that decision. Nor has he identified an intervening change in controlling legal authority for the reasons already addressed. Thus, Mr. Hill has not demonstrated

17

manifest injustice by noting the length of time that has elapsed since the October 25, 2009 Order or by invoking a general concern that the law and policy considerations may have evolved in unspecified ways.

Second, Mr. Hill's manifest injustice argument rehearses the arguments he previously made in opposition to Defendants' summary judgment motion: specifically, that he was prevented from using the SCCF grievance process and pursuing an administrative appeal. (*See* Opp'n, ECF No. 93 at 11.) In his briefing prior to the issuance of the October 30, 2009 Order, Mr. Hill contends "that he was denied the ability to file grievances on the issues within the complaint" and that the grievances he did file, which related to events outside of those alleged in the Complaint, were met with the determination that the "issues were outside the authority or control of the Warden," and thus "non-grievable." (*Id.* at 10–11.) The October 30, 2009 Order directly addressed these arguments and found that the SCCF grievance procedure was available to Mr. Hill with respect to his Non-Administrative Segregation Claims. *Hill*, 2009 WL 3698380, at *4–6; *see also Zdanok*, 327 F.2d at 953 ("[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.").

Accordingly, Mr. Hill fails to meet the high showing required to secure reconsideration of a summary judgment ruling on the basis of manifest injustice. *See United States v. Rigas*, 583 F.3d 108, 123 (2d Cir. 2009) ("The manifest-injustice . . . standard[] . . . provide[s] relief only in the proverbial 'rare case.'"); *see also Corsair Special Situations Fund, L.P. v. Nat'l Res.*, 595 F. App'x 40, 44 (2d Cir. 2014) (same).

\* \* \*

Mr. Hill has not shown that reconsideration of the October 30, 2009 Order is warranted to correct any clear error, to account for any newly available evidence or intervening change in controlling law, to prevent manifest injustice, or for any other cogent and compelling reason. His motion for reconsideration of the October 30, 2009 Order's grant of summary judgment to Defendants on the Non-Administrative Segregation Claims is therefore denied.

## II.    First, Fifth, and Sixth Requests Related to Trial Exhibits & Evidence

### A.    Background

On June 21, 2017, Magistrate Judge Shields held a telephone conference and ordered Defendants to file and serve on Mr. Hill a proposed pre-trial order and ordered Mr. Hill to file and send the proposed pre-trial trial order back to Defendants with his edits. (ECF No 182.) On July 18, 2017, Defendants filed their Proposed Pre-Trial Order. (ECF No. 183.) On March 26, 2018, Mr. Hill filed his First Proposed Pre-Trial Order (First PPTO, ECF No. 186), in which he stated that he "intend[s] to use all Suffolk policys, and grievances [he] filed and the rule book from 2002 and all the discovery provided." (*Id.* at 1.)

Judge Shields held a telephone conference on March 31, 2018 to discuss the parties' proposals. (ECF No. 191.) Judge Shields ordered Mr. Hill to file an amended pre-trial order in which Mr. Hill "identifies the particular polices" referenced in his First Proposed Pre-Trial Order and "every exhibit [that he] intends to use at trial." (*Id.*) On October 11, 2018, Mr. Hill filed his Second Proposed Pre-Trial Order, which also did not identify any specific policies or exhibits that Mr. Hill intended to use at trial, but instead contained the broad statement that Mr. Hill "intends to rely on all material Exhibits presented by the Defendants." (Second PPTO at 4.) Judge Shields "accepted" Mr. Hill's Second Proposed Pre-Trial Order and "interpreted" it to

mean that Mr. Hill could "only utilize exhibits provided by Defendants." (Elec. Order, Oct. 15, 2019.)

During the August 26, 2024 pre-trial conference, Judge Seybert ordered the parties to file their proposed trial exhibits by December 2, 2024. (ECF No. 242 at 2.) Mr. Hill did not file any exhibits by the December 2, 2024 deadline. On December 12, 2024, Judge Seybert provided Mr. Hill a "FINAL opportunity to file," among other things, his proposed trial exhibits by December 20, 2024, and warned him that an "untimely filing of his proposed exhibits shall result in Plaintiff being precluded from introducing said exhibits." (Elec. Order. Dec. 12, 2024.) Despite this clear warning, Mr. Hill again failed to file any proposed trial exhibits or even to provide a list of his proposed trial exhibits. Instead, on December 19, 2024, Mr. Hill filed a letter stating both that he "has stated over and over that he would utilize all of the exhibits that had been turned over by the defendants," and that he would use "everything that defendants have previously turned over" to him. (ECF No. 251 at 1.)

