# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Demetrius Hill,<br><br>                        Plaintiff,<br><br>                -v-<br><br>Al Tisch, et al.,<br><br>                        Defendants. | | 2:02-cv-3901<br>(NJC) (AYS) |

## OPINION AND ORDER

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Demetrius Hill ("Mr. Hill") filed this action on July 8, 2002 against several individuals including Thomas Murphy, Peter Lehman, Helen Geslak, and Gerard Reynolds (collectively, "Defendants"), bringing six claims under 42 U.S.C. § 1983 arising out of his pretrial detention in the Suffolk County Correctional Facility at Riverhead (the "SCCF"). (Compl., ECF No. 1.) Judge Denis R. Hurley, to whom this action was initially assigned, granted summary judgment on Mr. Hill's Second, Third, Fifth, and Sixth Claims (the "Non-Administrative Segregation Claims") and denied summary judgment on Mr. Hill's First and Fourth Claims (the "Administrative Segregation Claims"), which relate to Mr. Hill's administrative segregation. *Hill v. Tisch*, No. 02-cv-3901, 2009 WL 3698380 (E.D.N.Y. Oct. 30, 2009); *Hill v. Tisch*, No. 02-cv-3901, 2015 WL 5821435 (E.D.N.Y. Oct. 5, 2015). This case was reassigned to Judge Joanna Seybert in 2022, and a jury trial commenced in this action on January 13, 2025. (Elec. Order, Apr. 11, 2022; Min. Entry, ECF No. 259.)

Following the recusal of Judge Seybert on January 15, 2022, this action was reassigned to this Court's docket. (Min. Order, ECF No. 262; Order Recusal, Jan. 15, 2025.) Trial on the Administrative Segregation Claims is scheduled to begin with jury selection on July 21, 2025.

(Min. Order, Feb. 26, 2025.) Before the Court are Defendants' objections to several exhibits that Mr. Hill seeks to offer at trial. (Defs.' Objs., ECF No. 282.)

## BACKGROUND

As detailed in prior orders of this Court, the parties could not agree on a joint pre-trial order and instead filed separate pre-trial orders. (July 7, 2025 Order at 19–20, ECF No. 278; Defs.' Proposed Pretrial Order ("Defs.' PPTO"), ECF No. 183; Hill Second Proposed Pretrial Order ("Pl.'s Second PPTO"), ECF No. 196.) In his Second Proposed Pre-Trial Order, Mr. Hill did not identify any proposed exhibits, but instead generally indicated that he would rely on documents produced by Defendants in discovery. (Second PPTO at 4.) During the May 29, 2025 pre-trial conference, Mr. Hill indicated that he sought to offer into evidence at trial the following documents produced by Defendants during discovery: (1) a select number of pages from April 3, 2002 incident reports at the SCCF, (2) one page of the SCCF's inmate handbook, and (3) one page of his medical chart from the SCCF. (Min. Entry, May 29, 2025.) The Court construed this to be Mr. Hill's motion to amend his Second Proposed Pre-Trial Order and instructed Mr. Hill to bring these documents in hard copy to the next pre-trial conference with the Court. (*Id.*)

On July 7, 2025, the Court granted Mr. Hill's motion to amend his Second Proposed Pre-Trial Order to add the three specific documentary exhibits identified during the May 29, 2025 pre-trial conference. (July 7, 2025 Order at 36.)

During the July 8, 2025 pre-trial conference, Mr. Hill provided the Court and Defendants with his proposed trial exhibits. (Min. Entry, July 8, 2025.) The Court recessed the conference so that counsel for Defendants and Mr. Hill could go through the documents and determine whether any of them were already represented in Defendants' proposed exhibits as identified in their Pre-Trial Order (Defs.' PPTO; *see also* Defs.' Ex. List, ECF No. 249-1.)

2

Based on that review, Mr. Hill seeks to offer at trial the following five categories of documents:

> (1) SCCF incident reports and other documents already contained in Defendants' trial exhibits;
>
> (2) other SCCF incident reports and disciplinary documents concerning Mr. Hill and a two-page SCCF inmate profile of Mr. Hill;
>
> (3) seventeen pages from Mr. Hill's SCCF medical file (ECF No. 103-2 at 1, 3–6, 8–15, 18–20, and 23);
>
> (4) documents pertaining to complaints made by Mr. Hill and his mother, Ms. Crumpton, to the Suffolk County Sheriff's Office's Internal Affairs Section (ECF Nos. 99, 102 at 3, 5, 7-8, 11-15); and
>
> (5) a one page excerpt from the Suffolk County Sheriff's Department Operations and Procedures Guide.[1]

(Min. Entry, July 8, 2025.) During the July 8, 2025 pre-trial conference, the Court deemed Mr. Hill's Second Proposed Pre-Trial Order amended to include all of the proposed trial exhibits that Mr. Hill brought to Court that day, consistent with the July 7, 2025 Opinion and Order. (*Id.*)[2] The Court also required Defendants to identify objections to any of these exhibits in order to

---

[1] Contrary to Mr. Hill's representation at the May 29, 2025 pre-trial conference, Mr. Hill did not include in the proposed trial exhibits that he brought to court on July 8, 2025, a page from the Suffolk County Correctional Facility's inmate handbook. (*See* Min. Entry, May 29, 2025; Min. Entry, July 8, 2024.)

