**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| Demetrius Hill,<br><br>                    Plaintiff,<br><br>            -v-<br><br>Al Tisch, et al.,<br><br>                    Defendants. | | 2:02-cv-3901<br>(NJC) (AYS) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Demetrius Hill ("Mr. Hill") filed this action on July 8, 2002 against several individuals, including Thomas Murphy, Peter Lehman, Helen Geslak, and Gerard Reynolds (collectively, "Defendants"), bringing six claims under 42 U.S.C. § 1983 and the Fourteenth Amendment Due Process Clause arising out of his pre-trial detention in the Suffolk County Correctional Facility at Riverhead (the "SCCF"). (Compl., ECF No. 1.) Two of Mr. Hill's claims proceeded to a jury trial held from July 21, 2025 through July 29, 2025. (Min. Entry, July 21, 2025; Min. Entry, July 29, 2025.) The jury returned a verdict in favor of Defendants on both claims. (Jury Verdict Form, ECF No. 297.) The Clerk of Court entered Judgment dated July 29, 2025. (ECF No. 310.)

Before the Court are twelve post-verdict motions filed by Mr. Hill between July 29, 2025 and September 23, 2025, seeking various forms of relief, including but not limited to orders that would: vacate the jury verdict and judgment in this action and require a new trial; suspend the entry or enforcement of the Judgment pending ICE verification of the citizenship of three jurors; schedule an evidentiary hearing on juror misconduct, disqualification, and citizenship status; direct ICE to investigate the citizenship of all eight members of the jury; permit the inspection of

juror qualification records; strike Defendants' response to certain of Mr. Hill's post-verdict motions; correct the sequence of filings on the docket of this action and make public certain docket filings; and vacate or modify the Court's August 20, 2025 Order (ECF No. 318), which requires the parties to seek leave from the Court prior to contacting or communicating with any jurors or members of the jury venire.[1] Several of these post-verdict motions also seek the recusal of the undersigned, reassignment of this action to another judge of the U.S. District Court for the Eastern District of New York, and a sworn declaration by the undersigned addressing why the Judgment in this action was purportedly backdated to July 29, 2025, or in the alternative, immediate certification of this action to the Judicial Council of the Second Circuit, the Second Circuit, and/or the U.S. Department of Justice for investigation into judicial misconduct and docket manipulation.[2]

This Opinion and Order addresses each of Mr. Hill's twelve post-verdict motions as well as his supplemental supporting submissions. For the reasons explained below, all of the post-verdict motions are entirely without merit and a number of them are frivolous. The Court denies each motion and warns Mr. Hill that such filings only delay ultimate case resolution and that future frivolous filings may lead to sanctions.

---

[1] *See* Motion to Vacate (ECF No. 299); Motion to Inspect (ECF No. 303); First Supplemental Motion (ECF No. 311); First Emergency Motion (ECF No. 312); Second Supplemental Motion (ECF No. 317); Objection Motion (ECF No. 319); Motion to Correct (ECF No. 320); Motion to Compel (ECF No. 322); Second Motion to Correct (ECF No. 323); Second Emergency Motion (ECF No. 324); Motion to Strike (ECF No. 326).

[2] Motion to Compel at 3; Second Motion to Correct at 2; Second Emergency Motion at 4; Motion for Recusal (ECF No. 327) at 3.

## PROCEDURAL HISTORY

The jury trial in this action began on July 21, 2024 and concluded on July 29, 2025, when the jury returned a verdict for Defendants on Mr. Hill's claims under 42 U.S.C. § 1983 ("Section 1983") that his initial placement in administrative segregation as a pre-trial detainee in the SCCF and the continuation of his placement in administrative segregation for the duration of his pre-trial detention violated his rights under the Fourteenth Amendment Due Process Clause. (Min. Entry, July 21, 2025; Min. Entry July 29, 2025; Jury Verdict Form.) Judgment in this case was entered on July 29, 2025, and filed on the docket on July 30, 2025. (ECF No. 310.)

Between July 29, 2025 and September 23, 2025, Mr. Hill filed twelve motions seeking various forms of overlapping relief.

First, on July 30, 2025, Mr. Hill filed a motion to vacate the jury verdict ("Motion to Vacate") (ECF No. 299) pursuant to Rules 59, 60(b)(3), and 60(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). In the Motion to Vacate, Mr. Hill seeks an order vacating the jury's verdict and scheduling an evidentiary hearing to determine the citizenship of Juror No. 1, Juror No. 3, and Juror No. 7, or in the alternative, referring the determination of jurors' citizenship to the U.S. Department of Homeland Security ("DHS") and Immigration and Customs Enforcement ("ICE"). (*Id. at* 3.)

Second, on July 30, 2025, Mr. Hill filed a motion to inspect juror qualification records ("Motion to Inspect") (ECF No. 303) pursuant to 28 U.S.C. § 1867(f), which seeks an order instructing "the Clerk of Court to produce for inspection the juror qualification questionnaires and related jury selection records for the panel in this case" and leave for Mr. Hill "to file any appropriate post-trial motions if disqualified jurors are identified." (*Id.* at 2.)

3

Third, on July 30, 2025, Mr. Hill filed a supplemental motion for ICE verification and public docketing of filings "in further support of" the Motion to Vacate ("First Supplemental Motion"). (ECF No. 311.) In the First Supplemental Motion, Mr. Hill seeks an order directing "[DHS] or ICE to immediately verify the citizenship status of" Juror No. 1, Juror No. 3, and Juror No. 7, an order making publicly viewable Mr. Hill's submissions docketed at ECF Nos. 297 and 299 and all filings concerning the Motion to Vacate, and an order staying "enforcement of judgment pending the resolution of Plaintiff's motion." (*Id.* at 2.)

Fourth, on July 31, 2025, Mr. Hill filed an emergency motion to suspend and vacate the Judgment and for immediate ICE verification of juror citizenship ("First Emergency Motion"). (ECF No. 312.) In the First Emergency Motion, Mr. Hill seeks an order suspending entry or enforcement of the Judgment until ICE verification of three jurors' U.S. citizenship, directing "ICE and DHS to confirm the citizenship status of" Juror No. 1, Juror No. 3, and Juror No. 7, reopening the case, and "restor[ing] all improperly hidden filings unless sealed by court order." (*Id.* at 2.)

Fifth, on August 20, 2025, Mr. Hill filed a supplemental motion to vacate the verdict and for a new trial on grounds of jury misconduct, disqualification, and citizenship verification. ("Second Supplemental Motion") (ECF No. 317.) In the Second Supplemental Motion, Mr. Hill reports that he contacted Juror No. 7, one of the jurors whose qualifications he is challenging, through a social media messaging platform to bolster the first four pending motions seeking to vacate the jury verdict and Judgment, and reports that he intends to have a "longer discussion with the juror in question to further clarify" issues relating to the citizenship of jurors. (*Id.* at 2.) Mr. Hill also raises broad concerns about the U.S. citizenship of all members of the jury, not just the three jurors who are the subject of the first, third, and fourth post-verdict motions (ECF Nos.

299, 311, 312). In the Second Supplemental Motion, Mr. Hill seeks an order "vacat[ing] the verdict," "an evidentiary hearing into juror misconduct, disqualification, and citizenship status," and "a new trial" on the grounds that Juror No. 1 was not qualified to serve on the jury and Juror No. 8 was "motivated by improper bias and personal attention-seeking rather than impartial evaluation of the evidence." (*Id.* at 2–3.) Mr. Hill generally argues that "questions remain regarding the citizenship of seated jurors" and that the timing of the jury's decision to replace Juror No. 1 with Juror No. 8 as foreperson "shows that the jury's process was infected throughout." (*Id*. at 1, 3.)

Following the filing of the first five post-verdict motions, the Court issued an Order dated August 20, 2025, noting that the Court learned of Mr. Hill's post-verdict contact with a member of the jury with the docketing of the Second Supplemental Motion. (ECF No. 318 at 4.) In the August 20, 2025 Order, the Court instructed that "[n]o party may have any contact or communications with any juror who served on this trial or member of the jury venire unless it is expressly authorized by the Court." (*Id*. at 5.)

On August 20, 2025, Mr. Hill filed the sixth post-verdict motion, titled "Plaintiff's Objection to order dated August 20, 2025 and notice of intent to petition for writ of mandamus" ("Objection Motion"). (ECF No. 319.) In the Objection Motion, Mr. Hill seeks an order vacating or modifying the Court's August 20, 2025 Order, which requires the parties to seek leave from the Court prior to contacting or communicating with any jurors or members of the jury venire. (*Id.* at 3.) The Objection Motion also seeks an order requiring "production of juror qualification questionnaires," directing "ICE verification of juror citizenship," and a "hearing on juror tampering and deleted communications." (*Id.*)

On August 21, 2025, Mr. Hill filed a seventh post-verdict motion ("Motion to Correct") (ECF No. 320), in which he requests that the Court "correct the record regarding docket sequence," "vacate the August 20, 2025 [O]rder," "vacate the jury verdict," and "schedule an expedited evidentiary hearing to determine who instructed Juror No. 7 to delete her messages and to examine juror citizenship and contact with [Defendant] Reynolds." (*Id.* at 3.)

On August 21, 2025, the Court clarified that the August 20, 2025 Order prohibiting any contact or communications with jurors and members of the jury venire without first applying for and obtaining Court permission applies to all parties and required Defendants to respond to Mr. Hill's Objection Motion and Motion to Correct by August 29, 2025. (ECF No. 321 at 2.)

On August 21, 2025, Mr. Hill filed an eighth motion titled "Motion to Compel." (ECF No. 322.) In the Motion to Compel, Mr. Hill seeks to compel the Court "to declare under oath the reason why" the Deputy Clerk "backdated the Judgment to July 29, 2025, when it was docketed on July 30, 2025," "[c]orrect the docket to reflect the true sequence of filings," "[v]acate the improperly dated judgment," "[h]old an expedited hearing to address this judicial misrepresentation in context with jury tampering and misrepresentations already documented." (*Id.* at 2.) Mr. Hill also requests immediate certification of "the matter to the Judicial Council of the Second Circuit" and/or the Second Circuit for investigation into judicial misconduct and docket manipulation in the event that the Court "fails or refuses to provide a sworn declaration." (*Id.*)

On August 22, 2025, Mr. Hill filed a ninth motion ("Second Motion to Correct") (ECF No. 323), in which he requests that the Court "[c]orrect the docket to reflect the true filing sequence and acknowledge that Plaintiff's Motion to Vacate was filed and responded to before judgment," "[v]acate the August 20, 2025 Order to the extent it relies on an inaccurate timeline,"

and "[r]equire a sworn explanation under 28 U.S.C. § 1746" about why the Court purportedly "backdated Judgment as Entry 310, or, in the alternative, set an immediate evidentiary hearing and take testimony under oath from Deputy Clerk Morabito." (ECF No. 323 at 2.)

On August 25, 2025, Mr. Hill filed a tenth motion, framed as an emergency motion to vacate and void the Judgment in this action for fraud on the court, juror disqualification, and juror tampering ("Second Emergency Motion") (ECF No. 324) pursuant to Rule 60(b)(4) and (d)(3), Fed. R. Civ. P. In the Second Emergency Motion, Mr. Hill requests that the Court "[v]acate the judgment," "[d]eclare the jury verdict void for lack of lawful constitution under 28 U.S.C. § 1865," "[o]rder immediate disclosure of Juror #1's qualification form, including citizenship status," "[r]efer this matter to the Department of Justice for investigation of docket manipulation and fraud on the court." (*Id.* at 4.) In the filing, Mr. Hill also calls into question the Court's impartiality and "reserve[s] [the] right to move separately for recusal under 28 U.S.C. § 455." (*Id.*)

On August 29, 2025, Mr. Hill filed an eleventh motion framed as a motion to strike Defendants' response, vacate the verdict, and order mandatory ICE verification of the citizenship of all jurors ("Motion to Strike"). (ECF No. 326.) In the Motion to Strike, Mr. Hill requests that the Court strike Defendants' August 29, 2025 response in opposition to his previously filed post-verdict motions, order ICE verification of jurors' citizenship, vacate the verdict, and schedule a hearing on "juror tampering and misconduct." (*Id.* at 3.)