During the January 6, 2024 pre-trial conference, Judge Seybert ruled that, based on Mr. Hill's representations that he would use Defendants' proposed trial exhibits, Mr. Hill would only be permitted to use those specific exhibits at trial. (Jan. 6, 2024 Hr'g 12:6–14.)

### i. *Mr. Hill's Requests*

In the fifth request, Mr. Hill asks that the Court permit the use of "electronic sound recordings" of witness testimony made of during trial before Judge Seybert (the "audio exhibits"). (Mot. at 3.) In the sixth request, Mr. Hill requests permission to offer sample handcuffs, shackles, and a waist chain (the "physical exhibits") as evidence at trial. (*Id.*) Finally, in his first request, Mr. Hill seeks leave to amend his Second Proposed Pre-Trial Order to include exhibits not identified in the list of defense exhibits in Defendants' Proposed Pre-Trial Order

(ECF No. 249-1). In the written Motion, Mr. Hill does not identify the specific exhibits that he wishes to offer at trial. (*See* Mot.) But in response to the Court's questioning during the May 29, 2025 pre-trial conference, Mr. Hill stated that he seeks to offer at trial the following documents produced by Defendants during discovery: (1) a select number of pages from the SCCF April 3, 2002 incident reports; (2) one page of the SCCF's inmate handbook, which describes the incidents that are subject to SCCF's grievance procedures; and (3) one page of Mr. Hill's medical chart from the SCCF (the "documentary exhibits"). (Min. Entry, May 29, 2025.)

The Court understands Mr. Hill's requests to offer these audio, physical, and documentary exhibits at trial to constitute a motion to amend his Second Proposed Pre-Trial Order, which did not identify any specific trial exhibits, and as motions in limine seeking this Court's ruling on the admissibility of the audio, physical, and documentary exhibits at issue. The Court addresses whether to grant Mr. Hill leave to amend the Second Proposed Pre-Trial Order to include the proposed exhibits, but reserves decision on whether such exhibits are admissible evidence pending further argument from the parties.

### ii.  *Legal Standard*

A motion to amend a pretrial order is governed by Rule 16(e), Fed. R. Civ. P., which provides that "[t]he court may modify the [pretrial] order issued after a final pretrial conference only to prevent manifest injustice." Fed. R. Civ. P. 16(e). The Second Circuit has held that "district courts have considerable discretion in the management of trials, and this necessarily includes a certain amount of latitude to deviate from the terms of a pretrial order." *Manley v. AmBase Corp.*, 337 F.3d 237, 249 (2d Cir. 2003); *see also Hogan v. Novartis Pharms. Corp.*, 494 F. App'x 132, 134 (2d Cir. 2012). District courts should consider the following factors when deciding whether to grant leave to amend a pretrial order:

> (1) the prejudice or surprise in fact to the opposing party; (2) the ability of the party to cure the prejudice; (3) the extent of disruption of the orderly and efficient trial of the case; and (4) the bad faith or willfulness of the non-compliant party. Prejudice to the party seeking amendment or modification of the order is also relevant, as a trial court should not refuse to modify a pre-trial order where manifest injustice will result.

*Hogan*, 494 F. App'x at 134 (quoting *Potthast v. Metro-North R.R. Co.*, 400 F.3d 143, 153 (2d Cir. 2005)). "The overarching principle in this regard is that 'Rule 16 was not intended to function as an inflexible straitjacket on the conduct of litigation or to produce an abstract, perfect equivalence between the pretrial papers and the course of litigation; instead, it was intended to insure the efficient resolution of cases and, most importantly, minimize prejudicial surprise.'" *Mhany Mgmt. Inc. v. Inc. Vill. of Garden City*, No. 05-cv-2301, 2013 WL 1821113, at *3 (E.D.N.Y. Apr. 29, 2013) (quoting *Lamborn v. Dittmer*, 873 F.2d 522, 527 (2d Cir.1989)).