[2] Defendants argue that Mr. Hill's disclosure of many of these documents for the first time on July 8, 2025, less than two weeks before the commencement of the second trial in this action, causes Defendants prejudice. (Defs.' Objs. at 5.) Defendants are correct that trial by ambush is disfavored by the Federal Rules of Civil Procedure, even in a case involving a self-represented party. That prejudice is mitigated, however, by the fact that all of the documents at issue were produced by Defendants in discovery and because Mr. Hill's disclosure of these documents on July 8, 2025 permitted Defendants to identify any objections and the parties to brief and argue their respective positions so that the Court can make an informed ruling on the parties' evidentiary disputes.

permit the parties to brief and argue their positions and the Court to resolve the disputes prior to the commencement of trial. (*Id.*)

During the July 8, 2025 pre-trial conference, the Court noted that the first category of documents that Mr. Hill seeks to offer at trial will be admitted at the beginning of trial because they were produced by Defendants, are already included in Defendants' exhibits, and the parties already stipulated to their admissibility during the May 29, 2025 pre-trial conference. (*Id.*; *see also* Min. Entry, May 29, 2025.)

With respect to the second category of document—certain SCCF incident reports and disciplinary documentation concerning Mr. Hill and a two-page SCCF inmate profile of Mr. Hill—during the July 8, 2025 pre-trial conference, Defendants stated they do not object to the admission of Mr. Hill's two-page SCCF inmate profile, which Defendants call an "Internal Security Section Inmate Profile Report." (Defs.' Objs. at 5; Min. Entry, July 8, 2025.) Nor do they object to Mr. Hill questioning defense witnesses about the document. (Min. Entry, July 8, 2025.) Accordingly, the two-page Internal Security Section Inmate Profile Report concerning Mr. Hill is admissible and will be admitted into evidence at the beginning of trial.

During the July 8, 2025 pre-trial conference, the Court found that the other incident reports and disciplinary records identified by Mr. Hill are relevant to the issue of damages and therefore are admissible under Rule 401. (Min. Entry, July 8, 2025.) However, Defendants objected to the admissibility of these incident reports and to Mr. Hill questioning witnesses about them, arguing that none of the Defendants are connected to these specific incident reports. (Defs.' Objs. at 6–7.) Mr. Hill argued that the reports were sent to Defendant Lehman and are therefore relevant to the claim that Defendant Lehman kept him in excessively restrictive conditions in administrative segregation. (Resp. at 3–4, ECF No. 287; *see also* July 8, 2025 Hr'g

4

39:20–46:3) The Court held that Mr. Hill may question Defendant Lehman regarding the April 3, 2002 Incident Report Form Preston Singer to CPT Donegan because that specific incident report contains Defendant Lehman's name and is therefore relevant background information to Mr. Hill's claim that Defendant Lehman was responsible for the excessively restrictive conditions imposed on him in administrative segregation. (Min. Entry, July 8, 2025; July 8, 2025 Hr'g 51:23–52:13.)

The Court reserved decision on whether Mr. Hill may question Defendants about any of the remaining other incident reports and disciplinary records identified in Mr. Hill's amended Second Proposed Pre-Trial Order. (Min. Entry, July 8, 2025.) The Court ordered Defendants to address in their July 11, 2025 submission the basis for any objections to the admissibility of the incident reports and disciplinary documents as well as the admissibility of the third, fourth, and fifth categories of documents in Mr. Hill's amended Second Proposed Pre-Trial Order as well as Mr. Hill's proposed questioning of witnesses about these documents. (*Id.*) The Court permitted Mr. Hill to submit any reply by July 15, 2025. (*Id.*)

On July 11, 2025, Defendants filed a letter including their objections to some but not all of Mr. Hill's proposed exhibits. (Defs.' Objs.) On July 16, 2025, Mr. Hill filed a response. (Resp.)[3] Mr. Hill's response only addresses Defendants' objection to his use of certain incident reports and does not discuss Defendants' objections to his other proposed exhibits. (*See id.*) Accordingly, Defendants' objections to Mr. Hill's proposed exhibits are fully briefed.

---

[3] The Court understands that ECF No. 285 and 286 are copies of Mr. Hill's response filed at ECF No. 287.

## LEGAL STANDARDS

Rule 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Under Rule 402, Fed. R. Evid., relevant evidence is admissible unless the Constitution, a federal statute, the Federal Rules of Evidence, or any other rule prescribed by the Supreme Court provides otherwise. Fed. R. Evid. 402. Under Rule 402, irrelevant evidence is not admissible. *Id.*

Under Rule 403, Fed. R. Evid., a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Under Rule 801, Fed. R. Evid., hearsay is "a statement that: (1) the declarant does not make while testifying at the current trial or hearing; and [that] (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Rule 802, Fed. R. Evid., provides that hearsay "is not admissible unless . . . a federal statute," the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" provide otherwise. Fed. R. Evid. 802.

Under Rule 801(d)(2), Fed. R. Evid., however, when a "statement is offered against an opposing party" it is not hearsay if it "was made by the party in an individual or representative capacity." Fed. R. Evid. 801(d)(2)(A). Additionally, Rule 803(6), Fed. R. Evid., provides that a hearsay statement that is "[a] record of an act, event, condition, opinion, or diagnosis" is admissible if five conditions are satisfied:

(A) the record was made at or near the time by—or from information transmitted by—someone with knowledge;

(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

(C) making the record was a regular practice of that activity;

(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12)[, Fed. R. Evid.,] or with a statute permitting certification; and

(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

## DISCUSSION

## I.    Documents Already Contained in Defendants' Proposed Trial Exhibits

As set forth on the record of the July 8, 2025 pre-trial conference, the first category of trial exhibits that Mr. Hill seeks to offer consist of documents that are already included in Defendants' proposed trial exhibits. (Min. Entry, July 8, 2025.) The parties stipulated to the admissibility of those proposed exhibits the May 29, 2025 pre-trial conference. (Min. Entry, May 29, 2025.) Moreover, Defendants consent to the admission into evidence of the incident reports offered by Plaintiff that are already contained in Defendants' Exhibit G. (Defs.' Obj. at 5; *see* Defs.' Ex. G, ECF No. 270-7.) The documents at issue are as follows:

1) the April 1, 2002 Notice of Charges and Basis for Disciplinary Actions relating to Disciplinary #200424;