On September 23, 2025, Mr. Hill filed a twelfth motion, which is titled a motion "to stop stalling and for recusal of Judge Nusrat J. Choudhury" ("Motion for Recusal"). (ECF No. 327.) In the Motion for Recusal, Mr. Hill requests the undersigned's recusal, reassignment of this action to another judge of the Eastern District of New York, and the Court's acknowledgement

of alleged "docket irregularities," and an investigation by an entity other than this Court. (*Id.* at 3–4.)

Following Mr. Hill's filing of the first three post-verdict motions (the Motion to Vacate, the Motion to Inspect, and the First Supplemental Motion), on July 31, 2025, the Court ordered Defendants to respond to these motions by August 6, 2025. (Elec. Order, July 31, 2025.) Mr. Hill subsequently filed the First Emergency Motion on July 31, 2025. (ECF No. 312.) Defendants timely filed their opposition on August 6, 2025. (Opp'n, ECF No. 313.) Defendants' August 6, 2025 opposition responds to the Motion to Vacate, Motion to Inspect, First Supplemental Motion, and First Emergency Motion. (*Id.* at 1, 7.)

On August 7, 2025, Mr. Hill filed two additional documents (ECF Nos. 314, 315). On August 11, 2025, he filed another document in support of the first four Motions (ECF No. 316). The Court liberally construes these three documents to constitute Mr. Hill's reply to the Motion to Vacate, Motion to Inspect, First Supplemental Motion, and First Emergency Motion.

On August 29, 2025, Defendants filed their response to Mr. Hill's Objection Motion and Motion to Correct (ECF No. 325). Defendants have not responded to six of Mr. Hill's post-verdict motions: the Second Supplemental Motion, the Motion to Compel, the Second Motion to Correct, the Second Emergency Motion, the Motion to Strike, and the Motion for Recusal.

The Court considers all twelve of the post-verdict motions to be fully-briefed.

## LEGAL STANDARDS

Rule 59(e) permits a party to make "[a] motion to alter or amend a judgment" as long as it is made "no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Courts should grant a motion under Rule 59(e) "only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent

manifest injustice." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142–43 (2d Cir. 2020).[3] "The standard for granting such a motion is strict." *Cho v. Blackberry Ltd.*, 991 F.3d 155, 170 (2d Cir. 2021). "In deciding a Rule 59(e) motion, 'courts will not address new arguments or evidence that the moving party could have raised before the decision issued.'" *Whitford v. Nat'l R.R. Passenger Corp.*, 786 F.Supp.3d 567, 571 (W.D.N.Y. 2025) (quoting *Banister v. Davis*, 590 U.S. 504, 508 (2020)). "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012).

> Rule 60(b) provides for relief from a final judgment, order, or proceeding in the case of:
>
> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). The standard for granting a Rule 60(b) motion, like that for a motion under Rule 59(e), is "strict." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024). A Rule 60(b) motion may be granted if there is "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id*. The Second Circuit has "described Rule 60(b)(6) as a catch-all provision that 'is properly invoked only when there are extraordinary circumstances justifying relief, when the judgment may work an extreme and undue hardship, and when the asserted grounds for relief are not

---

[3] Unless otherwise indicated, case quotations omit all internal quotation marks, brackets alterations, and citations.

recognized in clauses (1)–(5) of the Rule.'" *Metzler*, 970 F.3d at 143 (2d Cir. 2020) (quoting

*Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)).

A Rule 60(b) motion "must be made within a reasonable time" and motions brought

pursuant to Rule 60(b)(1)–(3) must be made "no more than a year after the entry of

the . . . order . . . ." Fed. R. Civ. P. 60(c)(1).

## DISCUSSION

The twelve post-verdict Motions seek the following relief:

(1) an order vacating the jury verdict, staying entry and enforcement of the Judgment, ordering a new trial, directing DHS and/or ICE to verify the citizenship of Juror No. 1, Juror No. 3, and Juror No. 7, and scheduling an evidentiary hearing regarding jurors' qualifications;

(2) an order directing the Clerk of Court to produce the juror questionnaires used to select the panel in this case;

(3) an order vacating the August 20, 2025 Order requiring the parties to apply for and secure Court permission prior to contacting members of the jury or jury venire and scheduling an evidentiary hearing on juror tampering and misconduct;

(4) an investigation and hearing into Defendant Reynolds's alleged interaction with Juror No. 1, Juror No. 5, and Juror No. 8;

(5) an order correcting the sequence of filings on the docket, explaining the purported backdating of the entry of Judgment on the docket, and referring this matter to the Second Circuit, the Second Circuit Judicial Council, and Department of Justice for an investigation;

(6) an order reopening the case, making ECF Nos. 297, 299 and related filings publicly viewable, and granting leave for Mr. Hill "to file any appropriate post-trial motions if disqualified jurors are identified"; and

(7) an order recusing the undersigned.

(ECF No. 303 at 2; *see also* ECF No. 299 at 3; ECF No. 311 at 2; ECF No. 312 at 2; ECF No. 317 at 3; ECF No. 319 at 3; ECF No. 320 at 3; ECF No. 322 at 2; ECF No. 323 at 2, ECF No. 324 at 3; ECF No. 326 at 3, ECF No. 327 at 3–4.)

I.      **Motions Seeking an Order Vacating the Jury Verdict and Judgment, Staying Entry and Enforcement of the Judgment, Directing DHS/ICE to Verify Jurors' Citizenship, Ordering a New Trial, and Scheduling an Evidentiary Hearing Regarding Jurors' Qualifications**

The first, third, fourth, and fifth post-verdict motions filed by Mr. Hill request various forms of overlapping relief. As discussed, the Motion to Vacate, which is made pursuant to Rules 59, 60(b)(3), and 60(b)(6), Fed. R. Civ. P., seeks an order vacating the jury's verdict and scheduling an evidentiary hearing to determine jurors' citizenship or, in the alternative, an order referring to DHS and ICE the determination of whether Juror No. 1, Juror No. 3, and Juror No. 7 are U.S. citizens as required for jury service. (ECF No. 299 at 3.) In the First Supplemental Motion, Mr. Hill also seeks an order directing "[DHS] or ICE to immediately verify the citizenship status of" Juror No. 1, Juror No. 3, and Juror No. 7, and an order staying "enforcement of judgment pending the resolution of Plaintiff's motion." (ECF No. 311 at 2.) Similarly, in the First Emergency Motion, Mr. Hill seeks an order vacating the Judgment in this action, suspending entry or enforcement of any Judgment pending immediate ICE verification of the citizenship of the Juror No. 1, Juror No. 3, and Juror No. 7, and an order reopening the case. (ECF No. 312 at 2.) Additionally, in the Second Supplemental Motion, Mr. Hill raises concerns about the citizenship of *all* eight jurors who rendered a verdict in this action, argues that the timing of the replacement of the jury foreperson suggests juror misconduct, and seeks an order "vacat[ing] the verdict," "an evidentiary hearing into juror misconduct, disqualification, and citizenship status," and "a new trial" on the grounds that Juror No. 1 was not qualified to serve on the jury and that Juror No. 8 was "motivated by improper bias and personal attention-seeking rather than impartial evaluation of the evidence." (ECF No. 317 at 2.)

While Mr. Hill only contends that Juror No. 1, Juror No. 3, and Juror No. 7 *may* not be U.S. citizens in the body of the first, third, fourth, and fifth motions, the bolded title of the

Motion to Vacate specifically asserts that there were, in fact, non-citizens on the jury. (*See* ECF No. 299 at 1 ("PLAINTIFF'S MOTION TO IMMEDIATELY VACATE THE JURY VERDICT *BASED ON NON-CITIZEN JURORS*") (emphasis added).)

The first, third, fourth, and fifth post-verdict motions were filed before August 26, 2025—within 28 days of entry of Judgment, and thereby meet the timeliness requirements of Rule 59(e) and Rule 60. *See* Fed. R. Civ. P. 59(e) (requiring motions to be filed no later than 28 days after judgment); Fed. R. Civ. P. 60(c)(1) (requiring motions pursuant to Rule 60 be "made within a reasonable time" unless they are pursuant to Rule 60(b)(1), (2), or (3), in which case they must be filed "no more than a year after the entry of the judgment . . . ").

In the first, third, fourth, and fifth post-verdict motions, Mr. Hill makes three arguments in support of his request to vacate the Judgment under Rules 59(e), 60(b)(3) and (6). First, he argues that the jury verdict for Defendants is invalid and violates his right to a jury trial under the Seventh Amendment to the U.S. Constitution because, according to Mr. Hill, Juror No. 1, Juror No. 3, and Juror No. 7 may not be U.S. citizens and therefore may be unqualified for jury service. (ECF No. 299 at 3; ECF No. 311 at 1–2; ECF No. 312 at 1; ECF No. 317 at 1–3.) Second, he contends that Juror No. 1 was not proficient in English as required for jury service. (ECF No. 299 at 3; ECF No. 317 at 2–4.) Third, Mr. Hill argues that Juror No. 8 was motivated by improper bias and attention seeking. (ECF No. 317 at 2.)

For the reasons explained below, the arguments set forth in Mr. Hill's submissions on the Motion to Vacate, First Supplemental Motion, First Emergency Motion, or Second Supplemental Motion are entirely without merit and a number of them are frivolous. None of these arguments satisfy the requirements for vacating the jury verdict and Judgment or for any of the other requested relief.

12

A.  **Applicable Law**

Under Section 1861 of the Jury Selection and Service Act of 1968 ("JSSA"), 28 U.S.C. § 1861 et seq. ("Section 1861"), it is "the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States, and shall have an obligation to serve as jurors when summoned for that purpose." 28 U.S.C. § 1861. JSSA Section 1862 bars discrimination against U.S. citizens in the juror selection process by providing that "No citizen shall be excluded from service as a grand or petit juror in the district courts of the United States . . . on account of race, color, religion, sex, national origin, or economic status." 28 U.S.C. § 1862. Under JSSA Section 1863, each federal district court must "devise and place into operation a written plan for random selection of grand and petit jurors that shall be designed to achieve the objectives of sections 1861 and 1862 of this title, and that shall otherwise comply with the provisions of this title." 28 U.S.C. § 1863 ("Section 1863"). That plan will be "placed into operation after approval by a reviewing panel consisting of the members of the judicial council of the circuit and either the chief judge of the district whose plan is being reviewed or such other active district judge of that district as the chief judge of the district may designate." *Id*.

28 U.S.C. § 1865 ("Section 1865") addresses juror qualifications. It provides:

The chief judge of the district court, . . . or the clerk under supervision of the court if the court's jury selection plan so authorizes, shall determine solely on the basis of information provided on the juror qualification form and other competent evidence whether a person is unqualified for, or exempt, or to be excused from jury service.

28 U.S.C. § 1865(a). Under Section 1865(b), a person is disqualified from jury service if, among other things, the person

(1) is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district;

(2) is unable to read, write, and understand the English language with a degree of
proficiency sufficient to fill out satisfactorily the juror qualification form; [and]

(3) is unable to speak the English language . . . .