     B.  <u>Application</u>

     As a preliminary matter, to the extent that all witnesses appear in person for trial, which is scheduled to begin with jury selection on July 21, 2025, the Court will not permit Mr. Hill to play for the jury electronic audio recordings of witness testimony taken during trial before Judge Seybert on January 13 and 14, 2025. One of the central purposes of trial is to permit the fact finder to hear live witness testimony and to make credibility determinations based on numerous factors, including witness demeanor. Mr. Hill's request to replay as "audio exhibits" recordings of witness testimony from the prior trial undermines this purpose. However, in the event that a party lays the proper foundation to impeach a witness based on a prior inconsistent statement made during the January 2025 trial, the written transcript of those specific statements may be used for impeachment purposes under the Federal Rules of Evidence. *See e.g.*, Fed. R. Evid. 801(d)(1)(A) (declarant-witness's prior inconsistent statements); Fed. R. Evid. 613(b) (impeachment by extrinsic evidence of prior inconsistent statement). In such situations, however,

the proponent of the prior inconsistent statement must lay the proper foundation by identifying

the prior inconsistent statement, providing the witness the opportunity to explain, and giving the

opposite party an opportunity to question the witness about the statement. *United States v.*

*Ghailani*, 761 F. Supp. 2d 114, 118 (S.D.N.Y. 2011).

Turning to the physical and documentary exhibits, the Court applies the factors set forth

in *Potthast v. Metro-North R.R. Co.* to determine whether to permit this amendment to Mr. Hill's

Second Proposed Pre-Trial Order.

The first *Potthast* factor—prejudice or surprise in fact to the opposing party—counsels in

favor of granting leave to amend the Second Proposed Pre-Trial Order to include the

documentary exhibits, but *against* granting leave to amend to include the physical exhibits. The

three documents that Mr. Hill seeks to offer at trial were produced by Defendants during

discovery, which closed more than six years ago. *See* Elec. Order Mar. 28, 2018 (certifying

completion of discovery). In his First Proposed Pre-Trial Order, Mr. Hill indicated that he

"intend[ed] to use all Suffolk policys, and grievances [he] filed and the rule book from 2002 *and*

*all the discovery provided*," but failed to identify specific documents from Defendants' discovery

production. (First PPTO at 1 (emphasis added).) The three proposed exhibits are not voluminous

and are in Defendants' possession. Thus, although Mr. Hill only notified Defendants of the

specific proposed exhibits during the May 29, 2025 pre-trial conference—more than seven

weeks before trial—there is minimal to no prejudice to Defendants from permitting Mr. Hill to

offer the proposed documentary exhibits at trial. *See* Min. Entry, May 29, 2025*; see Maehr v.*

*NRG Home Solar*, No. 2:16-cv-3897, 2019 WL 1559423, at *5–6 (E.D.N.Y. Apr. 10, 2019)

(granting leave to amend joint pre-trial order to include medical records for lack of prejudice

since records were in defendant's possession for two years); *Giannone v. Deutsche Bank Sec.,*

*Inc.*, No. 03-cv-9665, 2005 WL 3577134, *2 (S.D.N.Y. Dec. 30, 2005) (granting leave to amend pretrial order to include additional exhibits 38 days before trial, noting "ample time . . . to cure any minimal prejudice"). By contrast, with respect to the proposed physical exhibits—sample handcuffs, shackles, and a waist chain—Mr. Hill has not provided the specific objects that he seeks to offer at trial and none of these objects were produced by Defendants in discovery or even mentioned obliquely in Mr. Hill's First Proposed Pre-Trial Order or Second Proposed Pre-Trial Order. Because Defendants only learned about Mr. Hill's intention to offer these objects into evidence at trial on May 29, 2025, there is some prejudice and surprise in fact to Defendants, which counsels against granting leave to amend.

The second *Potthast* factor—the ability of the party to cure the prejudice—also weighs in favor of granting leave to amend regarding the documentary exhibits, but against granting leave to amend with respect to the physical exhibits. Defendants have been in possession of the documentary evidence that Mr. Hill seeks to offer as trial exhibits for at least six years because they themselves produced these documents to Mr. Hill during discovery. (*See* Elec. Order, Mar. 28, 2018.) Although Mr. Hill has not identified the specific pages of the April 3, 2002 incident reports or the specific page of his medical chart that he seeks to offer into evidence at trial, the incident reports and medical chart are not voluminous. Further, during the May 29, 2025 pre-trial conference, the Court ordered Mr. Hill to bring copies of the *specific pages* of the incident reports and medical chart that he seeks to offer at trial to the next pre-trial conference with the Court, which is scheduled to take place on July 8, 2025. (Min. Entry, May 29, 2025; ECF No. 269; Elec. Order, June 26, 2025.) Defendants thus clearly can cure any prejudice. By contrast, with respect to the physical exhibits, while the Court similarly ordered Mr. Hill to bring the proposed physical exhibits to the next pre-trial conference, these are not items that were

24

produced by Defendants during discovery or identified by Mr. Hill as potential trial exhibits any time prior to the May 29, 2025 pre-trial conference. Nevertheless, Defendants have the ability to cure prejudice because actual restraints of the type used on Mr. Hill are in their own possession. Thus, Defendants ability to cure any prejudice with respect to Mr. Hill's ability to offer such evidence is limited.