2) the April 1, 2002 Incident Report Form signed by Corrections Officer William Maguire;

3) the April 1, 2002 Incident Report Form signed by Corrections Officer Steven Horton;

4) the April 3, 2002 Notice of Charges and Basis for Disciplinary Actions Report regarding Disciplinary #200436;

5) the April 2, 2002 Incident Report Form signed by Corrections Officer Kellie Burghardt;

6) the April 3, 2002 Notice of Charges and Basis for Disciplinary Actions Report regarding Disciplinary #200438;

7) the April 3, 2002 Incident Report Form signed by Corrections Officer Daniel Berezny;

- the April 17, 2002 Disciplinary Hearing Disposition Form regarding Disciplinary Control #2D0424;[4]

- the April 17, 2002 Disciplinary Hearing Disposition form regarding Disciplinary Control #2D0436;

Although Defendants also included the April 3, 2002 Incident Report Form signed by Corrections Officer Robert Aitken in their list of incident reports and disciplinary documents proffered by Mr. Hill that are contained in Defense Exhibit G, this incident report is not located in Defense Exhibit G. (ECF No. 282 at 5; *see also* Defs.' Ex. G.) Defendants informed the Court during the July 17, 2025 pre-trial conference that they mistakenly included the April 3, 2002 Incident Report Form signed by Corrections Officer Robert Aitken in the list of incident reports and disciplinary documents to which they stipulate admissibility in their July 11, 2025 letter. (Min. Entry, July 7, 2025.) Rather, Defendants seek to preclude the admission of that incident report form on the same grounds raised with respect to the other April 3, 2002 incident report forms signed by Corrections Officers Yip, Fischer, Kiernan, Engelhardt, Grabowski, and Volz. (ECF Nos. 289–290.)

Defendants' list of stipulated incident reports and disciplinary reports located at ECF No. 282 at 5 is also missing the following three documents that Mr. Hill seeks to offer at trial[5] (and which are also located in Defense Exhibit G):

---

[4] In their letter, Defendants mistakenly indicate that the Disciplinary Hearing Disposition Form regarding Disciplinary Control #2D0424 was dated April 1, 2002.

[5] Mr. Hill brought these documents to the July 8, 2025 pre-trial conference.

(6) the Disciplinary Hearing Disposition Form from an April 17, 2002 hearing for Disciplinary Control #2D0438 (Defs.' Ex. G at 1);

(1) the June 12, 2002 Incident Report Form signed by Corrections Officer Stephen Emiliani (*id.* at 14–15); and

(2) the August 23, 2002 Notice of Charges and Basis for Disciplinary for Disciplinary #201029 (*id.* at 26).

These documents, as well as those the Defendants listed in their July 11, 2025 letter (with the exception of the April 3, 2002 Incident Report Form signed by Corrections Officer Robert Aitken), are part of Defense Exhibit G. All twelve of these documents are relevant to the claims and defenses in this case under Rule 401. Because Defendants produced these records in discovery and the parties stipulate to their relevance and admissibility, they are admissible and will be admitted into evidence at the beginning of trial. When questioning witnesses about these documents or otherwise referencing them, the parties shall use Defense Exhibit G for ease of reference.

## II. Incident Report Forms and Disciplinary Records Not in Defense Exhibit G

The two remaining incident reports Mr. Hill seeks to offer into evidence at trial that are not contained in Defense Exhibit G are:

(1) the June 10, 2002 Incident Report Form signed by Corrections Officer Glen Ratner; and

(2) the April 3, 2002 incident reports from Corrections Officers Joseph Yip, Maximilian Fischer, James Kiernan, Paul Engelhardt, Raymond Grabowski, Gerard Volz and Robert Aitken.

### i. The June 10, 2002 Incident Report from Corrections Officer Ratner

Defendants argue that the June 10, 2002 Incident Report Form signed by Corrections Officer Ratner is not relevant to the Administrative Segregation Claims that are going forward to trial because it details a fight between another inmate and Mr. Hill which formed the basis of Mr. Hill's dismissed failure to protect claim (Claim #5). (Defs.' Objs. at 6; *see also* Compl. at 12–

9

13.) Mr. Hill's July 16, 2025 letter does not respond to Defendants' objection to the admissibility of this document. (*See* Resp.)

The June 10, 2002 Incident Report Form signed by Ratner describes an incident in which another individual detained in the SCCF assaulted Mr. Hill and indicates that Mr. Hill was restrained in handcuffs and shackled during the incident. The document is irrelevant to Mr. Hill's claim challenging his initial placement in administrative segregation and his claim against the allegedly excessively restrictive conditions of confinement in administrative segregation because it does not have any tendency to make any fact of consequence to these claims or Defendants' defenses to these claims more or less probable. Accordingly, Mr. Hill is precluded from offering the June 10, 2002 Incident Report Form at trial under Rules 401 and 402.

Additionally, to the extent that the June 10, 2002 Incident Report Form has even any limited relevance to the remaining claims and defenses in this case, Mr. Hill is precluded from offering the document at trial under Rule 403 because any limited probative value is substantially outweighed by the risk of misleading the jury to believe that the dismissed failure-to-protect claim is an issue for trial, thereby also wasting time and confusing the issues.