28 U.S.C. § 1865(b)(1)–(3) (emphasis added).

Pursuant to Section 1863, the Eastern District of New York has promulgated and

implemented a Jury Selection Plan, which provides that "[t]he clerk of the court . . . manage[s]

the jury selection process, under the supervision and control of the Chief Judge." *Jury Selection

Plan*, U.S. Dist. E. Dist. N.Y., § 3, https://img.nyed.uscourts.gov/files/local_rules/juryplan.pdf

(Jan. 31, 2023) [hereinafter *Jury Selection Plan*]. Under the Jury Selection Plan, the names of

potential jurors are "selected at random from the voter registration lists of all the counties within

the Eastern District of New York supplemented by lists for these counties from the New York

State Department of Motor Vehicles." *Jury Selection Plan* § 4. The lists from which potential

jurors are drawn may also include, at the discretion of the Clerk of Court, names gathered from

federal and state agencies "[w]here necessary to foster the policy and protect the rights secured

by 28 U.S.C. §§ 1861 and 1862, and consistent with 28 U.S.C. § 1863(b)(2)," including "lists of

persons who have been naturalized as new United States citizens from the United States Citizen

and Immigration Service." *Id*.

Under the Jury Selection Plan, at least 200,000 names of potential jurors from the

"combined source lists of all the counties of the Eastern District" are placed on the "master jury

wheel" from which the Clerk of Court "draw[s] at random" names of individuals to be mailed a

juror qualification form. *Id*. §§ 5–6. The first question on the juror qualification form is, "Are

you a citizen of the United States?" (Blank Juror Qualification Form at 1, Ex. A.) The potential

juror must "fill out and return the form, duly signed and sworn, to the [C]lerk [of Court] by mail

within ten days." *Jury Selection Plan* § 6. The form requires the recipient to "declare under the

14

penalty of perjury that all [their] answers are true to the best of [their knowledge and belief."

(Blank Juror Qualification Form at 2.)

The Clerk of Court, acting under the supervision of the Chief Judge, uses the "information provided on the juror qualification form and other competent evidence" to determine whether "a person is qualified for, or exempt, or to be excused from jury service." *Id.* § 9. Pursuant to the Jury Selection Plan, and consistent with Section 1865, the Clerk of Court "shall deem *any citizen* qualified to serve on grand and petit juries" unless the person, among other things, "is unable to read, write, and understand the English language well enough to fill out satisfactorily the juror qualification form" or "is unable to speak the English language." *Id.* (emphasis added).[4]

Under 28 U.S.C. § 1867(c) ("Section 1867(c)"), in a civil action, "any party may move to stay the proceedings on the ground of substantial failure to comply with" the statutory jury selection procedure "before the voir dire examination begins, or within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier." It is well-established that any motion under Section 1867(c) must be brought, at the latest, during voir dire. *Veliz v. Crown Lift Trucks*, 714 F. Supp. 49, 54 n.3 (E.D.N.Y. 1989) (noting that a Section 1867(c) motion must be filed "*no later than the commencement of voir dire*, regardless of the date of actual or imputed knowledge of irregularities in juror selection") (emphasis added); *Bumpus v. Uniroyal Tire Co., Div. of Uniroyal*, 392 F. Supp. 1405, 1406–07 (E.D. Pa. 1975) ("Since, therefore, plaintiff failed to raise

---

[4] The Jury Selection Plan also addresses other qualifications for jury service, including age, residence in the district, and criminal justice system involvement, that are not at issue in the post-verdict motions. *See Jury Selection Plan* § 9.

the objection *at or before voir dire, as is required*, his motion, based as it is solely on the provisions of [Section 1867(c)], is precluded.") (*emphasis added*); *Mullins v. Fast Motor Serv., Inc.*, 35 F.3d 566, at *1 (6th Cir. 1994) (finding a Section 1867(c) objection untimely because "plaintiff failed to object to the composition at the time the parties selected the jury," and instead only objected "twenty days after voir dire and eleven days after the verdict."); *see also United States v. Silverman*, 449 F.2d 1341, 1344 (2d Cir. 1971) (finding that identical language in Section 1867(a) "clearly requires that a challenge on this ground be made *at or before the vior [sic] dire*.") (emphasis added); *United States v. Young*, 822 F.2d 1234, 1239 (2d Cir. 1987) (finding defendants' jury selection challenge untimely because "no objection was made [...] until after the selection process had commenced."); *United States v. Paradies*, 98 F.3d 1266, 1277–78 (11th Cir. 1996), *as amended* (Nov. 6, 1996) ("[O]nce voir dire begins, Jury Selection Act challenges are barred, even where the grounds for the challenge are discovered only later."); *United States v. Nix*, 264 F. Supp. 3d 429 (W.D.N.Y. 2017) (holding that a JSSA challenge was "both untimely and procedurally defective" because the "challenge was due, at the latest, before the voir dire began").

## B.  Analysis

Mr. Hill's submissions on the Motion to Vacate, First Supplemental Motion, First Emergency Motion, and Second Supplemental Motion and Mr. Hill's supplemental submissions in support of those motions fail to provide a factual or legal basis for vacating the jury verdict and Judgment in this action for three overarching reasons. First, Mr. Hill failed to timely raise his challenges to the qualifications of Juror No. 1, Juror No. 3, and Juror No. 7. Second, Mr. Hill's challenges to Juror No. 1's English proficiency are contradicted by her demeanor and competent responses to this Court's questions during voir dire. Third, Mr. Hill's contention that three

specific jurors and perhaps the entire eight-person jury consisted of people who are not U.S. citizens is based on gross speculation. Each of the jurors whose citizenship is challenged was vetted as a U.S. citizen through the Clerk of Court's Jury Selection Process prior to being assigned to the panel in this action and questioned by this Court during voir dire. Moreover, nothing in the demeanor, voir dire responses, or conduct of the jurors challenged by Mr. Hill as non-citizens calls into question their U.S. citizenship.

Mr. Hill's challenge to the citizenship of jurors and the English language proficiency of Juror No. 1 troublingly asks this Court to question the citizenship of jurors who dutifully completed the Clerk of Court's jury qualification questionnaire, truthfully answered the Court's questions during voir dire, and carried out their duties as jurors admirably and faithfully simply based on gross speculation and, in the case of Juror No. 1 and Juror No. 7, because of their Albanian national origin or presumed Colombian ancestry. For the reasons discussed below, Mr. Hill's speculation does not warrant orders staying the entry and enforcement of the Judgment, directing DHS and ICE to verify the citizenship of all jurors in this action, or scheduling an evidentiary hearing regarding the citizenship and other qualifications of jurors in this action, much less an order vacating the jury verdict and Judgment.

### i.   *The Objections to Juror No. 1, Juror No. 3, and Juror No. 7 are Untimely and Frivolous*

The objections to Jurors Nos 1, Juror No. 3, and Juror No. 7 set forth in the Motion to Vacate, First Supplemental Motion, First Emergency Motion, or Second Supplemental Motion are untimely. Mr. Hill did not raise *any* objection to the English proficiency of Juror No. 1 or the U.S. citizenship status of Juror No. 1, Juror No. 3, and Juror No. 7, or any other objection to the selection of these jurors *at any point* during voir dire, the four-day trial, or following two and a half days of jury deliberation, despite being given numerous opportunities to do so. Rather, Mr.

Hill first raised these objections after the trial concluded and the jury reached a verdict in favor of Defendants. These objections are frivolous.

The Court fully recognizes that because Mr. Hill is a pro se litigant, his "submissions must be construed liberally[] and . . . must be read to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (per curiam). Nevertheless, Mr. Hill's pro se status "does not exempt [him] from compliance with relevant rules of procedural and substantive law," *id*., including the requirement to timely raise any concerns about the Jury Selection Plan or any specific juror's qualifications. *See United States v. Thai*, 29 F.3d 785, 803 (2d Cir. 1994) ("We are particularly loath to second-guess the actions of the district court when [a party] has failed to object at trial, lest the [party] be permitted to wait to hear the verdict before contesting the impartiality of the jury and then attack the court's refusal to investigate his allegation.")

As a threshold matter, Mr. Hill failed to provide Judge Joanna Seybert, to whom this case was previously assigned, *any* proposed voir dire questions, including a question asking potential jurors whether they are U.S. citizens, despite the fact that Mr. Hill was afforded multiple opportunities to do so. First, during the August 29, 2024, pre-trial conference, Judge Seybert directed the parties to file proposed voir dire questions by December 2, 2024. (ECF No. 242 at 2.) After Mr. Hill failed to file meet that deadline, the Court afforded Mr. Hill with "a FINAL opportunity to file his proposed . . . voir dire questions. (Elec. Order, Dec. 12, 2024.) Mr. Hill again to file any proposed voir dire questions.

When this Court shared its written Questions for Jurors with Mr. Hill months prior to the commencement of trial and asked Mr. Hill if he had any objection to those questions, Mr. Hill failed to raise any concern that the Court's written questionnaire did not include a question

asking potential jurors whether they are U.S. citizens. (Min. Entry, May 29, 2025; *see also* Court Ex. 1 Questions for Jurors, ECF No. 296; Min. Entry, July 18, 2025 (recounting the Court's review of voir dire procedures with the parties).) The Court asked all jurors the questions set forth in the written questionnaire and also followed up with additional questions, including questions suggested by Mr. Hill and counsel for Defendants. As discussed in detail below, the Court's written questionnaire does not include a question about the citizenship of each potential juror because the Clerk of Court only selects U.S. citizens for assignment to a jury panel. *See supra* Discussion § I.B.iii.1.

Even after the opportunities to propose voir dire questions, the Court also provided Mr. Hill at least five different opportunities to request that the Court question jurors about their citizenship and to raise objections to the inclusion of Juror No. 1, Juror No. 3, and Juror No. 7. Mr. Hill did not ask the Court to ask follow-up questions and did not raise any objections— whether on the basis of these jurors' citizenship, English language proficiency, or anything else—each time he was given the opportunity.

First, Mr. Hill did not request that the Court ask *any* juror, let alone Juror No. 1, Juror No. 3, and Juror No. 7, whether they are U.S. citizens. (*See* Trial Tr. 57:7–307:12 (voir dire); *see, e.g., id.* 155:3–156:8; 163:16–165:2; 175:1–177:2; 196:9–197:21; 260:10–261:23 (instances during voir dire in which the Court asked the parties if they had any additional questions they wished the Court to ask a potential juror).) Second, Mr. Hill did not object to the inclusion of any of these three jurors during or after the Court's questioning of them. (*See* Trial Tr. 117:6–132:14, 141:10–143:5, 177:16–178:10.) Third, when the Court asked Mr. Hill whether he objected to *any* of the fourteen individuals the Court qualified as potential jurors prior to the exercise of peremptory strikes, Mr. Hill raised no objection to Juror No. 1, Juror No. 3, or Juror No. 7, even

though he had already heard their responses to voir dire questions. (Trial Tr. 283:12–14.)
Nevertheless, the Court explicitly provided the parties "one last opportunity to raise any concerns in terms of motions to excuse for cause," and Mr. Hill responded, "[n]one for cause, Judge." (*Id.* 283:12–16.) Fourth, following the parties' exercise of preemptory strikes, when Juror No. 1, Juror No. 3, and Juror No. 7 remained seated in the jury box, the Court asked Mr. Hill and defense counsel whether they had "any concerns about the jurors who are seated in the box?" (Trial Tr. 296:23–297:4.) Mr. Hill responded, "[n]o, your Honor." (Trial Tr. 297:2.) Fifth, immediately prior to dismissal of struck jurors and all other members of the jury panel, the Court again asked Mr. Hill and defense counsel whether they had "any objection to these jurors being the jury for this civil action?" (Trial Tr. 298:5–6.) Mr. Hill again responded, "[n]o, your Honor." (Trial Tr. 298:8.)