The third *Potthast* element—the extent of disruption of the orderly and efficient trial of the case—like the prior factors, weighs in favor of granting leave to amend for the documentary exhibits but against granting leave to amend for the physical exhibits. The addition of three, non-voluminous documents into evidence at trial will not greatly impact the trial process or delay proceedings, especially because there is no plausible objection to the authenticity of the proposed exhibits, all of which Defendants produced in discovery. *See PharmacyChecker.com v. Nat'l Ass'n of Bds. of Pharmacy*, No. 19-cv-7577, 2023 WL 2973038, at *4 (S.D.N.Y. Mar. 28, 2023).

By contrast, Mr. Hill's attempt to offer the proposed physical exhibits would disrupt an orderly and efficient trial for two reasons. First, the introduction of the physical exhibits raises evidentiary questions under Federal Rules of Evidence 401, 402, and 403. Mr. Hill does not have the actual handcuffs, shackles, and waist chain that he was required to wear in the SCCF, but seeks to offer samples into evidence in order to show the jury certain aspects of the conditions under which he was confined in administrative segregation. There is no record that Mr. Hill requested such physical evidence or even photographs of such evidence from Defendants during discovery. Furthermore, at the May 29, 2025 pre-trial conference, Mr. Hill has requested that the Court asked the United States Marshal Service to provide handcuffs, shackles, and a waist chain for Mr. Hill to offer as evidence at trial. Mr. Hill's request that the Court ask a different law enforcement agency to provide sample physical evidence for this trial raises questions about

relevance under Rule 401 and whether any probative value of such evidence is substantially outweighed by the risk of unfair prejudice under Rule 403.

The fourth *Potthast* element—the bad faith or willfulness of the non-compliant party—is neutral as to the documentary exhibits and, like the first three *Potthast* factors, weighs against granting leave to amend for the physical exhibits. Until the May 29, 2025 pre-trial conference, Mr. Hill failed to identify with any specificity any documentary exhibits that he would seek to offer at trial and completely failed to disclose that he sought to offer physical handcuffs, shackles or a waist chain. This failure is especially problematic given that the Court provided Mr. Hill with numerous opportunities to disclose his trial exhibits. Not only did the Court permit Mr. Hill to file two pre-trial orders, Judge Seybert also set two additional deadlines, in the weeks prior to the January 2025 trial, in an effort to elicit Mr. Hill's compliance. (First PPTO; Second PPTO; ECF No. 242; Elec. Order. Dec. 12, 2024.)

Nevertheless, this fourth factor is neutral with respect to the documentary exhibits because although Mr. Hill did not identify the three specific documentary exhibits until the May 29, 2025 conference, he did state in his First Proposed Pre-Trial Order that he "intend[ed] to use . . . all the discovery provided" at trial. (First PPTO a 1.) Furthermore, in a December 19, 2024 letter response to Judge Seybert's order setting a final deadline to disclose his trial exhibits, Mr. Hill stated that he intended to use "everything that defendants have previously turned over" him at trial. (ECF No. 251 at 1; *see also* Elec. Order, Dec. 12, 2024.) By contrast, with respect to the physical exhibits, Mr. Hill made no indication that he would seek to offer handcuffs, shackles, or a waist chain at trial until the May 29, 2025 pre-trial conference. There is no excuse for this delay because Mr. Hill himself has been painfully aware that he was required to wear these items for a significant part of each day while detained in administrative segregation at the

SCCF. These facts demonstrate that Mr. Hill willfully failed to comply with the Court's orders to identify the proposed physical evidence as trial exhibits in his two Proposed Pre-Trial Orders and by the December 2 and 20, 2024 deadlines.