### ii. *The April 3, 2002 Incident Reports from Corrections Officers Yip, Fischer, Kiernan, Engelhardt, Grabowski, Volz, and Aitken*

Defendants argue that the April 3, 2002 Incident Report Forms signed by Corrections Officers Yip, Fischer, Kiernan, Engelhart, Grabowski, Volz, and Aitken are not relevant to Mr. Hill's claims against placement in administrative segregation and conditions of confinement in administrative segregation or any defenses to those claims under Rule 401. (Defs.' Objs. at 6.) According to Defendants, these documents are only relevant to Mr. Hill's dismissed excessive force and forced medication claim (Claim #2). (*Id.* ("Evidence demonstrating that excessive force was utilized on April 3, 2002 has no bearing on claims that the Defendants subjected the

10

Plaintiff to intolerable prison conditions during his incarceration.").) Defendants also argue that because the individuals who participated in the alleged April 3, 2002 incident, and who wrote the incident report forms at issue, were the terminated John Doe Defendants, the documents are not relevant to the claims against the current Defendants for initially placing Mr. Hill in administrative segregation or for the conditions of his pre-trial detention or any defenses. (*Id.*)

Defendants also argue that the April 3, 2002 incident reports should be precluded under Rule 403 because any limited probative value of these documents is outweighed by the risks of unfair prejudice and jury confusion for three reasons. (*Id.*) First, according to Defendants, admission of these incident report forms "risks prejudice and confusion, to the extent that the jury may find defendants liable for the conduct of other officers" since none of the forms list the names of any Defendants and none of the individuals who wrote or received the incident report forms are among the Defendants. (*Id.*) Second, Defendants assert that since the Court ruled that the April 3, 2002 incident report from Preston Singer to Captain Donegan will be admitted into evidence because it contains Defendant Lehman's name, the other April 3, 2002 Incident Report forms that Mr. Hill seeks to introduce would cause further jury confusion about the actual claims and defenses that are the subject of trial. (*Id.* at 7) Third, Defendants maintain that no limiting instruction could alleviate prejudice to the Defendants or juror confusion. (*Id.* at 6.)

In response, Mr. Hill makes three arguments for admission of the April 3, 2002 Incident Report Forms signed by Corrections Officers Yip, Fischer, Kiernan, Engelhardt, Grabowski, Volz, and Aitken. First, he argues that these documents illustrate a conspiracy orchestrated by Defendant Lehman with the collusion of Defendant Reynolds to assault and forcibly medicate him on April 3, 2002. (Resp. at 3.) He contends that this is shown by the fact that the alleged forcible medication and assault took place just days after March 29, 2002, the date on which Mr.

Hill was admitted to the SCCF and had had alleged altercation with Defendant Reynolds in the lobby. (Resp. at 2–4.)

Second, Mr. Hill argues that the April 3, 2002 Incident Report Forms signed by Corrections Officers Yip, Fischer, Kiernan, Engelhardt, Grabowski, Volz, and Aitken are relevant to his conditions of confinement claim because they address how, after the assault, he was left in a cell without a mattress, laying on a steel bedframe, handcuffed and shackled, and ultimately falling "asleep in the vomit and blood on the steel frame." (See ECF No. 287 at 2–3.)

Third, Mr. Hill asserts that the April 3, 2002 Incident Report Form signed by Corrections Officer Volz illustrates the conspiracy through which Defendant Lehman, Defendant Reynolds, and others assaulted and forcibly medicated him on April 3, 2002. (Resp. at 3–4.) Mr. Hill contends that Volz is the same person as "C/O VOLGER" who filled out Mr. Hill's Classification Form, which is Defense Exhibit E and which contains a handwritten comment "suicide watch," circled text indicating that "INMATE IS AN ESCAPE RISK," and circled text stating that Mr. Hill would be assigned to administrative segregation. (*Id.*; *see also* Defs. Ex. E, ECF No. 270-5.) The Classification Form also lists Mr. Hill's asthma medication, Prednisone, in the portion of the form for listing medication prescribed by a psychiatrist. (*Id.* at 1) According to Mr. Hill, Defendant Reynolds was the only SCCF corrections officer who spoke to the unnamed Nassau County Corrections officer about Mr. Hill being an escape risk. (Resp. at 4.) Mr. Hill asserts that this raises the question of who told Volz to write that he was an escape risk on the Classification Form, implying that it was Defendant Reynolds. (*Id.*)

Most of Mr. Hill's arguments focus on incident reports that are contained in Defense Exhibit G or the April 3, 2002 Incident Report form Corrections Officer Singer to Captain

Donegan. (*Id.*) As discussed above, these documents will be admitted at trial and Mr. Hill may question Defendant Lehman about them.

Upon further review of each of the April 3, 2002 Incident Report Forms signed by Corrections Officers Yip, Fischer, Kiernan, Engelhardt, Grabowski, Volz, and Aitken, these documents are not relevant to Mr. Hill's Administrative Segregation Claims or any defenses to those claims. Each Incident Report Form documents the narratives provided by Emergency Response Team members of what occurred the night of April 3, 2002 in Mr. Hill's cell. The forms report that Mr. Hill allegedly refused orders to put down his mattress, that some form of struggle ensued, that Mr. Hill was physically subdued by the Team, and that an SCCF nurse medicated him with a Haldol injection. The forms speak squarely to Mr. Hill's excessive force claim (Claim 2), which was dismissed for failure to exhaust administrative remedies. *See* July 7, 2025 Order at 13, ECF No. 291; July 7, 2025 Order at 12–13; Hill, 2009 WL 3698380, at *4. Unlike the April 3, 2002 Incident Report Form signed by Corrections Officer Singer to Donegan, which indicates that Singer informed Lehman about the April 3, 2002 incident in Mr. Hill's cell, there is no indication that any of the Defendants received or were aware of the information conveyed by the April 3, 2002 Incident Report Forms signed by Corrections Officers Yip, Fischer, Kiernan, Engelhardt, Grabowski, Volz, and Aitken.

Significantly, the Forms are unlikely to make true any fact of consequence to Mr. Hill's claim that he was placed in administrative segregation in violation of his constitutional rights or any defenses to that claim. Indeed, the April 3, 2002 incident took place after Mr. Hill was admitted to the SCCF on March 29, 2002.