On reply to his Motion to Vacate, Motion to Inspect, First Supplemental Motion, and First Emergency Motion, Mr. Hill contends, "in civil trials, [Section] 1867(c) allows a party to challenge that qualification within 7 days of discovering the disqualification, not necessarily within 7 days of voir dire" and that he could not have confirmed Juror No. 1's citizenship defect and lack of English language proficiency "until after the verdict . . . because voir dire did not reveal the critical information." (ECF No. 314 at 1–2.) Specifically, he points to the fact that Juror No. 1 stated during voir dire "that she was not born in the United States and only arrived between 2009–2011," that "[n]o record of naturalization was introduced, no direct inquiry was made," and when the Courtroom Deputy polled each individual juror to confirm that the jury verdict for Defendants reflected their individual determinations, Juror No. 1 stated "Excuse me?" (ECF No. 314 at 2–3; Trial Tr. at 1208:18–22.)

20

Contrary to Mr. Hill's contention, Mr. Hill had the information needed to timely raise his objections to the English proficiency of Juror No. 1 and the citizenship of Juror No. 1, Juror No. 3, and Juror No 7 during voir dire. As discussed, Mr. Hill had numerous opportunities both before and during voir dire to request that the Court ask potential jurors about their U.S. citizenship and raise any objections to Juror No. 1, Juror No. 3, or Juror No. 7's inclusion on the jury.

Juror No. 1 disclosed during voir dire, in Mr. Hill's presence, that she immigrated to the United States from Albania, was a Queens County resident since 2011, and "sometimes" finds "some words" in English "hard to understand." (Trial Tr. 128:12–13, 129:18–19; 132:12–13.) Then, upon further questioning, this Court elicited that Juror No. 1 was able to understand everything that had been said up to that point in the proceedings. Mr. Hill asserts that Juror No. 1's testimony during voir dire purportedly "reflects significant language confusion." (ECF No. 299 at 2.) Thus, Mr. Hill discovered during voir dire the specific facts that he now contends calls into question the English proficiency of Juror No. 1, but he failed to make any objection prior to the defense verdict in this case.

Similarly, Mr. Hill was apprised during voir dire of the facts providing the backbone of his challenge to the U.S. citizenship of Juror No. 1 and Juror No. 3. As discussed, during voir dire, Mr. Hill heard Juror No. 1 explain that she had immigrated to the United States from Albania and has resided in Queens since 2011—facts on which Mr. Hill relies to argue that it is implausible that Juror No. 1 could have become a naturalized citizen between 2011 and being summoned to jury service 14 years later in 2025.

Mr. Hill also asserts that Juror No. 3 "[c]laimed" during voir dire "to have lived in New York for 21 years" but "never affirmatively stated she was born in the United States." (ECF No.

299 at 2; *see also* ECF No. 311 at 1–2.) Thus, Mr. Hill discovered during voir dire the specific facts that he now contends call into question the U.S. citizenship of Juror No. 3. Nevertheless, Mr. Hill failed to raise any objection to the English proficiency of Juror No. 1 or the U.S. citizenship of Juror No. 1 and Juror No. 3 during voir dire or any other point prior to the selection of the jury, despite being given ample opportunity to do so.

Mr. Hill's challenge to the U.S. citizenship of Juror No. 1, Juror No. 3, and Juror No. 7 is also untimely because it boils down to a distrust that the Eastern District of New York's Jury Selection Plan appropriately identifies U.S. citizens for assignment to a petit jury panel in a civil case even before the Court conducts voir dire. As discussed at length below, under the Jury Selection Plan, only individuals who are U.S. citizens are included by the Clerk of Court in the pool of individuals randomly selected and assigned to petit jury panels in civil cases, including the panel from which Juror No. 1, Juror No. 3, and Juror No. 7 were selected. Jury Selection Plan §§ 4–6, 9. The Jury Selection Plan is publicly available.[5] Mr. Hill was required to bring any claim that the Jury Selection Plan and/or the Clerk of Court's implementation of the Plan fails to identify only U.S. citizens for jury selection at the latest, by the time of voir dire. The plain text of Section 1867(c) requires motions to be filed by the earlier of the following: (1) "before the voir dire examination begins," or "within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor." 28 U.S.C. § 1867(c); *see id* § 1867(e) (stating Section 1867 sets forth "the *exclusive means* by which . . .  a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of" the JSSA). As noted, it is well established that pursuant to the plain text of Section

---

[5] *Jury Selection Plan*, U.S. Dist. Ct. E. Dist. N.Y., https://img.nyed.uscourts.gov/files/local_rules/juryplan.pdf (Jan. 31, 2023).

1867(c), a motion under the statue must be filed "*no later than the commencement of voir dire, regardless of the date of actual or imputed knowledge of irregularities in juror selection.*" *Veliz*, 714 F. Supp. at 54 n.3; *see supra* Discussion § I.A.

For all of these reasons, any motion seeking relief on that ground that Juror No. 1 lacked English proficiency and that Juror No. 1, Juror No. 3, and Juror No. 7 may not be U.S. citizens must have been made, at the latest, before or during the July 21, 2025 voir dire. *See* 28 U.S.C. § 1867(c); *Veliz*, 714 F. Supp. at 54 n.3; *see also Silverman*, 449 F.2d at 1344 (addressing identical text in Section 1867(a)). Accordingly, the Motion to Vacate on July 30, 2025,[6] the First Supplemental Motion on July 30, 2025, the First Emergency Motion on July 31, 2025, and the Second Supplemental Motion on August 20, 2025 are untimely because they seek various forms of relief on the basis of objections to juror qualifications that should have been raised at the latest by July 21, 2025, but instead were only raised for the first time upon return of an adverse jury verdict. These motions are therefore frivolous. *See Veliz*, 714 F. Supp. at 54 (deeming plaintiff's jury selection claim "frivolous" on the basis that it was raised "for the first time" only after trial); *Benedicto v. City of Little Rock*, 683 F. App'x 537, 537 (8th Cir. 2017) (finding jury selection challenge untimely because plaintiff "waited until twenty-eight days after entry of judgment" to raise it.); *Ewalan v. Schreiber*, 2024 WL 3027448, at *4 (W.D. Wash. June 17, 2024) ("[Plaintiff] raised his fair cross section challenge for the first time in this post-trial motion after receiving an unfavorable verdict. That delay is fatal.").

---

[6] Mr. Hill asserts that he filed the Motion to Vacate on July 29, 2025 even though it reflects a physical stamp indicating that it was received by the Clerk of Court's Pro Se office on July 30, 2025 and was filed at 8:32 A.M. on July 30, 2025. (ECF No. 314 at 3.) Even if the Motion to Vacate was filed on July 29, 2025, however, it would still be untimely, having then been filed *eight* days after voir dire.

### ii.   The Record Demonstrates Juror No. 1's English Proficiency

Even if Mr. Hill's challenge to Juror No. 1's English proficiency were timely—and it is not—the challenge is meritless. Mr. Hill argues that it is "improbable" that Juror No. 1 meets the English language requirement for jury service because she allegedly exhibited "significant language confusion" by requiring questions to be repeated multiple times during voir dire and when the Courtroom Deputy polled individual jurors regarding their verdict at the conclusion of trial. (ECF No. 299 at 2; *see also* ECF No. 303 at 1–2; ECF No. 316 at 1–2.) Additionally, Mr. Hill relies on the fact that Juror No. 7 responded to his question on a social media messaging platform app by stating that the jury switched its foreperson from Juror No. 1 to Juror No. 8 because "Juror 1 didn't speak good English" and "Juror 8 liked attention." (ECF No. 317 at 2; *see also id.* at 6.)

The record shows that Juror No. 1 was qualified to serve as a juror because she possessed the requisite proficiency in reading, writing, speaking and understanding English. As the first prospective juror questioned by the Court during voir dire, Juror No. 1 was verbally asked each question on the Court's written Voir Dire questionnaire directly by the undersigned in open court, and she responded in English proficiently to each question. (Trial Tr. 116:4–132:14; *see also* Questions for Jurors, ECF No. 296.) When Juror No. 1 testified that she "sometimes" finds "some words" in English "hard to understand," the undersigned asked her, "Were you able to understand everything I have said so far today?" (*Id.* 128:12–14.) Juror No. 1 responded, without any hesitation, "Yes." (Trial Tr. 128:16.) As the Supreme Court has recognized:

> [J]urors are not necessarily experts in English usage. Called as they are from all walks of life, many may be uncertain as to the meaning of terms which are relatively easily understood by lawyers and judges. Moreover, *the statutory qualifications for jurors require only a minimal competency in the English language*.

*McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555 (1984) (citing 28 U.S.C. § 1865) (emphasis added). The undersigned directly asked Juror No. 1, "Do you have any difficulty speaking, reading or understanding the English language?" (Trial Tr. 129:5–6.) She clearly and unequivocally answered "No." (*Id*. at 129:7.) The Court directly observed Juror No. 1's responses to these questions and found them to be truthful and credible. Moreover, Juror No. 1 was randomly selected for the jury panel in this action after completing a written juror qualification form in English, which was reviewed and accepted by the Clerk of Court as not demonstrating any inability to read, write, and understand the English language. *See Jury Selection Plan* § 9. The record thus shows that the challenge to her English language proficiency is without merit.

Mr. Hill relies, unpersuasively, on *United States v. Dyer*, 750 F. Supp. 1278, 1292 (E.D. Va. 1990), to argue that Juror No. 1 lacked sufficient English proficiency to be qualified as a juror. (ECF No. 299 at 3.) *Dyer* has nothing to do with either the U.S. citizenship or English language proficiency qualifications for jury service. Rather, *Dyer* involved several criminal defendants who challenged the government's conduct prior to the convening of the grand jury that indicted them. *Dyer*, 752 F. Supp. at 1299–1300. *Dyer* is inapposite.

Accordingly, the record shows that Juror No. 1 has the required ability to speak, read, write, and understand English to be qualified for jury service under 28 U.S.C. § 1865(b)(1)-(3).

### iii.   Challenges to Jurors' U.S. Citizenship

Even if it were timely raised—and it was not—Mr. Hill's argument that Juror No. 1, Juror No. 3, and Juror No. 7 may not be U.S. citizens is also entirely meritless for two overarching reasons. First, under the Eastern District of New York's Jury Selection Plan, only individuals who are U.S. citizens are included by the Clerk of Court in the pool of individuals

25

randomly selected and assigned to petit jury panels in civil cases, including the panel from which Juror No. 1, Juror No. 3, and Juror No. 7 were selected. Second, Mr. Hill's arguments set forth in the Motion to Vacate, First Supplemental Motion, First Emergency Motion, and Second Supplemental Motion that these jurors may not be U.S. citizens is based on gross speculation.