Finally, Mr. Hill may experience some prejudice from being denied the opportunity to include the three proposed documentary exhibits and physical exhibits on his Second Proposed Pre-Trial Order. The Court cannot fully assess the degree of prejudice without seeing the actual exhibits at issue, which Mr. Hill is required to bring to the July 8, 2025 pre-trial conference. But to bar Mr. Hill from offering at trial potentially relevant documents that are relatively short, were produced by Defendants, and have been in Defendants' possession for more than six years, may be a manifest injustice. *See Maehr*, 2019 WL 1559423, at *5 (granting plaintiff leave to amend the joint pre-trial order to include medical records that defendant possessed for two years was necessary to prevent a manifest injustice); *Mhany Mgmt. Inc.*, 2013 WL 1821113, at *6 (finding that "manifest injustice may result if" plaintiffs were denied leave to amend the joint pre-trial order to add four witnesses to counter defendants' similarly situated witnesses). However, denying Mr. Hill the ability to offer at trial sample handcuffs, shackles, and a waist chain does not rise to the level of manifest injustice because: (1) Mr. Hill can testify about the circumstances under which he was required to wear these restraints while detained in the SCCF and the resulting impact on him; (2) Mr. Hill does not possess these items; (3) Mr. Hill does not appear to have pursued any discovery from Defendants about these items; (4) Mr. Hill has asked the Court to order the United States Marshals to provide sample items for him to offer into evidence at trial even though such items are not necessarily the same restraints as those he was required to wear in the SCCF, raising questions about relevance under Rule 401 and prejudice under Rule

403; and (5) Mr. Hill does not appear to have explored less onerous alternatives, such as seeking to offer into evidence photographs of the items rather than the actual items themselves.[6]

Considering all of the *Potthast* factors, the Court grants Mr. Hill leave to amend his Second Proposed Pre-Trial Order to add the three specific documentary exhibits identified during the May 29, 2025 pre-trial conference, but denies leave to amend to add the physical exhibits. At the July 2, 2025 pre-trial conference, Mr. Hill is anticipated to provide the specific documentary exhibits to the Court and Defendants. The Court requires the parties to meet and confer about Mr. Hill's ability to show the jury a photograph of handcuffs, shackles, and a waist chain of the type used to restrain Mr. Hill when he was detained pre-trial in Administrative Segregation in the SCCF. The Court reserves decision on whether the three proposed documentary exhibits and the proposed physical exhibits are admissible pending further argument from the parties at the July 8, 2025 pre-trial conference.

### III.    Mr. Hill's Fourth and Seventh Requests Relating to "Reinstating" Suffolk County and Bednowsky as Defendants

A.    <u>Background</u>

Mr. Hill's fourth request is that the Court "reinstate" Suffolk County as a defendant in this action. (Mot. at 3.) His seventh request is that "that defendant warden Bagnowski and his estate be reinstated as a defendant in this case." (*Id.*)

As noted above, Suffolk County has never been a party to this action. (*See* Compl.) Mr. Hill filed a Motion to Amend the Complaint on October 27, 2024, which sought to name Suffolk County as a defendant in this case, Judge Seybert denied that motion during a December 11,

---

[6] At the May 29, 2025 pre-trial conference, Mr. Hill acknowledged that coming to the Alfonse D'Amato U.S. Courthouse with handcuffs, shackles, and a waist chain may actually violate courthouse security protocols.

2024 hearing. (Mot. Am.; ECF No. 236 at 5.) Therefore, Mr. Hill's fourth request constitutes a motion for reconsideration under Rule 60(b), Fed. R. Civ. P., of Judge Seybert's December 11, 2024 denial of Mr. Hill's Motion to Amend.

Bednowsky was a Defendant in this case until Judge Seybert terminated him on February 21, 2024. (Compl. at 1; Elec. Order, Feb. 21, 2024.) Mr. Hill's seventh request to reinstate Bednowsky and his estate therefore constitutes a motion for reconsideration under Rule 60(b) of Judge Seybert's February 21, 2024 Order terminating Bednowsky from the case and a motion under Rule 25(a) to substitute Bednowsky's estate for Bednowsky, if reinstatement is permitted.

### i. *Legal Standard*

Rule 60(b), Fed. R. Civ. P., provides for relief from a final judgment, order, or proceeding in the case of:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). A Rule 60(b) motion "must be made within a reasonable time" and motions brought pursuant to Rule 60(b)(1)–(3) must be made "no more than a year after the entry of the . . . order . . . ." Fed. R. Civ. P. 60(c)(1).

The standard for granting a Rule 60(b) motion for reconsideration is "strict." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024). The decision to grant or deny such a motion rests within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or

prevent manifest injustice." *Commerzbank AG*, 100 F.4th at 377. In other words, under Rule 60(b), "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Commerzbank AG*, 100 F.4th at 337. A Rule 60(b) motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012). "[A] Rule 60(b) motion is properly denied where it seeks only to relitigate issues already decided." *Pastor v. P'ship for Child.'s Rts.*, 856 F. App'x 343, 345 (2d Cir. 2021) (citing *Zerman v. Jacobs*, 751 F.2d 82, 84–85 (2d Cir. 1984)).

Rule 25(a)(1), Fed. R. Civ. P., provides "if a party dies and the claim is not extinguished, . . . [a] motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed."