Moreover, contrary to Mr. Hill's contention, the information on the April 3, 2002 Incident Reports Form signed by Corrections Officers Yip, Fischer, Kiernan, Engelhardt,

13

Grabowski, Volz, and Aitken are unlikely to make true any fact of consequence to Mr. Hill's claim that his conditions of pre-trial detention violated his constitutional rights. While these Forms contain details about Mr. Hill being handcuffed and shackled in his cell following the April 3, 2023 incident, they do not offer the details that Mr. Hill seeks to corroborate about sleeping in his cell without a mattress and on a steel bedframe in his vomit and blood. By contrast, the April 3, 2002 Incident Report Form signed by Singer, which the Court has determined is admissible at trial, does report that Mr. Hill's cell was "stripped," which would corroborate his testimony that following the incident, he slept on a steel bedframe.

To the extent that these forms have some minimal probative value to Mr. Hill's Administrative Segregation Claims, the forms are precluded under Rule 403 for three reasons, First, any such limited probative value is outweighed by the danger of misleading the jury to believe that Mr. Hill's dismissed assault and excessive force claims are being addressed at trial. Second, the admission of these records also risks misleading the jury to attribute the allegedly tortious conduct of members of the Emergency Response Team to Defendants.[6] Third, the admission of these documents raises the risk of wasting time and the needless presentation of cumulative evidence. As discussed, the April 3, 2002 Incident Report Form signed by Singer to Donegan will be admitted at trial and Mr. Hill will be permitted to question Defendant Lehman about its contents. Singer was the leader of the Emergency Response Team and his incident report contains much if not all the information contained in the April 3, 2002 Incident Report Forms signed by Corrections Officers Yip, Fischer, Kiernan, Engelhardt, Grabowski, Volz, and

---

[6] Mr. Hill argues that Defendant Lehman "authorized" the conduct of the Emergency Response Team on April 3, 2002. (Resp. at 3.) However, that theory goes to Mr. Hill's dismissed excessive force and forcible medication claim (Claim #2), and not to the Administrative Segregation Claims that are being tried before the jury.

Aitken. To admit these additional reports would offer cumulative evidence in addition to misleading the jury and confusing the issues as noted above.

Accordingly, Mr. Hill is precluded from introducing the April 3, 2002 incident reports from Corrections Officers Yip, Fischer, Kiernan, Engelhardt, Grabowski, Volz, and Aitkin at trial under Rules 402 and 403.

### III.    Medical Records (ECF No 103-2 at 1, 3–6, 8–15, 18–20, 23)

Mr. Hill seeks to offer as evidence at trial seventeen pages from his SCCF medical file located at ECF No. 103-2. Defendants argue that pages 1, 3–7, 10–13, 18–20 of ECF No. 103-2 are irrelevant to the claims being tried by the jury. (Defs.' Obj. at 7.) While Mr. Hill does not seek to introduce page 7 of his medical file, I will address its admissibility because it is similar to pages 3 through 6 of Mr. Hill's medical file, which Mr. Hill does seek to introduce. (*See* Min. Entry, July 8, 2025.)

Defendants argue that pages 8–9, 14–15, and 23 contain notes about Mr. Hill being administered Haldol in lieu of pepper spray due to his asthma and are irrelevant to the Administrative Segregation Claims. (Defs.' Objs. at 7.) Additionally, Defendants assert that because these pages involve the actions of non-parties, their admission would prejudice Defendants by creating a risk that the jury may find Defendants liable for the conduct of non-parties and would confuse the jury regarding the conditions of Mr. Hill's pre-trial detention. (*Id.*)

Mr. Hill provided the following response to these objections in his July 16, 2025 letter:

> Plaintiff his narrative of the events are supported by clear documentary evidence from medical reports incident reports all of the conditions are clear there isn't a dispute as to whether or not these conditions existed. The defendants only seek to hide those conditions so that they will not be held accountable for them. The Court should answer resoundingly, No.

15

(Resp. at 4) During the July 8, 2025 pre-trial conference, Mr. Hill also argued the he intended to use the medical records to show that he was injected with Haldol by order of the correctional staff, that the April 3, 2002 assault and forced medication were a part of his conditions of confinement at the SCCF, and that he was kept in handcuffs, shackles, and a waist chain including while restricted to his cell. (July 8, 2025 Hr'g 72:15–79:6.) He also confirmed that he would like to use these pages of his medical file to corroborate his own testimony that handcuffs, shackles, and a waist chain were a part of the conditions of confinement in his administrative segregation, including following the alleged April 3, 2002 assault. (*Id.* 84:10–86:14.)

Pages 8–9, 14–15, 18, and 23 of Mr. Hill's SCCF medical file, all indicate the Mr. Hill was prescribed and then administered Haldol by SCCF medical staff. Understandably, Mr. Hill seeks to offer these pages into evidence to corroborate his own proffered testimony that he was administered Haldol on April 3, 2002. The records are short and do not offer significant extraneous information. Pages 8–9, 14–15, 18, and 23 are therefore relevant because they make it more likely that Mr. Hill was in fact prescribed and injected with Haldol, which this Court has found is relevant to the question of damages for his claim against unconstitutional conditions of pre-trial detention.

The Court is unpersuaded by Defendants' arguments that admission of pages 8–9, 14–15, 18, and 23 would mislead the jury to attribute to Defendants the conduct of non-parties or would confuse the jury as to what facts it could consider in assessing Mr. Hill's claim against excessively restrictive conditions of confinement. While the Haldol was prescribed by unnamed SCCF medical staff, Mr. Hill seeks to use the pages to show his experience of being administered Haldol during his time in administrative segregation. The Court has ruled that this testimony is permissible for the sole purpose of aiding the jury in assessing any damages it may

or may not choose to award to Mr. Hill. Accordingly, pages 8–9, 14–15, and 23 of Mr. Hill's medical file are admissible under Rule 401, and the probative value of these records is *not* outweighed by the risk of unfair prejudice to Defendants, confusing the issues, wasting time, or misleading the jury under Rule 403.