### 1.   *The Jury Selection Plan*

Mr. Hill's contention that jurors in his trial may not be U.S. citizens is belied by the procedures set forth in the Jury Selection Plan. As described above, the Eastern District of New York has instituted a Jury Selection Plan that uses juror qualification forms to determine whether a potential juror drawn from the combined source lists of all the counties of the Eastern District—which include voter registration and DMV lists and federal and state agency lists identified by the Clerk of Court, including the USCIS list of naturalized U.S. citizens—is qualified for jury service. *Jury Selection Plan* § 4. The first question on the form is, "Are you a citizen of the United States?" (Blank Juror Qualification Form at 1, Ex. A.) The potential juror must "fill out and return the form, duly signed and sworn, to the [C]lerk [of court] by mail within ten days." *Jury Selection Plan* § 6. The form requires the recipient to "declare under the penalty of perjury that all [their] answers are true to the best of [their knowledge and belief." (Blank Juror Qualification Form at 2.) Significantly, if "*it appears that there is an omission, ambiguity, or error in a form*, the [C]lerk [of Court] *shall return* the form with instructions to the person to make such additions or corrections as may be necessary and to return the form to the clerk within ten days." *Id.* (emphasis added)*.* The Jury Selection Plan is clear that the "[C]lerk [of Court] *shall* deem *any citizen* qualified to serve on . . . petit juries in the district court unless he or she" is disqualified from jury service under the same disqualification conditions laid out in 28 U.S.C. 1865(b), including that the potential juror is not a U.S. citizen. *Jury Selection Plan* § 9 (emphasis

added.) Any person who is determined to be qualified for jury service is placed on the "qualified jury wheel for the Eastern District." *Id.* § 11. The Clerk of Court randomly draws the names of jurors from the qualified jury wheel and summons these randomly selected jurors for assignment to grand and petit jury panels. *Id.* § 11, 13–14.

According to these procedures, jurors who are summoned to serve on a jury panel by the Clerk of Court, including all of the jurors who served at trial in this action, are confirmed to be U.S. citizens *before* they are assigned to a panel of potential jurors. Numerous provisions of the Jury Selection Plan explicitly recognize that only U.S. citizens are eligible to serve on a jury. (*See July Selection Plan* § 2 ("All *citizens* shall have the opportunity to be considered for service on grand and petit jurors [sic] and shall have an obligation to serve as jurors when summoned for that purpose."); *id*. § 4 (describing random selection of potential jurors from voter registration lists and other lists for targeting "an even greater number of citizens," including the "lists of persons who have been naturalized as new United States citizens from the United States Citizen and Immigration Service"); *id.* § 6 (requiring all potential jurors to fill out and sign a sworn juror qualification form, which asks as its first question whether the potential juror is a U.S. citizen); *id.* § 9 (limiting those who are qualified for jury service to "any citizen qualified to serve").) The Jury Selection Plan specifically *requires* that the Clerk of Court, under the supervision of the Chief Judge, to determine whether summoned jurors are qualified for service based on "the juror qualification form and other competent evidence" and that the Clerk of Court "shall deem any *citizen* qualified to serve on grand and petit juries" unless the citizen is disqualified for a listed reason. *Id*. § 9 (emphasis added). According to these procedures, only individuals who respond on the juror qualification form, under penalty of perjury, that they are U.S. citizens and only when the form meets Clerk of Court review, are summoned to serve on a jury panel.

27

Based on these procedures, contrary to Mr. Hill's contention, the Court is not required to specifically question each member of the jury panel during voir dire about their U.S. citizenship. There is no indication that any individual who served on the jury that tried this case provided false information, under penalty of perjury, in response to the first question on the juror qualification form requiring them to confirm their U.S. citizenship or that the Clerk of Court failed to adequately review the juror qualification forms for Juror No. 1, Juror No. 3, or Juror No. 7 or to follow the Jury Selection Plan in any way.

### 2. *Gross Speculation*

Mr. Hill's arguments in the first, third, fourth, and fifth post-verdict motions that Juror No. 1, Juror No. 3, and Juror No. 7 may not be U.S. citizens is based on gross speculation for the reasons addressed below.

### a. Juror No. 1

Mr. Hill contends that Juror No. 1 may not be a U.S. citizen because she testified during voir dire that she immigrated to the United States from Albania and has lived in Queens since 2011 and because she allegedly exhibited "significant language confusion" by requiring certain questions to be repeated. (ECF No. 299 at 2.) According to Mr. Hill, it is "improbable" that Juror No. 1 is a naturalized U.S. citizen. (ECF No. 299 at 2; ECF No. 313 at 3; *see also* ECF No. 303 at 1–2; ECF No. 316 at 1–2; ECF No. 317 at 2.)

The record squarely contradicts Mr. Hill's arguments. As discussed above, Juror No. 1 was selected through the Jury Selection Process by which the Clerk of Court only summons individuals who are U.S. citizens and meet other qualifications for jury service for assignment to a jury panel in a civil case. The fact that Juror No. 1 reported that she immigrated to this country does not cast doubt on her status as a U.S. citizen. In response to the Court's voir dire questions,

Juror No. 1 stated in open court, in the presence of Mr. Hill, that she immigrated to the United States from Albania and has lived in Queens County since 2011—around 14 years. (Trial Tr. 129:18–19.) None of these facts are contradictory, and nothing in Juror No. 1's demeanor, responses to this Court's questions, or conduct during trial calls into question her status as a U.S. citizen as vetted by the Clerk of Court.

Mr. Hill cites no authority for the proposition that the mere fact that a person has become a U.S. citizen through naturalization renders them unqualified for jury service when they were selected by the Clerk of Court's Jury Selection Process, which is designed to identify U.S. citizens who are qualified for service. Mr. Hill's gross speculation that it is unlikely that Juror No. 1 could have become naturalized as a U.S. citizen during the 14-year period between 2011 and 2025 is entirely unsupported. (ECF No. 299 at 2.) Indeed, Mr. Hill's arguments that Juror No. 1 may not be a U.S. citizen because she immigrated to this country from Albania and because of his perception of her English language ability is in tension with 28 U.S.C. § 1862, which explicitly provides that "[n]o citizen shall be excluded from service as a . . . petit juror in the district courts of the United States . . . on account of national origin . . . ."

b.  Juror No. 7

With respect to Juror No. 7, Mr. Hill relies on a statement in Juror No. 7's Instagram profile to argue that she is foreign-born and may not be U.S. citizen. (ECF No. 299 at 2; ECF No. 311 at 1; 312 at 1.) Specifically, he points to the statement that Juror No. 7 is the "second best thing imported from Colombia" and has a sibling that was born in Colombia. (ECF No. 299 at 2; ECF No. 311 at 1; *see also* 312 at 1.)

These arguments are entirely without merit. Like Juror No. 1, Juror No. 7 was selected through the Jury Selection Process by which the Clerk of Court only forwards individuals who

are U.S. citizens and meet other qualifications for jury service for assignment to a jury panel in a civil case. Nothing in Juror No. 7's demeanor, responses to the Court's questions during voir dire, or conduct during trial calls into question her status as a U.S. citizen as vetted by the Clerk of Court. Again, the fact that Juror No. 7 may be of Colombian national origin does not cast doubt on her citizenship when she was selected for assignment to a civil jury panel through the Clerk of Court's Jury Selection Process. Juror No. 7 specifically testified during voir dire that she has lived in Suffolk County for 28 years. (Trial Tr. 177:24–25) Again, 28 U.S.C. § 1862 bars the exclusion of a U.S. citizen from a jury on the basis of national origin.

c. Juror No. 3

With respect to Juror No. 3, Mr. Hill asserts that while she "[c]laimed to have lived in New York for 21 years" she "never affirmatively stated she was born in the United States," and "[u]nder recent [Department of Justice] directives regarding birthright citizenship challenges," her U.S. citizenship "status remains in question." (ECF No. 299 at 2; *see also* ECF No. 311 at 1– 2; ECF No. 312 at 1.) Juror No. 3 testified during voir dire that she "reside[s] in the County of Queens" and has "[l]ived there [her] *entire 21 years*." (Trial Tr. 141:20–24 (emphasis added).)

Contrary to Mr. Hill's contentions, the reasonable inference from Juror No. 3's statements during voir dire is that Juror No. 3. was born in the United States and is therefore a natural born U.S. citizen. Like Juror No. 1, Juror No. 7 was selected through the Jury Selection Process by which the Clerk of Court only forwards individuals who are U.S. citizens and meet other qualifications for jury service for assignment to a jury panel in a civil case. Nothing in Juror No. 3's demeanor, responses to the Court's questions during voir dire, or conduct during trial call into question her status as a U.S. citizen as vetted by the Clerk of Court. To the contrary, all of Juror No. 3's responses during voir dire were credible and truthful.

Mr. Hill's contention that Juror No. 3's U.S. citizenship is called into question by his belief that she may be born to non-citizen parents is wholly speculative (ECF No. 299 at 2; ECF No. 311 at 1–2; ECF No. 312 at 1). It boils down to a request that this Court draw negative inferences about a juror whose credibility the Court has assessed during voir dire simply because a party believes the juror may have been born to non-citizen parents, which again suggests national origin discrimination barred by 28 U.S.C. § 1862.

#### iv.   Challenge to Juror No. 8's Impartiality

Mr. Hill's argument that the jury deliberations were "irreparably tainted" because Juror No. 8 was purportedly "motivated by improper bias and personal attention-seeking rather than impartial evaluation of the evidence" has no basis in the record. (ECF No. 317 at 2.) The fact that Juror No. 7 told Mr. Hill that Juror No. 8 was selected by the jury to serve as foreperson because Juror No. 8 "liked attention" does not show, in any way, that Juror No. 8 harbored any improper bias that would warrant an evidentiary hearing, a stay of entry and enforcement of the Judgment, or vacatur of the jury verdict or Judgment in this action. Mr. Hill fails to show that Juror No. 8 engaged in any conduct that tainted the jury's deliberations, such as lying to the Court regarding a material question during voir dire that, if answered truthfully, "would have provided a valid basis for a challenge for cause." *McDonough*, 464 U.S. at 556. Nor does he point to any evidence suggesting that jury did not "decide the case solely on the evidence before them, without any outside influence, *Manley v. AmBase Corp.*, 337 F.3d 237, 251 (2d Cir. 2023), or any other misconduct.

#### v.   The Cases on Which Mr. Hill Relies are Inapposite or Distinguishable

Mr. Hill relies upon a host of cases in his submissions on the Motion to Vacate, First Supplemental Motion, First Emergency Motion, and Second Supplemental Motion, none of

which support the relief requested in these motions, including an order vacating the jury verdict and Judgment. All of these decisions are distinguishable, and some do not contain the language ascribed to them by Mr. Hill.

First, Mr. Hill's reliance on *United States v. Boney*, 977 F.2d. 624 (D.C. Cir. 1992), and *United States v. Perkins*, 748 F.2d 1519 (11th Cir. 1984), for the assertion that "[t]he presence of even a single ineligible juror . . . require[es] automatic vacatur of the verdict" is misplaced. (ECF No. 299 at 1.) Both *Boney* and *Perkins* were criminal cases in which a motion to stay the proceedings is governed by 28 U.S.C. § 1867(a) and (b), not 28 U.S.C. § 1867(c), which applies to civil cases. Section 1867(a) and (b) govern the timeliness requirements for a defense motion to dismiss the indictment or stay criminal proceedings on the basis of substantial failure to comply with the grand or petit jury selection requirements—not a motion to vacate the verdict. *See* 28 U.S.C. § 1867(a)–(b). Furthermore, in *Boney*, the D.C. Circuit did not vacate the jury's verdict but instead remanded the case back to the trial court for "an evidentiary hearing to determine whether the juror's failure to disclose his felon status resulted in actual bias to the" defendants. *Boney*, 977 F.2d at 635. *Boney* does not support Mr. Hill's request for a stay of entry and enforcement of the Judgment and an evidentiary hearing into juror qualifications because no party has provided any evidence that a juror failed to disclose any information material to the jury selection process. *Perkins* is similarly distinguishable. There, the Eleventh Circuit remanded the case for a new trial because a juror had "misrepresent[ed] himself," did not disclose that he "knew the defendant" and had been "involved in similar litigation," and introduced extraneous evidence into jury deliberations. *Perkins*, 748 F.2d at 1533–34. None of the circumstances at issue in *Perkins* are even alleged to have occurred with respect to any juror during the trial in this civil action, and therefore *Perkins* does not support Mr. Hill's request for a new trial.