### ii.  *Application*

#### 1.  *Suffolk County*

Mr. Hill has not offered any argument as to why his request for reconsideration of Judge Seybert's December 11, 2023 Order denying his Motion to Amend satisfies any of the criteria set forth in Rule 60(b) for securing reconsideration of a final order. He has not identified any "intervening change of controlling law, . . . new evidence," or a "need to correct a clear error or prevent manifest injustice" that would warrant reconsideration. *Commerzbank AG*, 100 F.4th at 377. On this basis alone, the Court denies Mr. Hill's request to reinstate Suffolk County as a defendant in this case. However, Mr. Hill's motion for reconsideration also attempts to relitigate

issues that were considered and denied by Judge Seybert, and it is therefore denied on that basis as well.

First, Mr. Hill argues that because the Complaint names Sheriff Al Tisch ("Tisch") as a defendant, he should now be able to "reinstate" Suffolk County. (Mot. at 3.) Mr. Hill made this same argument during the December 11, 2023 hearing. (Dec. 11, 2023 Hr'g 23:7–15.) Mr. Hill argued that the Motion to Amend should be construed as a motion to substitute Suffolk County for Tisch. (*Id.*) Judge Seybert rejected this argument during the hearing, finding that the Motion to Amend sought to add, not substitute, Suffolk County as a Defendant. (*Id.* 23:15–17.) Mr. Hill's motion for reconsideration on the basis that Tisch is already a Defendant is an attempt to relitigate an issue that has already been decided, and is therefore denied. *See Pastor*, 856 F. App'x at 345.

Second, Mr. Hill argues that he "is prepared to present his case . . . against the policies procedures customs & practices implemented by the County" in its rulebook. (Mot. at 3.) Defendants argue that Mr. Hill has not "ever asserted a *Monell* claim" against Suffolk County. Resp. at 3–4; *see also Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658 (1978). Judge Seybert previously resolved this dispute. In the Motion to Amend, Mr. Hill asserted that "[r]eading the complaint from start to finish, there is no question that the defendants knew [he] intended to name Suffolk County." (Mot. Am. at 1.) Judge Seybert rejected the argument, finding that there was no reason to impute notice to Suffolk County at such a late stage of the litigation. (Dec. 11, 2023 Hr'g 14:20–15:3.) Mr. Hill thus simply seeks to relitigate an issue that has already been decided—rather than identifying any intervening change of controlling law, newly available evidence, or the need to correct a clear error or prevent manifest

injustice—and the motion for reconsideration is thus denied for this reason as well. *See Pastor*, 856 F. App'x at 345.[7]

### 2. *Bednowsky and the Bednowsky Estate*

Mr. Hill provides no reason whatsoever as to why Bednowsky should be reinstated as a defendant or, if such reinstatement is granted, why the Bednowsky estate should be substituted for him as a defendant. (*See* Mot. at 3.)

Judge Seybert's February 21, 2024 Order terminating Bednowsky and several other Defendants was entered to reflect the parties' understanding of the remaining Defendants in this action. The relevant procedural history is as follows. On March 3, 2016, counsel for Defendants, including Bednowsky, filed a letter arguing that the Complaint offered no allegations against Bednowsky and that the claims surviving summary judgment are only against Defendants Murphy, Geslak, Lehman, and Reynolds. (ECF No. 135 at 2.) On March 17, 2016, Judge Shields ordered Mr. Hill to "indicat[e] whether or not [he] agrees with Defendants' characterizations as to the [D]efendants remaining in this lawsuit." (ECF No. 138 at 2.) In response, Mr. Hill

---

[7] Even if Mr. Hill had raised a meritorious basis for reconsideration of the denial of his Motion to Amend the Complaint to add Suffolk County as a defendant—which he has not—the Complaint fails to state a claim that any Suffolk County policy, practice, or custom caused Mr. Hill's injuries as alleged in either the Administrative Segregation Claims or the dismissed Non-Administrative Segregation Claims. There are no factual allegations in the Complaint that even liberally construed support the claim that any Suffolk County policies, practices, and customs. caused any of Mr. Hill's alleged injuries. (*See generally* Compl.) Accordingly, permitting Mr. Hill to amend the Complaint at this late stage to add Suffolk County as a defendant fails to satisfy the requirements of Rule 15(a)(2), which requires courts to "freely give leave [to amend a pleading] when justice so requires," but nevertheless permits denial of any amendment that would be futile. *See Scalia v. Sarene Servs., Inc.*, 740 F. Supp. 3d 251, 275 (E.D.N.Y. 2024) ("Unless there is a showing of bad faith, undue delay, futility or undue prejudice to the non-moving parties, the district court should grant leave to amend" under Rule 15(a)(2)); *see also Roe v. City of Waterbury*, 542 F.3d 31, 38, 41–42, (2d Cir. 2008) (affirming district court's finding that liability cannot be imposed on the defendant municipality for the tortious conduct of its mayor that did not constitute an official policy of the municipality).