Suffolk County has a readily available avenue to address any concerns that it has regarding the admission of pages 8–9, 14–15, and 23 of Mr. Hill's medical file: it can meet and confer with Mr. Hill to determine whether the parties stipulate to **the relevant facts that** Mr. Hill was prescribed Haldol by SCCF medical staff, was administered Haldol against his will on April 3, 2002, and any other facts concerning the impact of the Haldol injection on Mr. Hill. Accordingly, the Court does not rule at this time that pages 8–9, 14–15, 18, and 23 of Mr. Hill's medical records are admitted into the trial record. To the extent that the parties are unable to reach a stipulation, the Court will address this issue before the jury is convened on July 21, 2025.

Finally, the Court finds that pages 1, 3–7, 10–13, and 19–20 of Mr. Hill's medical file are irrelevant to any claims or defenses being tried before the jury. Page 1 is an April 8, 2002 order permitting Mr. Hill to wear his own sneakers. Pages 3 through 7 and 10 are prescriptions for various medications Mr. Hill was prescribed while detained in the SCCF, including Prednisone for his asthma. Pages 11 through 13 are medical progress notes from June 2002 that discuss Mr. Hill's asthma, asthmatic bronchitis, and treatment for those issues. Pages 19 and 20 are the March 29, 2002 Medical Questionnaire Data Form for Mr. Hill indicating that he has asthma and takes medication for that condition. The March 29, 2002 Medical Questionnaire Data Form also includes insurance related information. None of these documents makes a fact of consequence to a claim or defense in this case more or less likely to be true. Accordingly, Mr. Hill is precluded from introducing pages 1, 3–7, 10–13, and 19–20 at trial under Rule 401 and 402.

17

IV.    **The Excerpt of the Suffolk County Sheriff's Office Operations and Procedures Guide**

Mr. Hill seeks to offer an excerpt of the Suffolk County Sheriff's Office Operations and Procedures Guide—specifically, a page from Chapter 316: Discipline and Segregation of Inmates—as an exhibit at trial. (Min. Entry, July 8, 2025.) Defendants object on the grounds that the excerpt is irrelevant to the Administrative Segregation Claims, which are the only remaining claims in the case, and that it is only relevant to the dismissed excessive force and forced medication claims. (Defs.' Objs. at 7.)

The specific portion of the Suffolk County Sheriff's Office Operations and Procedures Guide that Mr. Hill presented during the July 8, 2025 pre-trial conference that he seeks to introduce at trial is the final page of Chapter 316 which includes Section 316-14(B) through Section 316-16. Section 316-14(B) provides as follows:

> Each time the Response Team is used, all log entries pertaining to its use will be reviewed by the Correctional Facility Administrative Captain, or, at the Minimum Security Correctional Facility, the Deputy Warden no later than 24 hours after the incident occurs. Any deficiencies noted in the recording of the incident will be brought to the attention of the officer in charge of the team for immediate correction.

Section 316-15 is titled "Reports of moves" and provides: "The Lieutenant, Sergeant and all other members of the Response Team will submit written reports concerning the move of the inmate(s) as soon as the move is complete." Section 316-16 is titled "Charges for assaults on officers" and provides as follows:

> Any Response Team officer who is assaulted by an inmate shall have the right, under law, to formulate charges against that inmate. All assaults upon officers will be brought promptly to the attention of the internal security personnel, who will notify the Special Investigation Bureau (S.I.B.). If charges are preferred against an inmate, they will be process without unnecessary delay.

18

During the July 8, 2025 pre-trial conference, Mr. Hill stated that he intends to offer Section 316-14(B) at trial to show to the jury that SCCF Corrections Officers are required to correct their reports when they realize they have made errors or mistakes and may abuse that authority to fabricate incident reports. (July 8, 2025 Hr'g 55:17–56:7.) Mr. Hill argued that Section 316-14(B) would help him illustrate to the jury that the SCCF Corrections Officers correct their incident reports to say that they were assaulted by detained persons and, in Mr. Hill's case, that Corrections Officers' claims of assault set forth in the April 3, 2002 Incident Report Forms signed by Corrections Officers Singer, Yip, Fischer, Kiernan, Engelhardt, Grabowski, Volz, and Aitken were fabricated because no corrections officer filed a charge against Mr. Hill. (*Id.* 56:14–57:6.)

The Court asked Mr. Hill to clarify how he intends to use the Suffolk County Sheriff's Office Operations and Procedures Guide to question Defendants at trial. In response, Mr. Hill confirmed that he would use the page of the guide to tie the April 3, 2002 Incident Reports Forms to Defendants' potential involvement in the continuation of Mr. Hill's administrative segregation. (*Id.* 57:17–24.)

First, this one-page excerpt of the Suffolk County Sheriff's Office Operations and Procedures Guide relating to procedures for correcting Emergency Response Team incident reports has minimal to no relevance to Mr. Hill's two remaining claims: (1) that Defendants placed Mr. Hill in administrative segregation in the SCCF on March 29, 2002 in violation of his constitutional rights, and (2) that Defendants continued his placement in administrative segregation in excessively restrictive conditions for the duration of his pre-trial detention. Because the provisions of the Guide pertain to the Emergency Response Team, they relate squarely to the April 3, 2002 Incident Report Forms signed by Corrections Officers Yip, Fischer,

Kiernan, Engelhardt, Grabowski, Volz, and Aitken, which this Court has ruled are inadmissible under Rules 402 and 403. Section 316-14(B) from the Guide is only relevant to Claim 2—that SCCF corrections officers and a nurse colluded to assault and forcibly medicate him on April 3, 2002 in violation of his right to protection from excessive force—and Claim 6—that SCCF corrections officers continuously subjected him to physical and verbal harassment. But these claims were dismissed for failure to exhaust. *See* July 17, 2025 Order at 13, ECF No. 291; July 7, 2025 Order at 12–13; Hill, 2009 WL 3698380, at *4.