32

Second, on reply to his Motion to Vacate, Motion to Inspect, First Supplemental Motion, and First Emergency Motion, Mr. Hill relies on the following language, which he incorrectly asserts is set forth in *United States v. Wood*, 299 U.S. 123 (1936), and *Clark v. United States*, 289 U.S. 1 (1933): "[A] verdict rendered by a body not lawfully constituted is void." (ECF No. 299 at 2; ECF No. 314 at 1.) That quote does not appear anywhere in either Supreme Court decision.

Third, Mr. Hill's reliance on *Remmer v. United States*, 347 U.S. 227 (1954), and *Gomez v. United States*, 490 U.S. 858 (1989), is likewise unpersuasive. Both cases involved criminal trials—not civil trials—and are distinguishable on that basis alone. Further, in *Remmer*, the Supreme Court remanded the case for an evidentiary hearing to determine whether the trial judge's ex parte communications with the prosecution and request that the Federal Bureau of Investigations ("FBI") investigate a juror during trial "was harmful to the petitioner, and if after hearing it is found to have been harmful, to grant a new trial." *Remmer*, 347 U.S. at 230. Here, there was no ex parte communication between the Court and any party regarding any potential or selected juror, and the Court did not request that the FBI or any other law enforcement agency investigate any juror. Indeed, there is not even an allegation that such conduct took place. In *Gomez*, the Supreme Court found that a magistrate judge did not have the power to conduct voir dire in a felony case. *Gomez*, 490 U.S. at 872. Here, voir dire was conducted by a district judge—not a magistrate judge, and *Gomez* is therefore inapplicable.

Fourth, *Clark v. United States*, *McDonough Power Equip., Inc. v. Greenwood*, and *United States v. Uribe*, 890 F.2d 554 (1st Cir. 1989) do not support Mr. Hill's assertion that "[i]f it is established that a non-citizen served on the jury, such participation would render the jury unlawfully constituted." (ECF No. 303 at 2.) *Clark* is inapposite both because it involved a

33

juror's appeal from a conviction of criminal contempt for "knowingly" making "misleading" and "false" answers "in response to questions affecting her qualifications as a juror" during voir dire, specifically responses indicating that she had worked at a company where the defendants served as officers, and because the jury did not reach a verdict. *Clark*, 289 U.S. at 6, 9, 18. In *McDonough*, the Supreme Court held that "respondents are not entitled to a new trial unless the juror's failure to disclose denied respondents their right to an impartial jury." *McDonough*, 464 U.S. at 549. That case does not apply here because Mr. Hill does not challenge Jurors No. 1, Juror No. 3, or Juror No. 7 on the grounds that they were biased against him; rather, he challenges their qualifications to serve on the jury in this trial. In *Uribe*, the First Circuit rejected the argument by two criminal defendants that a new trial was warranted because they had interactions with a juror prior to trial and the juror was statutorily disqualified from jury service as a convicted felon. *Uribe*, 890 F.2d at 560–62. Mr. Hill does not make such an argument, much less show that he or any other party had interactions with any juror prior to the trial in this action. To the contrary, in response to voir dire questions, all jurors confirmed that they had no knowledge of or prior interactions with any party to this case, and the Court found their answers to be truthful and credible. (Trial Tr. 118:10–119:11; *see also id.* 132:14–283:14).

***

In sum, Mr. Hill failed to timely challenge the citizenship of Juror No. 1, Juror No. 3, and Juror No. 7, and the English language proficiency of Juror No. 1 and to provide any factual basis to challenge Juror No. 8's impartiality. These meritless objections form the basis for the relief requested in the Motion to Vacate, First Supplemental Motion, First Emergency Motion, and Second Supplemental Motion. Even if Mr. Hill's challenges to the citizenship of three jurors and the English language proficiency of Juror No. 1 were timely, these post-verdict motions present

34

frivolous arguments that do not support an order vacating the jury verdict and Judgment. The submissions on these motions do not identify any new evidence or intervening change of controlling law, nor do they show the need to correct any clear error or prevent manifest injustice as required to set aside the jury verdict and Judgment under either Rule 59(e) or Rule 60(b). Mr. Hill has not shown any fraud, misrepresentation, or misconduct by Jurors No. 1, Juror No. 3, Juror No. 7, any party to this action, or the Court, and has not demonstrated any other reason that would justify an order vacating the jury's verdict and Judgment under Rule 60(b)(3) or (6), or any other subsection of Rule 60(b). *See* Fed. R. Civ. P. 60(b).[7]

Finally, for all of the reasons discussed, Mr. Hill's submissions on the Motion to Vacate, First Supplemental Motion, First Emergency Motion, and Second Supplemental Motion also fail to provide a basis for any of the other relief requested in these motions: an order staying entry and enforcement of the Judgment, directing DHS and/or ICE to verify the citizenship of all jurors who served at trial in this action, and requiring an evidentiary hearing on juror qualifications. The challenges to the U.S. citizenship of Juror No. 1, Juror No. 3, and Juror No. 7 are based on gross speculation. These citizenship challenges, along with the challenge to Juror No. 1's English language proficiency and Juror No. 8's conduct, are flatly contradicted by the record. Accordingly, this Court denies Mr. Hill's request for any of the relief requested in the Motion to Vacate, First Supplemental Motion, First Emergency Motion, and Second Supplemental Motion.

---

[7] To the extent that the Objection Motion, Motion to Correct, Motion to Compel, Second Emergency Motion and Motion to Strike also seek an order vacating the jury verdict and Judgment in this action under Rule 60(b)(6), none of the submissions in support of those motions meet the applicable standards for securing such relief for the same reasons. (*See* ECF No. 319; ECF No. 320; ECF No. 322; ECF No. 324, ECF No. 326.)

## II.       Motions Seeking Production of Juror Records

In three different post-verdict motions, Mr. Hill seeks various records relating to the selection of jurors in this action. First, in the Motion to Inspect, Mr. Hill invokes 28 U.S.C. § 1867(f) to request an order that instructs "the Clerk of Court to produce for inspection the juror questionnaires and related jury selection records for the panel in this case," and that provides leave for Mr. Hill "to file any appropriate post-trial motions if disqualified jurors are identified." (ECF No. 303 at 1–2.) He contends that 28 U.S.C. §1867(f) "grants any party an unqualified right to inspect jury selection records to determine whether the jury was lawfully constituted." (ECF No. 303 at 1.) He also relies on *Test v. United States*, 420 U.S. 28 (1975), to argue that the Supreme Court has "held that inspection under § 1867(f) is an 'essential part of a litigant's right' to ensure compliance with the Jury Selection and Service Act." (ECF No. 303 at 1 (quoting *Test*, 420 U.S. at 30).) Second, in the Objection Motion, Mr. Hill also requests that the Court "[o]rder production of juror qualification questionnaires," apparently referring to qualification forms not just for Juror No. 1, Juror No. 3, and Juror No. 7, but for all eight jurors who served at trial. (ECF No. 319 at 3.) Third, in the Second Emergency Motion, Mr. Hill makes a narrower request for the "immediate disclosure of Juror #1's [juror] qualification form, including citizenship status." (ECF No. 324 at 4.)

Section 1861 of the JSSA provides that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district . . . wherein the court convenes." 28 U.S.C. § 1861. Section 1867 sets forth "the exclusive means by which . . . a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of" the JSSA. 28 U.S.C. § 1867(e).

As discussed at length above, Section 1867(c) permits any party in a civil action to "move to stay the proceedings on the ground of substantial failure to comply with the" JSSA "in selecting the petit jury," if such motion is made at the latest, "before the voir dire examination begins," or "within seven days after the party discovered or could have discovered, by the exercise of diligence, the grounds therefor," if such discovery took place prior to voir dire. 28 U.S.C. § 1867(c); *see supra* Discussion § I.A. Section 1867(d) provides that upon the filing of a Section 1867(c) motion accompanied by a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of [the JSSA]," the party moving for a stay of the proceedings may present relevant evidence in support of such motion. 28 U.S.C. § 1867(d). Furthermore, under Section 1867(f):

> [t]he contents of records or papers used by the . . . clerk in connection with the jury selection process *shall not be disclosed*, except pursuant to the district court plan or *as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section*, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service. *The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.*

28 U.S.C. § 1867(f) (emphasis added). In *Test*, the Supreme Court held that 28 U.S.C. § 1867(f) provides any party to a civil action "an unqualified right to inspect jury lists . . . in order to aid parties in the 'preparation' of motions challenging jury-selection procedures." *Test*, 420 U.S. at 30 (quoting 28 U.S.C. § 1867(f)). The Supreme Court found support for its holding in "the plain text of the statute" and "the statute's overall purpose of insuring [that] 'grand and petit juries [are] selected at random from a fair cross section of the community.' *Id.* (quoting 28 U.S.C. § 1861). Accordingly, in a civil action, Section 1867(f) permits parties "to inspect, reproduce,

and copy" juror records "*as may be necessary* in the preparation or presentation of a motion" (emphasis added) under Section 1867 (a), (b), and(c) to stay the proceedings.[8]

Although Section 1867(f) does not specify the date by which a motion to inspect juror records must be made, when a party is time barred from filing a motion under 28 U.S.C. § 1867(a), (b), or (c), it stands to reason that they cannot file a motion for leave to inspect juror records under the plain text of 28 U.S.C. § 1867(f). Section 1867(f) provides that juror selection records "*shall not be disclosed*, *except* pursuant to the district court plan or *as may be necessary in the preparation or presentation of a motion under [Section 1867(a), (b), or (c)]*, *until after* the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service." In other words, while Section 1867(f) explicitly provides that "[t]he parties in a case shall be allowed to inspect, reproduce, and copy [juror selection] records or papers at all reasonable times during the preparation and pendency of such a motion," it does not afford similar access to juror selection records when a motion under Section 1867(a), (b), or (c) is *not* pending.

As discussed at length above, Mr. Hill is time barred from filing a Section 1867(c) motion—and therefore a Section 1867(f) motion to inspect juror qualification records—for two reasons. First, as discussed above, Mr. Hill could have discovered the alleged bases for his objections *well before* voir dire if he availed himself of any of multiple opportunities to request that the Court ask potential jurors about their citizenship. Instead, Mr. Hill failed to make any such request. Second, Mr. Hill also had several opportunities to raise any objections *during* voir

---

[8] As noted earlier, motions made under Section 1867(a) and (b) apply only in criminal actions and are therefore inapplicable to this action.

dire—as shown by Mr. Hill's own assertions that several responses by Juror No. 1 and Juror No. 3 to the Court's voir dire questions raised his concern about whether these jurors are not U.S. citizens.[9] As detailed above, the July 21, 2025 voir dire was the latest that Mr. Hill could pursue any Section 1867(c) motion. *See* 28 U.S.C. § 1867(c); *see* Discussion § I.A., *supra*.

Under the plain text of Section 1867(f), the fact that Mr. Hill is time barred from filing a Section 1867(c) motion precludes him from pursuing a motion to inspect jury selection records. As noted, Section 1867(f) provides that "[t]he contents of records or papers used by the . . . clerk in connection with the jury selection process *shall not be disclosed*, except pursuant to the district court plan or *as may be necessary in the preparation or presentation of a motion under subsection (a), (b), or (c) of this section*, until after the master jury wheel has been emptied and refilled pursuant to section 1863(b)(4) of this title and all persons selected to serve as jurors before the master wheel was emptied have completed such service"[10] (emphasis added). Because Mr. Hill is time barred from preparing or presenting a motion under Section 1867(c), jury selection records "shall not be disclosed" at this time.