informed Judge Shields that he did not receive Defendants' March 3, 2016 letter. (ECF No. 141 at 1) Mr. Hill also asserted that Bednowsky and Murphy, who were respectively the Warden and Deputy Warden of SCCF, "formulated" the rules that governed the conditions of his administrative segregation. (*Id.* at 2–3.) Judge Shields mailed Defendants' letter (ECF No. 135) and other later filed documents to Mr. Hill on April 8, 2025, and instructed Mr. Hill to "provide further response, including a request for a telephone conference" by May 9, 2016. (Elec. Order Apr. 8, 2016.) On May 9, 2016, Mr. Hill filed a motion requesting additional discovery and a telephone conference, a letter requesting that the Court mail him certain docket entries after being filed, and a motion for reconsideration of the Court's October 5, 2015 denial of his motion for reconsideration of Judge Hurley's October 30, 2009 Order granting Defendants summary judgment on the Non-Administrative Segregation Claims. ECF Nos. 143–145. However, Mr. Hill did *not* respond in any of those filings to Judge Shields's Order instructing him to indicate whether he "agree[d] with Defendants' characterizations as to the defendants remaining in this lawsuit." (ECF No. 138 at 2; *see also* ECF Nos. 143–145.) Nor did Mr. Hill comply with this instruction in any subsequent filing, based on the Court's close review of the docket. (*See* ECF Nos. 145–271.) Indeed, this case proceeded to a trial before Judge Seybert on January 13, 2025 *without* Bednowsky or his estate as a defendant. (ECF No. 259 at 1; *see also* Jan. 13, 2025 Trial Tr. 12:2–16.)

Mr. Hill filed the instant motion for reconsideration on June 2, 2025—more than one year after Judge Seybert's February 21, 2024 Order terminating Bednowsky from this action. Accordingly, Mr. Hill's motion for reconsideration is untimely to the extent that Mr. Hill seeks reconsideration of the termination based on any of the Rule 60(b)(1)-(3) factors—"(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable

diligence, could not have been discovered in time to move for a new trial under Rule 59(b); [or] (3) fraud . . . , misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(1)–(3). Moreover, even if the motion for reconsideration is timely, Mr. Hill has failed to make any argument or identify any evidence to support application of any of the Rule 60(b) factors, much less shown that he has met the "strict" standard for granting a motion for reconsideration. *Commerzbank AG.*, 100 F.4th at 377. Accordingly, Mr. Hill's motion for reconsideration of Judge Seybert's Order terminating Bednowsky from this action is denied.

Even if the Court were to find that reconsideration is warranted—and it does not—the substitution of Bednowsky's estate for Bednowsky would be denied as untimely under Rule 25(a). Defendants informed the Court and Mr. Hill that Bednowsky was deceased as early as February 11, 2016—more than nine years ago—when Defendants' counsel served "a statement noting [his] death." Fed. R. Civ. P. 25(a)(1); ECF No. 129; *see also Jones Inlet Marina, Inc. v. Inglima*, 204 F.R.D. 238, 240 (E.D.N.Y. 2001) (finding a letter noting client's death, served upon all parties, was a proper suggestion of death). The period for any party to file a motion to substitute Bednowsky for his estate therefore lapsed 90 days later, on May 11, 2016. *See* Fed. R. Civ. P. Rule 25(a)(1) ("If the motion [to substitute a party] is not made within 90 days after service of a statement noting the death, the action by or against the decedent *must* be dismissed." (emphasis added)). Furthermore, as early as May 19, 2016, Mr. Hill acknowledged on the record that Bednowsky is deceased. (*See* ECF No. 143 at 3 & 3 n.1.) Despite that acknowledgement, Mr. Hill has not, at any time, sought to substitute Bednowsky's estate for Bednowsky. Accordingly, even if this Court were to reconsider Judge Seybert's termination of Bednowsky as a defendant in this action, Mr. Hill is time barred from seeking the substitution of Bednowsky's estate for Bednowsky. Accordingly, Mr. Hill's motion for reconsideration of the order

terminating Bednowsky as a defendant in this action and motion to substitute Bednowsky's estate for Bednowsky are both denied.