Second, to the extent that there is any limited relevance of this one-page except of the Suffolk County Sheriff's Office Operations and Procedures Guide to the Administrative Segregation Claims, such limited probative value is substantially outweigh by the risk of confusing the issues and misleading the jury to believe that Mr. Hill's dismissed Claims 2 and 6 remain at issue and the risk of wasting the jury's time on evidence with at best minimal to no relevance to facts of consequences to the claims and defenses at trial.

Accordingly, Mr. Hill is precluded from introducing the page of the Suffolk County Sheriff's Office Operations and Procedures Guide at trial under Rules 402 and 403.

## V.    Suffolk County Sheriff's Office's Internal Affairs Section Documents (ECF Nos. 99, 102 at 3, 5, 7-8, 11-15)

During the July 8, 2025 conference, Mr. Hill argued that the Suffolk County Sheriff's Office's Internal Affairs Section Documents illustrate that Defendants and the Sheriff's Office's Internal Affairs Section "were all in on" his excessively restrictive conditions of confinement. (July 8, 2025 Hr'g 89:17–92:2, 96:3–97:17.) He also indicated that he would like to use the documents to question Defendant Murphy about whether he was aware of the allegations in the documents. (*Id.* 90:23–91:8, 96:3–97:17.)

A.  Mr. Hill's June 20, 2002 Statement to the Suffolk County Sheriff's Office's Internal Affairs Section (ECF No. 102 at 7–8, 14–15)

Defendants argue that Mr. Hill's June 20, 2002 Statement to the Suffolk County Sheriff's Office's Internal Affairs Section is irrelevant to the Administrative Segregation Claims and contains inadmissible hearsay. (Defs.' Objs. at 8.) Mr. Hill does not specifically address the June 20, 2002 Statement to Internal Affairs in his response to Defendants' objections. (*See* Resp.)

Mr. Hill's June 20, 2002 Statement to Internal Affairs is relevant to the Administrative Segregation Claims because according to the Statement, when Mr. Hill entered the SCCF on or around March 29, 2002, Defendant Reynolds told him that he would be placed in administrative segregation and that Mr. Hill would be restrained in handcuffs, shackles, and a waist chain for the duration of his detention in the SCCF. (ECF No. 102 at 7.) Mr. Hill's June 20, 2002 Statement to Internal Affairs also indicates that "[n]o particular reason was given other than I was not a Suffolk County inmate." (*Id.)* The remainder of Mr. Hill's June 20, 2002 Statement contains information relating to Mr. Hill's dismissed excessive force, forced medication, failure to protect claims that is not relevant to his claims against placement in administrative segregation and detention in excessively restrictive conditions. (*Id.* at 7–8.)

While Mr. Hill's June 20, 2002 Statement contains information relevant to Mr. Hill's two claims being tried before a jury, the statement is hearsay under Rule 801 because the document reflects Mr. Hill's out-of-court statement, Mr. Hill was not subject to cross-examination regarding the statement, and Mr. Hill is seeking to use that out-of-court statement for the truth of the matter asserted: that he was told by Defendant Reynolds that he was going to be placed in administrative segregation, that the conditions of confinement would include being forced to wear handcuffs, shackles, and a waist chain, and that "no particular reason was ever given other than [Mr. Hill] was not a Suffolk County inmate."

21

Hearsay "is not admissible unless . . . a federal statute," the Federal Rules of Evidence, or "other rules prescribed by the Supreme Court" provide otherwise. Fed. R. Evid. 802. Mr. Hill has not identified an exception to the hearsay rule that would apply to the June 20, 2002 statement. It is therefore inadmissible at trial.

Accordingly, Mr. Hill is precluded from offering his June 20, 2002 Statement as an exhibit at trial. However, to the extent that Mr. Hill seeks to testify to what Defendant Reynolds said to him on or about March 29, 2002 regarding Mr. Hill's initial placement in administrative segregation, the conditions of his confinement, and any explanation or lack of explanation provided, such statements may be admissible as opposing party admissions under Rule 801(d)(2)(A). *See* Fed. R. Ev. 801(d)(2)(A).

### B. The Suffolk County Sheriff's Internal Affairs Section Telephone Complaint (ECF No. 102 at 3, 6, 13)

Defendants argue that the statements contained in the Suffolk County Sheriff's Internal Affairs Section Telephone Complaint are double hearsay because the document, which itself is an out-of-court statement, contains statements by Ruth Crumpton, Mr. Hill's mother, regarding what Mr. Hill told her and Ms. Crumpton is not an anticipated trial witness. (Defs.' Objs. at 8.) Mr. Hill does not specifically address the Suffolk County Sheriff's Internal Affairs Section Telephone Complaint in his response to Defendants' objections. (*See* Resp.)

The Suffolk County Sheriff's Internal Affairs Section Telephone Complaint was written by "D/S Inv. Pisciotta" on June 20, 2002. (ECF No. 102 at 3.) The document discusses what Ms. Crumpton told Pisciotta over the phone. (*Id.*) Ms. Crumpton's statements, as recorded by Pisciotta, include what Mr. Hill told Mrs. Crumpton as follows:

> NATURE OF COMPLAINT: Stated her son is alternatively housed here from Nassau CF. His name is Demetrius Hill . . . . He has told her that he is being beaten by officers on a regular basis and has been injected. He is an asthmatic and

22

has emotional problems. He also told her that he is in cuff and shackles and belly chain 24/7. Would like to know what is happening to her son.

ACTION TAKEN: told her we would send someone in to interview him and we would call her back either tonight or tomorrow.

(*Id.*)

Each statement contained in the Suffolk County Sheriff's Internal Affairs Section Telephone Complaint is either double or triple hearsay because neither Mr. Hill nor Ms. Crumpton were subject to cross-examination about the statements contained in the document. Mr. Hill has not shown that any exception to the rule against hearsay codified in Rule 802 of the Federal Rules of Evidence applies to the statements describing what Mr. Hill told Ms. Crumpton and which Ms. Crumpton then relayed to the Investigator Piscotta, including the following statements: "[Mr. Hill] has told [Ms. Crumpton] that [Mr. Hill] is being beaten by officers on a regular basis and has been injected . . . . [Mr. Hill] also told [Ms. Crumpton] that he is in cuff and shackles and belly chain 24/7.". Because Mr. Hill seeks to offer at trial the Suffolk County Sheriff's Internal Affairs Section Telephone Complaint for the truth of these statements, which relate to his claims that he was detained in excessively restrictive conditions, those statements are inadmissible hearsay.

The only statement in the complaint that *might* fall within a hearsay exception is the statement that Ms. Crumpton "[w]ould like to know what is happening to her son," which may qualify as a present sense impression under Rule 803(1), Fed. R. Evid. However, that statement is not relevant to Mr. Hill's Administrative Segregation Claims.

Accordingly, Mr. Hill is precluded from introducing the Suffolk County Sheriff's Internal Affairs Section Telephone Complaint at trial under Rules 801, 802, and 803.

C.  The Internal Affairs Determination (ECF No. 99-2)

Defendants argue that the Internal Affairs Determination is irrelevant to the remaining claims and contains no context for the limited information it does provide, namely that Mr. Hill's complaint was closed as exonerated. (Defs.' Obj. at 8.) Mr. Hill does not specifically address the Internal Affairs Determination in his response to Defendants' objections. (*See* Resp.)

The Internal Affairs Determination is a memo from Arthur E. Meyers, Commanding Officer, Internal Affairs Section, to Sheriff Alfred C. Tisch, dated June 28, 2002. (ECF No. 99-2.) The Internal Affairs Determination states that Meyers recommends Case File 1-41-02, Allegation of Assault, be deemed "CLOSED/EXONERATED/NO MISCONDUCTED NOTED." (*Id.*) The Internal Affairs Determination does not state Mr. Hill's name, include any details about the specific case at issue, or provide any other details that would make it relevant to Mr. Hill's remaining claims regarding his initial placement in administrative segregation and the conditions of his confinement. (*Id.*) The Internal Affairs Determination is not relevant to Mr. Hill's Administrative Segregation Claims.

Accordingly, Mr. Hill is precluded from introducing the Internal Affairs Determination at ECF No. 99-2 at trial under Rules 401 and 402.

D.  The March 12, 2001 Form Regarding Lamar Byrd's Grievance

Mr. Hill seeks to offer the March 12, 2001 form indicating that Lamar Byrd's grievance was too vague and should be returned to Byrd for specifics within two days. Defendants are correct in arguing that this document is irrelevant because it has nothing to do with Mr. Hill and predates Mr. Hill's detention. (*See* Defs.' Obj. at 8.) Mr. Hill appears to offer this document in an effort to show that the SCCF grievance procedures were unavailable to him. However, Judge Hurley ruled that the grievance procedures were available to Mr. Hill to report the conduct

24

challenged in Claims 2, 3, 5, and 6 in the October 30, 2009 Order granting summary judgment to Defendants on these claims. *Hill*, 2009 WL 3698380, *4. As this Court has found in its own rulings, Mr. Hill has not shown that this ruling warrants reconsideration under Rule 54(b), Fed. R. Civ. P., and thus the question of exhaustion is not at issue in this jury trial. (July 7, 2025 Order at 19) Additionally, any limited probative value of document to the claims and defenses being tried before a jury is outweighed by the risk of confusing the issues, misleading the jury, and wasting time.

Accordingly, Mr. Hill is precluded from offering at trial the March 12, 2001 Form regarding Lamar Byrd's Grievance under Rule 402 and 403.

## CONCLUSION

For the reasons set forth above, Mr. Hill will be permitted to offer at trial the following documents:

1) documents that he identified at the July 8, 2025 pre-trial conference that are already contained in Defendants' proposed trial exhibits; and
2) the April 3, 2002 Incident Report Form signed by Corrections Officer Preston Singer to CPT Donegan.

These documents will be admitted into the record at trial prior to the questioning of witnesses.

Pages 8–9, 14–15, 18, and 23 of Mr. Hill's medical records at ECF No. 103-2 are admissible evidence, but the Court reserves ruling on whether these documents are admitted into the trial record until the parties have met and conferred regarding any factual stipulation that would address Mr. Hill's purpose in seeking to offer these records into evidence.

Mr. Hill is precluded from offering the following documents at trial:

- the June 10, 2002 Incident Report signed by Corrections Officer Ratner;
- the April 3, 2002 Incident Reports signed by Corrections Officers Yip, Fischer, Kiernan, Engelhardt, Grabowski, Volz, and Aitken;
- pages 1, 3–7, 10–13, and 19–20 of Mr. Hill's SCCF medical file;
- excerpt of the Suffolk County Sheriff's Office Operations and Procedures Guide

25

- Mr. Hill's June 20, 2002 Statement to the Suffolk County Sheriff's Office's Internal Affairs Section (ECF No. 102 at 7–8, 14–15);
- the Suffolk County Sheriff's Internal Affairs Section Telephone Complaint (ECF No. 102 at 3, 6, 13);
- the Internal Affairs Determination (ECF No. 99-2); and
- the March 12, 2001 Form Regarding Lamar Byrd's Grievance

under the Federal Rules of Evidence specified above.


Dated: Central Islip, New York
         July 18, 2025

                                    _/s/ Nusrat J. Choudhury_____
                                    NUSRAT J. CHOUDHURY
                                    United States District Judge