---

[9] In the Motion to Inspect, Mr. Hill does not appear to challenge Juror No. 8's citizenship, language proficiency, or other qualifications to serve on a jury.

[10] 28 U.S.C. § 1867(f) does permit the disclosure of jury records used in connection with jury selection "after the master jury wheel has been emptied and refilled pursuant to" the Jury Selection Plan "and all persons selected to serve as jurors before the master jury wheel was emptied have completed such service." Under the Jury Selection Plan, the master jury wheel is "emptied and refilled . . . on or before September 1 following each presidential election and every two years thereafter." *Jury Selection Plan* § 5. Mr. Hill's post-verdict motions seek production of the jury selection records in this case *before* the master jury wheel is scheduled to be emptied and refilled pursuant to the Jury Selection Plan.

For all of these reasons, the requests set forth in the Motion to Inspect, Objection Motion, and Second Emergency Motion for the production of juror qualification forms for Juror No. 1 and all other jurors in this action are denied.

### III. Motions Seeking an Order Vacating the August 20, 2025 Order and an Evidentiary Hearing Regarding Jury Tampering and Juror Misconduct

In three different post-verdict motions, Mr. Hill argues for an order vacating the Court's August 20, 2025 Order, which requires the parties to apply for, and secure, Court permission prior to contacting jurors and individuals who were potential jurors in this action. First, the Objection Motion requests that the Court vacate or modify the August 20, 2025 Order and "[i]nvestigate and hold a hearing on juror tampering and deleted communications." (ECF No. 319 at 3.) Mr. Hill argues that the August 20, 2025 Order violates his civil rights and imposes restrictions on him that "are not imposed upon licensed attorneys," including Defendants' counsel, "and operate[] to shield potential juror misconduct, disqualification, and tampering from discovery." (*Id.* at 1–2.) Mr. Hill alleges that Juror No. 7's message to him on social media messaging platform stating that "Juror 1 didn't speak good English" was deleted as a result of "outside contact or interference," which "constitutes juror tampering and obstruction of justice." (*Id.*)

Second, in the Motion to Correct, Mr. Hill further contends that the sequence of events on August 20, 2025—his filing of the Second Supplemental Motion at 5:58 AM, Juror No. 7's deletion of her message to him at 11:42 AM, and the Court's issuance of the August 20, 2025 Order at 2:39 PM—supports an "inference that someone contacted Juror No. 7 and instructed her to delete her messages, amounting to juror tampering and obstruction." (ECF No. 320 at 2.) He

argues that the August 20, 2025 Order should be vacated because it violates his First Amendment rights, including his right to freely exercise his religion. (*Id.*)[11]

Third, in the Motion to Strike, Mr. Hill argues that the Court is treating the parties unequally because the August 20, 2025 Order bars him from post-verdict contact with jurors while counsel for Defendants has admitted to the same post-verdict contact. (ECF No. 326 at 2.)

Because the Motion to Inspect, Objection Motion, and Motion to Correct seek to vacate the August 20, 2025 Order, the Court liberally construes these requests as made pursuant to Rule 60(b), which affords relief from a court order when any one of six enumerated grounds are met. *See* Fed. R. Civ. P. 60(b).[12] Mr. Hill's Rule 60(b) motions to vacate the August 20, 2025 Order are timely because the motions were filed well within one year after the entry of the order. Fed. R. Civ. P. 60(c)(1). However, these post-verdict motions seeking to vacate the August 20, 2025 Order fail to satisfy any of the bases set forth in Rule 60(b) for securing relief from a court order for four reasons. Moreover, Mr. Hill's arguments for an evidentiary hearing into juror misconduct and tampering are without merit.

First, Mr. Hill's argument that the August 20, 2025 Order places restrictions on his ability to contact jurors, but does not similarly constrain Defendants' counsel is entirely without merit.

---

[11] The Second Motion to Correct also requests that the Court vacate the August 20, 2025 Order "to the extent it relies on an inaccurate timeline." (ECF No. 323 at 2.) As discussed below, the docket currently reflects the correct timeline. *See infra* Discussion § V. Accordingly, Mr. Hill's request for an order vacating the August 20, 2025 Order on the grounds that it relies on inaccurate timeline is denied.

[12] Under Local Civil Rule 6.3, a motion for reconsideration of a court order must be filed within fourteen days of the issuance of the order. Local Civil Rule 6.3. A Local Civil Rule 6.3 motion for reconsideration of a court order is evaluated according to the same standards as a Rule 60(b) motion, although Rule 60(b) offers a much longer timeframe for filing a motion to vacate a court order. For these reasons, this Court liberally construes the post-verdict motions seeking to vacate the August 20, 2025 Order as made pursuant to Rule 60(b).

The plain text of the August 20, 2025 Order instructs that "[n]o party may have any contact or communications with any juror who served on this trial or member of the jury venire unless it is expressly authorized by the Court." (ECF No. 318. at 5.) Moreover, the Court issued an Order dated August 21, 2025 clarifying that the August 20, 2025 Order's "procedures for seeking Court permission to contact or communicate with jurors and members of the jury venire . . . apply equally to all parties." (ECF No. 321 at 2.)

Second, contrary to Mr. Hill's contention, the August 20, 2025 Order does *not* prohibit him from communicating with jurors or members of the jury venire, but only requires the parties to first seek and secure the Court's permission before doing so in order to ensure that jurors are protected from harassment. (ECF No. 318 at 3–4; ECF No. 321 at 2.) As the Court explained in the August 20, 2025 Order, it will supervise all post-trial investigation of jurors as permitted by Second Circuit "[i]n light of the record in this case," which includes the following facts: (1) Mr. Hill's communication with Juror No. 7 on a social media messaging platform to gather information to bolster his pending motions seeking to vacate the jury verdict and Judgment on the basis that Juror No. 1, Juror No. 3, and Juror No. 7 are not be U.S. citizens; (2) his stated intention to have a "longer discussion with [Juror No. 7] to further clarify" issues relating to the citizenship of jurors; (3) Mr. Hill's broad concerns that *all* members of the jury may not be U.S. citizens, and (4) Mr. Hill's stated "inten[tion] to provide the New York Field Office of Immigration and Customs Enforcement (ICE) with the transcript of voir dire, which includes the general residences of each juror, so that citizenship may be verified." (ECF No. 318 at 4 (quoting ECF No. 317 at 2).) As set forth in the caselaw cited in the August 20, 2025 Order, "[i]t is well established in this Circuit that *in order to insure* [sic] *that jurors are protected from harassment*, a district judge has the power, and sometimes the duty, to order that all post-trial investigation of

jurors shall be under [the Court's] supervision." *United States v. Moten*, 582 F.2d 654, 665 (2d Cir. 1978) (emphasis added); ECF No. 318 at 3.[13]

Third, Mr. Hill's assertion that the Court may not rely on *United States v. Moten*, 582 F.2d 654, 665 (2d Cir. 1978), and *United States v. Baker*, 899 F.3d 123, 134 (2d Cir. 2018), "where juror tampering and disqualification are at issue" is belied by the clear text of those decisions as citied in the August 20, 2025 Order. (ECF No. 319 at 2.) Both decisions contemplate that parties may seek to investigate juror qualification and tampering issues. *Moten*, 582 F.2d at 656, 665; *Baker*, 899 F.3d at 130–31, 134. Nevertheless, in *Moten*, the Second Circuit made clear that a "district judge has the power, and sometimes the duty, to order that *all* post-trial investigation of jurors shall be under [the Court's] supervision" where there is a concern about juror harassment. *Moten*, 582 F.2d at 665 (emphasis added); *see also* ECF No. 318 at 3. Moreover, in *Baker*, the Second Circuit reiterated, "[i]t *always* lies within the province of the district judge to take full control of the post-verdict interviewing of jurors when it is first brought to [the Court's] attention." *Baker*, 899 F.3d at 134 (emphasis added); *see also* ECF No. 318 at 3.

Fourth, Mr. Hill's claims of "juror tampering" in this action are baseless. (ECF No. 319 at 1–3; ECF No. 320 at 1–2.). Mr. Hill's principal basis for this claim is his unsworn statement that Juror No. 7 responded to a question that Mr. Hill posed on a social media messaging platform well after trial, but then chose to delete that response. (ECF No. 319 at 1–3; *see also* ECF No. 320 at 2.) But jurors are not required to communicate with any party following conclusion of their jury service. The Second Circuit has made clear:

> [J]urors have a right to go home at the end of the trial secure in the belief that they will not be harassed and they will not be questioned, and they have a right to return to the

---

[13] *See also United States v. Radonjich*, 1 F.3d 117, 120 (2d Cir. 1993); *United States v. Baker*, 899 F.3d 123, 134 (2d Cir. 2018).

community and enjoy the privacy and anonymity that they enjoyed before they were summoned to serve as jurors.

*United States v. Radonjich*, 1 F.3d 117, 120 (2d Cir. 1993). After the jury has rendered a verdict, a juror is entitled to choose to communicate with a party—or not. Accordingly, Juror No. 7 was free to respond to Mr. Hill's message on social media messaging platform and also free to delete her response after the fact.

Mr. Hill thus fails to meet the "strict" standard for securing reconsideration of a court order under Rule 60(b). *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024). He has not shown any "(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or misconduct by an opposing party . . . or (6) any other reason that justifies relief" in the form of an order vacating the August 20, 2025 Order. Fed. R. Civ. P. 60(b). Nor has he demonstrated "an[y] intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice," *Commerzbank.*, 100 F.4th at 377, or any "extraordinary circumstances justifying relief" under Rule 60(b)(6). *Metzler*, 970 F.3d at 142–43 (quoting *Nemaizer v. Baker*, 793 F.2d 58, 63 (2d Cir. 1986)). Finally, for all of the same reasons, Mr. Hill also fails to raise any meritorious argument as to why the Court should hold an evidentiary hearing regarding purported juror misconduct and jury tampering.

## IV.    Request for an Investigation into Defendant Reynolds' Alleged Interactions with Juror No. 1, Juror No. 5, and Juror No. 8

In the Motion to Compel, Mr. Hill alleges that Defendant Reynolds "was observed riding an elevator with Jurors 1, 5, and 8" and states that "this improper contact must be investigated under oath." (ECF No. 320 at 2–3.) The Motion to Compel does not provide any sworn

statements concerning who observed Defendant Reynolds in an elevator with Juror No. 1, Juror No. 5, and Juror No. 8, whether the observation was made before or after the jury delivered a verdict on July 29, 2025, or what, if anything, Defendant Reynolds said to the three jurors or what they said to him while they were in the elevator or in any other context. (*See id.*) The mere presence of three jurors in an elevator with Defendant Reynolds at some unspecified time is insufficient to raise "a distinct possibility" that Defendant Reynolds tampered with the jury. *United States v. Ruggiero*, 846 F.2d 117, 124 (2d Cir. 1988). Accordingly, the Motion to Compel is denied with respect to its request for an investigation into Defendant Reynolds' alleged interactions with Juror No. 1, Juror No. 5, and Juror No. 8.

## V.   Motions Requesting that the Docket Be Corrected and that Court Explain the Backdating of the Entry of Judgment

In four post-verdict motions, Mr. Hill seeks an order directing the correction of filings on the docket in this action. First, in the Motion to Correct, Mr. Hill requests that the Court "correct the record regarding" the sequence of filings on the docket, the date of entry of Judgment, and the date the Court became aware of Mr. Hill's online communications with Juror No. 7 (ECF No. 320 at 3.) Second, in the Motion to Compel, Mr. Hill demands that the Court "declare under oath the reason why [the] Deputy Clerk . . . backdated" the entry of Judgment to July 29, 2025, correct the docket to reflect the date Judgment was filed, "[v]acate the improperly dated [J]udgment," and hold a hearing on "judicial misrepresentation." (ECF No. 322 at 2.) Third, in the Second Motion to Correct, Mr. Hill also requests that the Court correct the sequence of filings on the docket and explain the dating of the entry of Judgment. (ECF No 323 at 2.) Fourth, in the Second Emergency Motion, Mr. Hill requests that the Court "[r]efer this matter to the Department of Justice for investigation of docket manipulation and fraud on the court." (ECF No. 324 at 4.) Fifth, in the Motion for Recusal, Mr. Hill requests that "the Court should take

judicial notice that docket entry 310 is nine entries out of order from docket entry 299 and docket entry 303." (ECF No. 327 at 2.)

The following represents an accurate sequence of filings in this action and the docketing of those filings on ECF following the jury's issuance of a verdict on July 29, 2025. (*See* Min. Entry, July 29, 2025.) Prior to the close of business on July 29, 2025, the Deputy Clerk signed and dated the Judgment and sent the Judgment to be docketed. At 9:58 PM that same day, Mr. Hill, using the dropbox for pro se litigants, filed the Motion to Inspect. (ECF No. 303 at 1.)[14] The next morning, on July 30, 2025, Mr. Hill filed the Motion to Vacate at 8:32 AM. (ECF No. 299 at 1.) At 11:29 PM, the Clerk of Court docketed the Motion to Vacate. (ECF No. 299 Not. Elec. Filing.) At 11:56 AM, the Clerk of Court docketed the Motion to Inspect and backdated the docket entry to July 29, 2025, the date on which Mr. Hill filed the Motion to Inspect. (ECF No. 303 Not. Elec. Filing.) At 4:21 PM, the Clerk of Court docketed the Judgment and set the filed date as July 29, 2025, the date the Deputy Clerk signed and executed the Judgment and sent it to be docketed. (ECF No. 310 Not. Elec. Filing; *see also* Min. Entry, July 29, 2025). Then, at 5:57 PM, that same day, Mr. Hill filed the First Supplemental Motion. (ECF No. 311 at 1). On July 31, 2025 at 9:20 AM, the Clerk of Court docketed the First Supplemental Motion and backdated the docket entry to July 30, 2025, the date on which Mr. Hill filed the First Supplemental Motion. (ECF No. 311 Not. Elec. Filing.)

Pursuant to Rule 58, Fed. R. Civ. P., the Clerk of Court "must, without awaiting the court's direction, promptly prepare, sign, and enter the judgment when . . . the jury returns a

---

[14] The Court relies on the blue time stamps on documents to determine the exact time of the filings. The blue time stamps are automatically affixed to documents filed via the dropbox for pro se litigants and indicate the date and time the document was filed by the party.

general verdict." Fed. R. Civ. P. 58(b)(1). Here, the jury entered its verdict on July 29, 2025 and the Deputy Clerk promptly signed and dated the Judgment. (ECF No. 310.) The Clerk of Court then docketed the Judgment on ECF the next day and indicated that Judgment was entered on July 29, 2025, as noted by the Deputy Clerk on the Judgment form. The Clerk of Court dated Mr. Hill's Motion to Inspect and First Supplemental Motion to reflect the date on which Mr. Hill filed these motions—not the date on which they were docketed. Therefore, the docket, as it currently stands, accurately reflects the order in which filings were sent to be docketed either by the Deputy Clerk, as with the Judgment, or were placed in the pro se drop box by Mr. Hill, as with the Motion to Inspect and First Supplemental Motion.

With respect to Mr. Hill's request that the Court "correct the record" concerning the date on which the Court became aware that Mr. Hill had communicated with Juror No. 7, the August 20, 2025 Order indicates that the Court "first learned of Mr. Hill's post-verdict contact with a member of the jury . . . with the docketing of his Second Supplemental Motion, which reports . . . that Mr. Hill contacted Juror No. 7 to bolster the pending Motions seeking to vacate the jury verdict and Judgment . . . ." (ECF No. 318 at 4.) In the First Supplemental Motion, filed on July 30, 2025, Mr. Hill informed the Court that Juror No. 7 accepted his Instagram "follow request" (ECF No. 311 at 1). Whether the Court views Mr. Hill's request to "follow" Juror No. 7, as communication between Mr. Hill and Juror No. 7 is beside the point. The fact that the Second Supplemental Motion informed the Court that Mr. Hill sent Juror No. 7 messages seeking information about the content of jury deliberations, coupled with Mr. Hill's stated intention to forward to DHS and/or ICE the names of all members of the jury for an investigation into their citizenship and to have further communications with Juror No. 7 about the citizenship of jurors, formed a sufficient basis for the Court to supervise all post-verdict contact between the parties

47

and jurors and potential jurors in order to guard against any juror harassment, as set forth in the August 20, 2025 Order. *See also Moten*, 582 F.2d at 665.

Since there is nothing to correct with respect to the date of these filings on the docket for this action, the date of entry of Judgment, or the date on which the Court first became aware of Mr. Hill's post-verdict contact with Juror No. 7, Mr. Hill's post-verdict motions are denied to the extent that they request corrections to the record. Accordingly, the Court denies the requests to make corrections to the docket and the record and to "[r]efer this matter to the Department of Justice for investigation" into "docket manipulation" or "fraud on the court." (ECF No. 324 at 4.)

## VI.    Motion for Recusal

In the Motion for Recusal, Mr. Hill seeks the undersigned's recusal and reassignment of this case to another judge of the Eastern District of New York. (ECF No. 327.) This motion represents at least the fourth time that Mr. Hill has sought the recusal of the undersigned. (*See* ECF Nos. 264, 281, Min. Entry, July 18, 2025.)

28 U.S.C. § 455(a) ("Section 455(a)") provides that "[a]ny justice, judge, or magistrate judge . . . shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). Section 455(a) "is triggered by an attitude or state of mind so resistant to fair and dispassionate inquiry as to cause a party, the public, or a reviewing court to have reasonable grounds to question the neutral and objective character of a judge's rulings or findings." *Liteky v. United States*, 510 U.S. 540, 557–58 (1994) (Kennedy, J., concurring). "[A] judge should be disqualified only if it appears that he or she harbors an aversion, hostility or disposition of a kind that a fair-minded person could not set aside when judging the dispute." *Id.* at 558; *see also El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30, 31 (2d Cir. 2018) (noting that in deciding whether to recuse itself from a case, a court must consider whether "an objective,

disinterested observer fully informed of the underlying facts" would "entertain significant doubt that justice would be done absent recusal" (quoting *United States v. Bayless*, 201 F.3d 116, 126 (2d Cir. 2000))). "Disagreement with a court's decision, in and of itself, is not a sufficient basis to grant a recusal motion." *Wallen v. Teknavo Grp.*, No. 12-cv-6196, 2022 WL 17742338, at *2 (E.D.N.Y. Dec. 12, 2022) (citing *LoCascio v. United States*, 473 F.3d 493, 495–96 (2d Cir. 2007)).

Mr. Hill asserts that there is "an unmistakable appearance of impropriety," which requires recusal, because the undersigned has not yet ruled on his twelve post-verdict motions regarding the "unresolved constitutional violations concerning the citizenship and qualifications of jurors" and purported "direct evidence of docket manipulation." (ECF No. 327 at 1.) Mr. Hill further argues that the undersigned has a "conflict of interest" in determining whether the Deputy Clerk backdated any entries on the docket in this action and that by failing to rule on the motions challenging Juror No. 1's citizenship and qualifications, the undersigned "is stalling to avoid addressing misconduct." (*Id.* at 3.)

Mr. Hill fails to provide any basis by which an objective and disinterested observer would entertain doubt about the impartiality of the Court or its qualifications. *See Liteky*, 510 U.S. at 557–58; *El Omari*, 735 F. App'x at 31. Mr. Hill's unhappiness with the speed by which the undersigned rules on his numerous and repetitive post-verdict motions is an insufficient basis to grant a recusal motion. *See Wallen*, 2022 WL 17742338, at *2; *see also LoCascio*, 473 F.3d at 495–96. Furthermore, as addressed in Discussion § VI, there is no evidence of any docket manipulation that requires investigation. Accordingly, Mr. Hill's Second Recusal Motion is denied.

## VII.    The Request to Strike Defendants' August 29, 2025 Response

In the Motion to Strike, Mr. Hill requests that the Court "[s]trike Defendants' August 29, 2025 response (DE 325) as evasive and misleading," in light of Defendants' failure to "deny[] that [Defendant] Reynolds was in the elevator with three jurors." (ECF No. 326 at 3.)

The Court has the "inherent authority to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances." *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 763 F. Supp. 2d 423, 581 (S.D.N.Y. 2011); *Nat. Res. Def. Council, Inc., v. U.S. Food & Drug Admin.*, 884 F. Supp. 2d 108, 116 n.5 (S.D.N.Y. 2012).

Upon review, nothing in Defendants' August 29, 2025 response is "abusive or otherwise improper." (*Id.*) Accordingly, Mr. Hill's request to strike Defendants' August 29, 2025 response is denied.

## VIII.   Other Relief Sought

In the Motion to Inspect, First Supplemental Motion, and First Emergency Motion, Mr. Hill seeks an order reopening this case, making ECF Nos. 297 and 299 and other related docket entries publicly available, and granting him leave to file additional "post-trial motions."

With respect to reopening the case, Judgment was entered following the conclusion of a jury trial with a jury verdict for Defendants on both claims. (ECF No. 310; Min. Entry, July 29, 2025.) Accordingly, the Clerk of Court correctly marked this case as closed on ECF. Nevertheless, although the case is marked closed on ECF, the parties may still file on the docket any post-trial motions that are timely pursuant to the Federal Rules of Civil Procedure, as Mr. Hill has already done with the twelve post-verdict motions addressed in this Order. (*See* ECF Nos. 299, 303, 311, 312, 317, 319, 320, 322, 323, 324, 326, 327.)

However, in light of the fact that the post-verdict motions filed to date have been entirely lacking in merit and several motions have been frivolous, the Court cautions Mr. Hill that the filing of additional frivolous motions may lead to sanctions; and, in any event, such motions only delay ultimate case resolution.

Finally, with respect to the specific docket entries that Mr. Hill argues should be publicly viewable, the relevant docket entries are already publicly available with juror names redacted for the reasons set forth in this Court's prior order, namely that "it is in the interest of justice to redact the full names of the jurors identified in [Mr.] Hill's motion" pursuant to 28 U.S.C. § 1863(b)(7), "due to the nature of the accusation made." (Elec. Order, July 31, 2025). Accordingly, the Court dismisses as moot Mr. Hill's requests set forth in the Motion to Inspect, First Supplemental Motion, and First Emergency Motion to make certain docket entries public.

## CONCLUSION

For the reasons set forth above, Mr. Hill's Motion to Vacate (ECF No. 299), Motion to Inspect (ECF No. 303), First Supplemental Motion (ECF No. 311), First Emergency Motion (ECF No. 312), Second Supplemental Motion (ECF No. 317), Objection Motion (ECF No. 319), Motion to Correct (ECF No. 320), Motion to Compel (ECF No. 322), Second Motion to Correct (ECF No. 323), Second Emergency Motion (ECF No. 324), Motion to Strike (ECF No. 326), and Motion for Recusal (ECF No. 327) are denied.

Dated: Central Islip, New York
      October 30, 2025

                                      */s/ Nusrat J. Choudhury*
                                        NUSRAT J. CHOUDHURY
                                        United States District Judge