IV.    **Mr. Hill's Third Request Regarding the Conditions of Confinement and His Experiences in Administration Segregation**

Mr. Hill requests that the jury decide what the conditions of confinement were during his administrative segregation in the SCCF. (Mot. at 2.) Specifically, Mr. Hill seeks to offer evidence at trial that the following were "all part of the conditions of confinement" he experienced while detained in administrative segregation at the SCCF: "beatings, assaults, handcuffs, shackles," a waist chain, and "forcible medication while handcuffed and shackled by six corrections officers." (*Id.*)

During the January 6, 2025 pre-trial conference, Judge Seybert stated that Mr. Hill was permitted to testify about being "shackled every time [he] left the cell and [that] other inmates were not," about being forcibly administered medication, about "the size of the officers' identification badges," and "as to how they attacked [him] back in March of 2002." (Jan. 6, 2025 Hr'g 28:14–18; 29:1–3.)[8] During trial, defense counsel objected to Mr. Hill's questioning of Defendant Lehman about Mr. Hill's allegations of forcible medication on April 3, 2002, arguing that none of the incident reports that Mr. Hill sought to introduce relating to this incident named Defendant Lehman. After hearing from the parties, Judge Seybert ruled that Mr. Hill was required to lay a foundation for questioning witnesses about the alleged forcible injection of Haldol and other conditions of confinement. (*See* Jan. 13, 2025 Trial Tr. 138:17–20 ("You have

---

[8] Judge Seybert also ruled that Mr. Hill was prohibited from testifying about administrative exhaustion or whether his complaints were reviewed because these were issues already decided in Judge Hurley's October 30, 2009 and October 5, 2015 Orders. (*Id.* 28:18–25)

to show a connection between the defendants who are here now and the conditions, for example, the injection of Haldol and other issues.").)

In light of the Court's ruling in this Opinion and Order that Mr. Hill may amend his Second Proposed Pre-Trial Order to include the three specific documentary exhibits that he wishes to offer into evidence at trial, the Court reserves decision on the question of whether beatings, assaults, handcuffs, shackles, a waist chain, and "forcible medication while handcuffed and shackled by six corrections officers" were part of the conditions of confinement experienced by Mr. Hill while detained pre-trial at the SCCF. (Mot. at 2.) Mr. Hill has been ordered to bring copies of the specific exhibits at issue—(1) a select number of pages from the SCCF April 3, 2002 incident reports; (2) one page of the SCCF's inmate handbook, which describes the incidents that are subject to SCCF's grievance procedures; and (3) one page of Mr. Hill's medical chart from the SCCF—to the July 8, 2025 pre-trial conference with the Court.(Min. Entry, May 29, 2025.) Defendants are aware that Mr. Hill seeks to elicit testimony from witnesses concerning his alleged experiences of beatings, assaults, handcuffs, shackles, a waist chain, and forcible medication. By July 8, 2025, Defendants will also be on notice of the specific documentary exhibits that Mr. Hill seeks to offer into evidence.

Accordingly, the parties shall address at the July 8, 2025 pre-trial conference an expedited scheduling for briefing any motions in limine concerning Mr. Hill's proposed exhibits and the scope of witness testimony about the alleged conditions of confinement in the SCCF, including whether testimony about the allegations of forcible medication are admissible under Rules 401 and 403 of the Federal Rules of Evidence.

## CONCLUSION

For the reasons stated above, Mr. Hill's Motion is granted in part, denied in part, and reserved in part as follows:

Mr. Hill's motion for reconsideration Judge Hurley's Order granting summary judgment on the Non-Administrative Segregation Claims is denied.

Mr. Hill's motion to amend his Second Proposed Pre-Trial Order is granted to the extent he seeks to add the three documentary exhibits he disclosed during the May 29, 2025 pre-trial conference, but denied to the extent he seeks to add the proposed audio and physical exhibits. The parties are required to meet and confer about Mr. Hill's ability to show the jury a photograph of handcuffs, shackles, and a waist chain of the type used to restrain Mr. Hill when he was detained pre-trial in Administrative Segregation in the SCCF. The Court reserves judgment on the admissibility of Mr. Hill's proposed documentary exhibits.

Mr. Hill's motion for reconsideration of Judge Seybert's December 11, 2023 Order denying his Motion to Amend the Complaint to include Suffolk County as a defendant is denied.

Mr. Hill's motion for reconsideration of Judge Seybert's February 21, 2024 Order terminating Bednowsky as a defendant is denied.

Dated:  Central Islip, New York
        July 7, 2025

                                        _/s/ Nusrat J. Choudhury_____
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge